**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| VOICE of the EXPERIENCED, *on behalf of itself and its members*; POWER COALITION for EQUITY and JUSTICE, *on behalf of itself and its members*; and LEAGUE of WOMEN VOTERS of LOUISIANA, *on behalf of itself and its members*; | |
| *Plaintiffs*, | Civil No. _____ |
| v. | |
| R. KYLE ARDOIN, *in his official capacity as Secretary of State of Louisiana*, | |
| *Defendant*. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Voice of the Experienced ("VOTE"), the Power Coalition for Equity and Justice ("Power Coalition"), and the League of Women Voters of Louisiana (the "League") bring this action against Defendant the Honorable R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana, and allege the following:

**<u>INTRODUCTION</u>**

1.    This case challenges Louisiana's requirement that "suspended" voters provide documentary proof of eligibility to register to vote, while other similarly situated voters are not required to do so. Plaintiffs' claims arise under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment.

2.    Louisiana law arbitrarily treats voter registrants with prior felony convictions differently depending on whether they have previously been registered to vote. Louisianans are temporarily disenfranchised upon incarceration for a felony conviction, but the right to vote is

restored automatically on discharge of sentence or once five years have elapsed since incarceration. Upon restoration, a person who was not previously registered to vote may simply register to vote like any other eligible voter. On the other hand, a person who was previously registered to vote must present documentary proof of their renewed eligibility. If they do not provide specific paperwork that can only be obtained from certain officials, their voter registration will be rejected. This is despite the fact that elections officials already have in their possession sufficient information to verify restoration of voting rights for registrants with past felony convictions. This discriminatory treatment is irrational, imposes unnecessary burdens on the right to vote, and allows the State to shirk its responsibility to verify voter registrations from new registrants.

3.      Louisiana's felony disenfranchisement scheme is a vestige of Jim Crow, borne from efforts to use the criminal legal system to suppress the Black vote. The Louisiana Constitution, and the felony voter disenfranchisement provisions that exist today, are entangled in that history. Until 2019, Louisiana had one of the highest voter disenfranchisement rates for individuals with felony convictions in the United States. Pursuant to Louisiana's 1974 Constitution, the legislature has the discretionary power to disenfranchise individuals who are under order of imprisonment for a felony conviction. La. Const. art. I, § 10(A). In 1976, the legislature used that power to temporarily disenfranchise individuals "under an order of imprisonment," which it defined broadly as not just people who are actually incarcerated for a felony conviction, but also individuals who are serving community supervision following a term of imprisonment.

4.      In 2019, the Louisiana Legislature passed Act 636, which provided that individuals with felony convictions who have not been incarcerated for at least five years, are eligible to register to vote. Act 636 opened the door to voting rights restoration for approximately 30,000

Louisianans on either probation or parole and has allowed for the restoration of tens of thousands more since.

5.      Still, Louisiana has struggled to implement access to the right to vote for individuals with felony convictions. Initially under Act 636, those who were still serving probation or parole had their voting rights restored only upon submission of documentation from the Department of Corrections to a local registrar's office showing that they had not been incarcerated for a felony within the last five years. *See* 2018 La. Act No 636 (H.B. 265). In other words, restoration of the right to vote was not automatic and did not occur until the prospective voter met this paperwork burden. *Id.* In turn, because this paperwork is not readily available to many affected citizens, this requirement prevented many of the voters whose rights could have been restored from exercising that right. Moreover, parishes disparately and arbitrarily implemented the documentary proof of eligibility requirement (also known as the paperwork requirement), and did not adequately advise individuals about how to obtain the necessary documentation.

6.      In 2021, the Louisiana Legislature passed Act 127 to remove the paperwork requirement for rights restoration. Act 127 made clear that an individual who is under an order of imprisonment for conviction of a felony but has not been incarcerated pursuant to the order within the last five years is eligible to vote regardless of whether they present proof of eligibility to the registrar. *See* 2021 La. Act No. 127 (H.B. 378) (deleting "if the person submits documentation to the registrar of voters"). However, the State continues to require documentary proof of eligibility from voter registrants whose registrations have previously been "suspended" as a result of a felony conviction, even though both "new" voters and "suspended" voters have their right to vote automatically restored under law.

7.      The paperwork requirement for suspended voters is a part of a long history of erecting additional barriers for individuals with felony convictions to gain access to the franchise in Louisiana, a practice with Jim Crow-era origins.

8.      The Supreme Court has specifically held that states cannot impose additional documentation requirements on voters using the federal voter registration form as the NVRA requires states to "'accept and use' a uniform federal form to register voters for federal elections." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 4 (2013) ["*ITCA*"] (quoting 42 U.S.C. § 1973gg–4(a)(1)). In *ITCA*, the Supreme Court held that the NVRA preempted an Arizona statute requiring voters using the federal voter registration form to submit documentary proof of citizenship. *Id.* at 19.

9.      Like the Arizona requirement in *ITCA*, this paperwork requirement is preempted by the NVRA because the NVRA does not allow states to require additional documentation beyond the voter registration form. Moreover, the NVRA requires that states place eligible registrants on the voter rolls. The documentary proof of eligibility requirement also violates the Equal Protection Clause of the Fourteenth Amendment because the requirement arbitrarily treats "new" and "suspended" voters differently, despite being similarly situated.

## JURISDICTION AND VENUE

10.     This action is brought under 42 U.S.C. § 1983, 52 U.S.C. §§ 20507 and 20510, and the United States Constitution. This Court therefore has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

11.     This Court has personal jurisdiction over the Defendant because he is a citizen of Louisiana.

12.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District and because a substantial portion of the events giving rise to these claims occurred in the Middle District of Louisiana.

**PARTIES**

13.     Plaintiff **Voice of the Experienced ("VOTE")** is a nonpartisan, grassroots nonprofit organization founded and operated by formerly incarcerated people. VOTE has four chapters across Louisiana in Shreveport, New Orleans, Baton Rouge, and Lafayette, and advocates for the rights of people who are incarcerated and people who are formerly incarcerated in the areas of voting rights, medical rights, and employment rights. VOTE's membership is comprised of formerly incarcerated people and their family members, as well as community members. VOTE engages its membership through direct organizing, voter education, registration drives, and know-your-rights workshops, and is considered a leader in criminal justice and voting rights reform both nationally and in Louisiana.

14.     Through its rights restoration work, VOTE is aware of members who had their voter registrations suspended because of a felony conviction, became eligible to vote, and have been required to provide documentary proof of their eligibility before the State allowed them to register to vote. Some of these members were unable to vote in a federal election because they were unable to obtain the required paperwork verifying their eligibility in time to register to vote. These members are harmed by the onerous process imposed by Louisiana law that requires them to provide documentation to prove their eligibility in order to register to vote, despite their facial eligibility. This process requires members to seek documentation, ensure that the documentation they were provided is correct, and submit the documentation in person to their parish registrar before they can register to vote.

15.    To assist its constituents and other community members with the rights restoration process, VOTE has had to divert significant resources from its other activities related to its core mission. Specifically, the paperwork requirement has resulted in VOTE diverting significant resources to educate voters on the paperwork requirement and help suspended voters navigate the process of complying with it. Staff and volunteers must hold public education workshops to explain the requirements to register to vote after suspension, do additional outreach on behalf of suspended voters, and even help taxi those individuals to the proper offices to acquire paperwork and register to vote. VOTE would not have to engage in this additional education and outreach for individuals with felony convictions but for the documentary proof of eligibility requirement.

16.    Plaintiff **Power Coalition for Equity and Justice ("Power Coalition")** is a nonpartisan coalition of community-based organizations. Headquartered in New Orleans, Louisiana, Power Coalition educates and empowers voters across Louisiana. Power Coalition advances its mission with the support of a small staff, community volunteers, and a membership of nonprofit and advocacy organizations. Collectively, Power Coalition's network unites around an integrated civic engagement strategy to amplify the voices of those who have been historically marginalized, with a focus on Black Louisianans and communities of color. Power Coalition's work includes outreach to voters impacted by the criminal legal system in Louisiana, working with partners, including VOTE, to provide voter education and engagement to eligible individuals with prior felony convictions, most of whom are Black Louisianans.

17.    Power Coalition diverts significant resources from its other activities related to its core mission to assist voters with registering to vote after suspension. Specifically, Power Coalition runs the Louisiana branch of the national election protection hotline, 866-OUR-VOTE. Through the hotline, Power Coalition assists voters who have issues or questions about voting in Louisiana

during an election period and runs the hotline for every statewide and local election in Louisiana. When voters call in with questions about voter registration after they were suspended for a felony conviction, Power Coalition must divert significant resources to assisting those individuals meeting the paperwork requirement. In addition to the hotline, Power Coalition provides voter education to hundreds of thousands of Louisiana voters and eligible individuals across the state. For eligible individuals on the suspended list, Power Coalition must divert significant resources providing additional education and assistance about complying with the paperwork requirement that it would not otherwise have to do. Resources expended on navigating the onerous process for these voters would otherwise be spent on Power Coalition's engagement with more Louisiana voters and encouraging them to vote.

18.    Plaintiff **League of Women Voters of Louisiana (the "League")** is a nonpartisan, nonprofit organization that seeks to encourage informed and active participation in government. Formed in the 1940s, the League is a state chapter of the League of Women Voters of the United States, which was integral in the passage of the National Voter Registration Act of 1993. The League's mission is to encourage informed and active participation in government, increase voter understanding of major public policy issues, and influence public policy through education and advocacy. The League ensures that all eligible individuals have the opportunity and the information needed to vote, with a particular focus on traditionally underrepresented and underserved communities, including voters impacted by the criminal legal system, people of color, and first-time voters. The League's members include individuals across the state of Louisiana who share in its mission to educate and engage eligible voters.

19.    The League diverts significant resources from its other activities related to its core mission to assist its constituents and other community members with the voting rights restoration

process. Specifically, the paperwork requirement has resulted in the League diverting significant resources to educate impacted voters and help them navigate the process of complying with it. For eligible individuals on the suspended list, the League must divert significant resources providing additional education and assistance about complying with the paperwork requirement that it would not otherwise have to do. Resources expended on navigating the onerous process for these voters would otherwise be used towards engaging more Louisiana voters and encouraging them to vote.

20.     Defendant **R. Kyle Ardoin** is the Secretary of State of Louisiana and is sued in his official capacity. As Louisiana's chief election officer, Defendant Ardoin is tasked with enforcing state and federal election laws in Louisiana, including the National Voter Registration Act. R.S. § 18:18; 52 U.S.C. § 20509.

## LEGAL FRAMEWORK

### *Louisiana's Felony Disenfranchisement Schemes*

21.     The Louisiana Constitution provides that "[e]very person who is both a citizen of the state and of the United States, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended for a person . . . who is under an order of imprisonment for conviction of a felony." La. Const. art. I, § 10(A).

22.     Prior to the Civil War, Louisiana only disenfranchised individuals for criminal convictions if they were convicted of one of four election-related felonies. Brief of Amicus Curiae NAACP Legal Defense Fund *et al.* at 9, *VOTE v. Louisiana,* 2017-1141 (La. App. 1 Cir. 2018), available at https://www.sentencingproject.org/app/uploads/2022/08/Ex.-A-Vote-Amicus-Br-11.6.pdf. However, after Reconstruction and the passage of the Fifteenth Amendment, which extended voting rights to Black men, Louisiana dramatically expanded its criminal disenfranchisement law. *Id.* at 9. Louisiana's 1898 Constitution permanently disenfranchised

individuals convicted of *any* felony and did so with the explicit and implicit purpose of suppressing the votes of Black Louisianans, who constituted half of the state's population at the time. *Id.* at 10-15.

23.    When the Louisiana Constitution was amended in 1974, it gave the legislature the discretionary power to temporarily disenfranchise individuals who are "under an order of imprisonment for a conviction of a felony." La. Const. Art. I § 10 (A).

24.    In 1976, the legislature passed a law temporarily suspending the right to vote from those "under an order of imprisonment." The legislature defined "under an order of imprisonment" to mean "a sentence of confinement, whether or not suspended whether or not the subject of the order has been placed on probation, with or without supervision, and whether or not the subject of the order has been paroled." Acts 1976, No. 697, § 1, (codified at La. R.S. § 18:102(B); La. R.S. § 18:2(8)). Thus, the legislature disenfranchised all individuals who were in prison for a felony as well as those serving community supervision, including parole or probation, after a sentence of confinement.

### *"Suspension" and "Reinstatement" of Voter Registration Under Louisiana Law*

25.    Louisiana law requires parish registrars to send notices to active registered voters who are currently under an order of imprisonment and (1) have been incarcerated pursuant to the order in the last five years or (2) have been convicted of an election offense, informing the individual that he must appear in person at the registrar's office within twenty-one days to show cause why his voter registration should not be suspended. La. R.S. § 18:176(A) (citing La. R.S. §§ 18:171, 18:171.1). If the voter fails to do so, the registrar places the individual's voter registration in "suspended" status. *Id.*

26.     That is, if an individual is a registered, active voter and then is convicted of a felony and placed under an order of imprisonment, that voter's registration is placed in "suspended" status. *See* La. R.S. § 18:176(A). While on suspended status, a person is not registered to vote, for all intents and purposes, and may not cast a ballot. The registration will remain "suspended" indefinitely unless "reinstated."

27.     Under La. R.S. § 18:177(A)(1), a voter whose registration has been "suspended" under § 18:176(A) may only be "reinstated" "when the person appears in the office of the registrar and provides documentation from the appropriate correction official showing that such person is no longer under an order of imprisonment or, if the person is under such an order, that the person has not been incarcerated pursuant to the order within the last five years and the person is not under an order of imprisonment related to a felony conviction pursuant to election fraud or any other election offense."

### *Act 636 Opened the Door for Rights Restoration for 30,000 Louisianans*

28.     Louisiana enacted Act 636 in 2019, which provided that "a person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order if the person submits documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to the order within the last five years." 2018 Act 636 § 1; codified at La. Rev. Stat. § 18:102(A)(1)(b) (2019).

29.     Act 636 opened the door to re-enfranchisement for an estimated 30,000 voters who were on probation or parole. Under Act 636, individuals on probation or parole who had not been actually incarcerated pursuant to the order within the last five years could restore their right to vote, unless they were convicted of an election-related crime. 2018 La. Act No. 636 (H.B. 265).

However, those who were still serving probation or parole after a sentence of confinement were required to submit paperwork demonstrating that they had not been imprisoned for that conviction within the last five years in order to restore the right to vote.

30.    In parallel to the revised eligibility requirements, Act 636 updated the voter registration form allowing for the registrant to attest that they are not currently under an order of imprisonment "or, if the applicant is under such an order, that the applicant has not been incarcerated pursuant to the order within the last five years . . . ." 2018 Act 636 § 1; codified at La. Rev. Stat. 18:104.

31.    Similarly, Act 636 allowed for a person who had previously been registered to vote but whose registration had been suspended due to imprisonment for a felony to be reinstated on the voter rolls, "when the person appears in the office of the registrar and provides documentation from the appropriate correction official showing that such person is no longer under an order of imprisonment or, if the person is under such an order, that the person has not been incarcerated pursuant to the order within the last five years . . . ." 2018 Act 636; codified at La. R.S. § 18:177(A)(1) (2019) (emphasis added).

32.    In the months following passage of Act 636, the Department of Public Safety and Corrections ("DPSC") created a "Voter Eligibility Certificate" within their internal database, which can only be produced by DPSC at one of the Probation and Parole Offices in Louisiana. There were no educational materials produced by the Secretary of State, and no guidance on the voter registration website ("GeauxVote.com").

### *Act 127 Automatically Restored the Right to Vote to at least 30,000 Louisianans and Eliminated the Documentary Proof of Eligibility Requirement*

33.    In 2021, Louisiana enacted Act 127, which removed the paperwork requirement for voter restoration under La. R.S. § 18:102. Act 127 amended the disenfranchisement statute by

striking the condition that a person who has not been incarcerated in five years present proof of eligibility to the registrar:

§ 102. Ineligible persons
A. No person shall be permitted to register or vote who is:
(1) *       *       *
(b) Except as provided in Subparagraph (c) of this Paragraph, a person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order ~~if the person submits documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to the order within the last five years~~.

34.    By removing the documentary proof of eligibility requirement in the statute establishing who is ineligible to vote, Act 127 made clear that an individual who has not been under an order of imprisonment or incarcerated pursuant to the order within five years has their right to vote restored *automatically*, regardless of whether they present documentary proof to the registrar. 2021 La. Act No. 127 (H.B. 378). In other words, a person who has not been incarcerated for a felony conviction in the last five years is immediately restored the right to vote pursuant to Act 127 and the Louisiana Constitution.

35.    Act 127 also requires DPSC and the United States Attorneys to share information on felony convictions and service of sentences with the Secretary of State, with the Department of State, and the parish registrars, so that they can confirm voter eligibility without relying on the individual voter to provide documentation related to their felony convictions.

36.    Although DPSC had already been providing data reports to the Secretary of State, including who is on the suspended list and who is being removed from the list, Act 127 clarified and simplified the process: only the currently suspended list would be provided.

***The State Continues to Impose a Paperwork Requirement for Those Re-Registering to Vote After a Felony Conviction***

37.     Despite Act 127, Louisiana has continued to impose a paperwork requirement on people with felony convictions seeking to register to vote if the relevant individual was previously registered prior to their felony conviction.

38.     As dictated by Act 127, new Louisiana eligible voter registrants with past felony convictions (i.e., those who are no longer under an order of imprisonment, or have not been incarcerated pursuant to the order for five years, except if convicted of an election-related crime), may, according to the law, simply submit a voter registration form to become registered to vote. *See* La. R.S. § 18:101.

39.     However, the same process is not made available to those who were previously registered to vote in Louisiana prior to their felony conviction. An individual who is registered to vote but becomes ineligible because of a felony conviction is placed in "suspended" status and removed from the active voter roll. *See* La. R.S. § 18:176.

40.     Once such an individual becomes eligible to vote again upon being released from the order of imprisonment or the passage of five years since incarceration, they may only become re-registered (or "reinstated") to vote by submitting paperwork demonstrating their eligibility. *See* La. R.S. § 18:177.

41.     This policy is entirely dependent on Defendant's construction of La. R.S. § 18:177. Specifically, Defendant argues that "Louisiana law provides different procedures for individuals who are registering to vote and whose voting rights are not currently suspended within our system for [a] felony conviction, and for individuals whose voting rights are or have been suspended for a felony conviction." Ex. 2 at 2.

42.     But La. R.S. § 18:177 need not and should not be read to require documentary proof of eligibility after a felony for any person eligible to vote under § 18:102. Although it states that a person who provides this documentation *shall* be reinstated, it does not prohibit the registration of those who do not present it.

43.     Pursuant to the Louisiana constitution, voting rights restoration has always been automatic for those who are no longer under an order of imprisonment. Indeed, the constitution does not empower the legislature to infringe upon the right to vote of otherwise qualified citizens who are not under an order of imprisonment, regardless of prior felony conviction. Yet the re-registration process for these individuals requires them to submit additional documentary proof of eligibility to become active voters and to be able to cast a ballot.

44.     Advocates previously notified the Secretary of State's Office in 2020 that this documentary proof of eligibility requirement, also known as the paperwork requirement, violated the NVRA. *See* Ex. 8.

45.     Act 636 re-enfranchised individuals on probation and parole for non-election related offenses on the condition that they "submit[] documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to the order within the last five years." *Id.* However, Act 127 made restoration automatic for individuals who have not been incarcerated for a felony within the last five years, *regardless* of whether they have submitted paperwork confirming that they are not under an order of imprisonment or have not been incarcerated pursuant to the other within the last five years. 2021 La. Act No. 127 (H.B. 378).

46.     The Secretary of State does not allow a person who has been suspended for a felony conviction to avail themselves of the ordinary registration process available to all other eligible

voters. In order to become an active voter registrant, the Secretary requires that the person present the documentary proof of eligibility outlined in the reinstatement process. This is true even if the individual submits a new voter registration form—it will be denied without the additional paperwork. *See* Ex. 2 at 3.

### *Louisiana's Process of Verifying the Eligibility of Individuals with Felony Convictions*

47.    The Help America Vote Act ("HAVA") requires states to maintain "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." 52 U.S.C. § 20183(a)(1)(A). HAVA further requires states to "coordinate the[ir] computerized list[s] with State agency records on felony status." *Id.* § 20183(a)(2)(A)(ii).

48.    To facilitate voter-roll maintenance, DPSC sends to the Louisiana Department of State information regarding "any person currently under the custody or supervision of the Department of Public Safety and Corrections" who is currently under an order of imprisonment for a felony conviction and has been incarcerated pursuant to the order in the last five years, or anyone who has committed an election offense. La. R.S. § 18:171. In turn, the Secretary of State's Office is required to report that information to the parish registrars at least quarterly. La. R.S. § 18:171(C)(4). Similar requirements apply to the U.S. Attorney for federal convictions. La. R.S. § 18:171.1.

49.    DPSC is also required under Louisiana law to provide to a parish registrar, upon request, "information regarding a person who is under an order of imprisonment for conviction of a felony, including whether the person is under an order of imprisonment for conviction of a felony

offense of election fraud or any other election offense . . . and whether the person has been incarcerated pursuant to the order within the last five years." La. R.S. § 18:171(B)(2).

50.     Likewise, sheriffs and district attorneys are required under Louisiana law to provide to a parish registrar, upon request, "information regarding a person convicted of a felony . . . including . . . whether the conviction resulted in an order of imprisonment pursuant to which the person is incarcerated." La. R.S. § 18:171(B)(1).

51.     In August 2022, the Department of Public Safety and Corrections issued a regulation requiring that it issue the list of ineligible individuals pursuant to La. R.S. § 18:171 to parish registrars on a monthly basis. *See* Ex. 3 at 8-13, Dep't of Public Safety and Corrections, Dep't Reg. No. IS-F-3 at 7(A)(1)(b) (Aug. 1, 2022). Unlike the list of suspended voters, this list matches the contours of Louisiana law and only includes people who are currently disenfranchised, except those few individuals who were restored the right to vote since the last monthly batch was processed.

## FACTUAL ALLEGATIONS

***Louisiana Has Attempted to Create a Bifurcated Process for Accepting Voter Registration Forms Based Solely on Whether a Voter Was Placed into "Suspended" Status Because of a Felony***

52.     Louisiana has attempted to create a bifurcated process for accepting voter registration forms for people with convictions: (1) what it calls "registration," for voters who had previously never been registered to vote, and (2) what it calls "reinstatement," for voters who had previously registered to vote.

53.     Louisiana asserts that this bifurcation is necessary because voters who had previously registered to vote, upon becoming subject to an order of imprisonment, enter a "suspended" status, while voters who had never been registered to vote are not placed in a "suspended" status. *See* Ex. 2 at 2.

16

54.     In other words, this bifurcation is based solely on whether that voter was placed into "suspended" status because of a felony. Voters who are "suspended" must submit paperwork showing that they are eligible, in order to be an active registered voter and have the ability to cast a ballot. Registrars will reject the registration application of individuals who are on the suspension list if they do not provide this paperwork, even if the voter completed the national voter registration form disseminated by the United States Election Assistance Commission. *See* National Mail Voter Registration Form, U.S. Election Assistance Commission, https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_ENG.pdf  (the "Federal Form").

55.     Voters in both of these supposedly distinct processes, however, are functionally equivalent—whether previously registered to vote or not, voters in both processes seek to become active registered voters. That is, the outcome of "registration" or "reinstatement" is the same. Indeed, the forms submitted by voters in both processes are the same; a voter must submit either the Federal Form or the Louisiana voter registration application, circulated by Defendant, Louisiana voter registration application, *see* Louisiana Voter Registration Application, Louisiana Secretary of State, https://www.sos.la.gov/ElectionsAndVoting/PublishedDocuments/ApplicationToRegisterToVote.pdf  (the "Louisiana Form"). Moreover, regardless of whether a voter is added to the rolls by "registration" or "reinstatement," they will follow the same process and regulations for casting their ballot.

56.     Although voters seeking "registration" and voters seeking "reinstatement" are functionally equivalent and similarly situated, Louisiana law arbitrarily treats these similarly situated individuals differently depending on whether they had previously registered to vote.

57.     Two individuals may have been convicted of the same felony, at the same time, and serve the same sentence. If, however, one individual was an active voter prior to their felony

conviction, and the other individual was not on the active voter rolls prior to their felony conviction, they will receive disparate treatment.

58.     The first individual would be placed on the suspension list and would be required to provide documentary proof of eligibility before submitting a voter registration form. That individual could only be added to voter rolls after appearing in person at their parish registrar's office with this documentary proof.

59.     The second individual could submit a voter registration form like any other eligible individual, and could register to vote by mail, in-person, or online. That person's voter registration status would never be placed in "suspended" status.

60.     Despite both having the right to vote, these two individuals would face different registration requirements.

### *Louisianans Who Submit a Registration Form Attesting to Their Eligibility Are Facially Eligible, Absent Information Establishing Ineligibility*

61.     The Federal and Louisiana Forms require registrants to attest to their eligibility.[1] The Louisiana Form requires the applicant to swear or affirm under penalty of perjury that "I have not been incarcerated pursuant to an order of imprisonment for conviction of a felony within the past five years, nor am I under an order of imprisonment for a felony offense of election fraud or other election offense pursuant to R.S. 18:1461.2 . . . ." Louisiana Form at 1. Similarly, the instructions on the Federal Form require that the applicant swear or affirm that they meet the eligibility requirements of their state, which for Louisiana include that they "not currently be under an order of imprisonment for conviction of a felony; or if under such an order (1) not have been incarcerated pursuant to the order within the last five years and (2) not be under an order of imprisonment related to a felony conviction for election fraud or any other election offense

---

[1]     *See* Federal Form, *supra* ¶ 54; Louisiana Form, *supra* ¶ 55.

pursuant to R.S. 18:1461.2 . . . ." Federal Form at 3, 10. A person who so attests and submits an otherwise complete registration form is facially eligible to vote absent information establishing their ineligibility.

62.    The Federal Form requires no additional documentation to be submitted; nor do the state-specific instructions for Louisiana ask for additional documentation.

### *A "Suspended" Registration Is Not Proof Establishing Ineligibility*

63.    The fact that someone's registration has been "suspended" for a felony conviction does not establish ineligibility.

64.    DPSC provides the Department of State with regularly updated lists of currently ineligible voters. La. R.S. § 18:171(B)(2); Ex. 3 at 8-13, Dep't of Public Safety and Corrections, Dep't Reg. No. IS-F-3 (Aug. 1, 2022). Similarly, the Department of State may be notified of new felony convictions and orders of imprisonment by the clerk of court, sheriff, and district attorney, as well as a United States Attorney. La. R.S. §§ 18:171, 171.1; 52 U.S.C. § 20507(g) (procedures for reporting federal felony convictions to state election officials). If the people on these reports are registered to vote, their registration is "suspended" pursuant to La. R.S. § 18:176(A)(1)-(3).

65.    However, most Louisianans with past convictions will have their right to vote restored. Under Louisiana law, voting rights are restored when a person's order of imprisonment expires, or five years have passed since actual incarceration (so long as they were not convicted of an election crime). La. Const. Art. I § 10(A); La. R.S. § 18:102(A). Accordingly, these individuals are automatically removed from the DPSC list of ineligible voters that is sent monthly to the Secretary of State. However, these re-enfranchised individuals are not taken off the "suspended" list when their rights are restored. Thus, the list of "suspended" voters necessarily includes both currently disenfranchised individuals and people who have already had their right to vote restored under law. Therefore, having been "suspended" does *not* establish ineligibility.

*Defendant's Unnecessary and Burdensome Paperwork Requirement for Suspended Voters with Felony Convictions Is Onerous and Burdensome for Voters, Depriving Thousands of Eligible Voters Access to the Franchise*

66.    This practice is onerous and burdensome to the registrant for several reasons.

67.    First, this practice shifts the burden to individual voters to track down, request, and even pay for redundant records to prove their eligibility for registration. This is true even if the individual has long since become eligible to vote; the individual will remain "suspended" even if they have not voted for decades, and even if they have not been under an order of imprisonment or incarcerated pursuant to the order for many years.

68.    Furthermore, upon information and belief, some registrars will only accept a specific document—called a voting rights certification, issued by the Office of Probation and Parole—that the appropriate corrections official (typically the desk clerk) will print from their internal "CAJUN" database in order to remove the suspension listing, even though state law does not require it.

69.    Additionally, state law does not specify whom the appropriate corrections official is, so individuals must guess as to how to obtain proof of eligibility. This is particularly burdensome when an individual has a federal or out-of-state conviction because those individuals may not appear in the state's internal database for purposes of obtaining the voting rights certification.

70.    Finally, upon information and belief, corrections officials have refused to give a voting rights certification to voters whose convictions were out of state. Likewise, some registrars will only accept the voting rights certification provided by the State, such that there is no way for those voters to prove their eligibility.

### *The Documentary Proof of Eligibility Requirement Is Unnecessary*

71.    Moreover, documentary proof of eligibility is unnecessary to confirm eligibility. While having been marked as "suspended" is not information establishing ineligibility, election officials have access to information that *does* establish ineligibility: the most current ineligible list reported by DPSC.

72.    The State of Louisiana maintains records of orders of imprisonment through the Louisiana Department of Public Safety and Corrections and other government agencies. DPSC also regularly sends lists of ineligible voters to the Louisiana Secretary of State and parish registrars. *See* La. R.S. § 18:171. Pursuant to an August 2022 regulation, DPSC shall monthly provide the Secretary of State with a list of Louisianans who are ineligible to vote because of state felony convictions. *See* Ex. 3 at 8-13, Dep't of Public Safety and Corrections, Dep't Reg. No. IS-F-3 at 7(A)(1)(b) (Aug. 1, 2022) ("The flat text file shall contain a listing of the following: all persons who have a felony conviction and who are under the active custody of the DPSC; all persons who are under the parole supervision of the DPSC and who have been so for a period of less than 5 years; all persons who are under the supervision (probation or parole) of the DPSC for Election Fraud or Election related offenses under Revised Statute 18:1261.2; as such information is contained in the DPSC electronic data management system, at the point in time during which the batch process occurred.").

73.    Unlike the list of suspended voters, this list matches the contours of Louisiana law and only includes people who are currently disenfranchised, except those few individuals who were restored the right to vote since the last monthly batch was processed.

74.    If the applicant does not appear on this list, even if "suspended," election officials have no reason to believe the applicant remains ineligible to vote.

75.     Moreover, elections officials can seek additional information from corrections authorities to confirm eligibility on *ad hoc* basis, should the need arise.

76.     Despite this records-sharing process, the State has effectively shifted the burden to individual suspended voters to prove their eligibility for registration.

77.     As a result of this process, Plaintiffs estimate that thousands of otherwise eligible individuals have been unable to register to vote because of their difficulty or inability to provide the required paperwork.

### *Plaintiffs' Notice of Violation of the National Voter Registration Act*

78.     On August 26, 2022, Plaintiffs Power Coalition and the League, through their counsel, sent a letter to Defendant notifying him that the documentary proof of eligibility requirement for "reinstatement" of registration for people with felony convictions violates the NVRA. *See* Ex. 1 ("First Notice Letter").

79.     On September 22, 2022, Defendant sent Plaintiff a letter in response to their First Notice Letter. Ex. 2. Defendant stated his position that the NVRA does not preempt the reinstatement process and that registration is distinct from reinstatement. *Id.* Defendant also stated that he had communicated with all registrars that they should only require documentation for suspended voters, not new voter registrants. *Id.*

80.     On October 28, 2022, Plaintiffs Power Coalition and the League sent Defendants another notice letter. Ex. 3 ("Second Notice Letter"). Plaintiffs' Second Notice Letter reiterated the ongoing violation of the NVRA and requested all records and communications between Defendant and the parish registrars concerning the implementation of Act 127. *Id.*

81.     On February 17, 2023, Defendant responded to Plaintiffs' records request, stating that he would produce eighty-three pages of responsive records upon receipt of payment of 25

cents per page. Ex. 4. Upon receiving payment, Defendant produced the responsive documents on February 22, 2023. Defendant provided no response to the substantive portions of Plaintiffs' Second Notice Letter in this February 17 correspondence.

82. On March 8, 2023, Defendant, through counsel, sent an additional letter to Plaintiffs requesting certain follow up information about affected voters and clarifying the contents of Plaintiffs' Second Notice Letter. Ex. 6.

83. On March 31, 2023, Plaintiffs VOTE, Power Coalition, and the League sent a response to Defendant's March 8 follow up letter. Ex. 7. Plaintiffs provided Defendants the requested information and noted that the required period for pursuing a private cause of action under the NVRA elapsed on January 26, 2023, and that, absent further action to correct the paperwork requirement, Plaintiffs would proceed to explore their legal rights. *Id.* at 3. Plaintiffs requested a final response by April 14, 2023. *Id.*

84. Defendant did not send Plaintiffs any further response on or before April 14, 2023.

85. To date, Defendant has not cured the paperwork requirement. This suit follows.

## CAUSES OF ACTION

### COUNT ONE

### *Violation of the National Voter Registration Act, 52. U.S.C. § 20501* et seq.

86. Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

87. Section 8 of the NVRA requires that all registrars place on the rolls facially eligible registrants upon timely submission of a valid registration form. 52 U.S.C. § 20507(a)(1) (requiring that each state "shall . . . ensure that any eligible applicant is registered to vote" in federal elections if the eligible applicant timely submits a "valid voter registration form").

88.     A valid registration form with an oath or affirmation under penalty of perjury attesting to one's eligibility is sufficient to establish facial eligibility. *See Kobach v. U.S. Election Assistance Com'n*, 772 F.3d 1183, 1194-95 (10th Cir. 2014) (upholding the EAC's decision to reject Arizona's and Kansas's requests to add documentary proof of citizenship to their states' instructions on the federal registration form because the agency had validly determined that the oath was sufficient to establish eligibility), *cert. denied* 576 U.S. 1055 (2015).

89.     Once individuals are no longer in the class of individuals stripped of the right to vote by statute, that right as protected by the Louisiana Constitution has been automatically restored without the need for any further action. *See Fox v. Mun. Democratic Exec. Comm. of City of Monroe*, 328 So. 2d 171, 174 (La. Ct. App. 1976) (holding that all otherwise eligible. Louisianans, including those convicted of felonies, are granted the right to vote by the constitution "[u]nless this right is specifically suspended by legislative or other constitutional means.").

90.     By completing a valid voter registration form and swearing or attesting that they meet the standards for voting after a felony conviction, the applicant creates a presumption of eligibility—regardless of whether they have previously been "suspended" from the rolls.

91.     The fact that someone has been previously "suspended" is not information establishing ineligibility and therefore does not justify Defendant's paperwork requirement. Moreover, Defendant and local election officials have access to accurate eligibility information for people with past convictions.

92.     Louisiana's refusal to register facially eligible applicants based solely on their prior "suspension" due to a past felony conviction violates Section 8 of the NVRA.

93.     Section 6 of the NVRA requires states to "accept and use" the Federal Form application. *See* 52 U.S.C. § 20505(a)(1). Pursuant to the NVRA, that application requires an

attestation of eligibility under penalty of perjury, "may require only such [information] as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," and "may not include any requirement for notarization or other formal authentication."  *See id.* § 20508(b). The Federal Form does not require the applicant to submit any additional documentation along with the application to register to vote.

94.    The Supreme Court has held that the "accept and use" mandate is a mandate for states to accept the Federal Form "*as sufficient*" for registration. *ITCA*, 570 U.S. at 10. As such, the Court held that "a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form." *Id.* at 15.

95.    Policies or practices requiring this documentary proof of eligibility in order to register—or "reinstate"—violate the NVRA's prohibition on additional documentary requirements beyond the registration form as well as its mandate to register eligible voters upon application. 52 U.S.C.A. §§ 20505(a)(1), 20507(a)(1). This is true regardless of whether an individual was previously registered to vote or is a new registrant.

96.    Louisiana's paperwork requirement to prove eligibility for "suspended" applicants with past convictions is "'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form." *ITCA*, 570 U.S. at 15.

97.    Finally, Section 6 of the NVRA permits states to also create their own mail voter registration form. However, any state mail voter registration form used to register voters in federal elections must meet the same requirements as the Federal Form and "may require only such identifying information (including the signature of the applicant) and other information (including

data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1); *see also id.* § 20505(a)(2).

98.    The paperwork requirement imposed on suspended voters with past felony convictions violates Section 6 and Section 8 because it exceeds the information necessary for election officials to assess an applicant's eligibility, particularly given the guaranteed statutory access election officials have to the requisite information.

99.    By creating additional documentation requirements to register to vote, La. R.S. § 18:177, as interpreted by Defendant, is preempted by Section 6 and Section 8 of the NVRA.

100.    Defendant attempts to skirt the NVRA's requirements by distinguishing "registration" under La. R.S. § 18:101 *et seq.* and "reinstatement" under La. R.S. § 18:177. *See* Ex 2 at 2. According to Defendant, "registration" applies to those who are seeking to register to vote whose rights have not been suspended because of a felony conviction. *Id.* Registration is covered by the National Voter Registration Act, such that additional documentation is not required to submit a voter registration form. *Id.* However, "reinstatement," according to Defendant, is a process separate from voter registration, and therefore not covered by the National Voter Registration Act. *Id.* at 3. Thus, according to Defendant, suspended voters cannot submit a registration form and instead must provide documentary proof of eligibility to become active registrants. *Id.* at 3-4.

101.    Nothing in the NVRA indicates that its requirements regarding voter registration only apply to how a state treats new registrants. *See generally* 52 U.S.C. § 20507. Simply put, a state cannot duck the NVRA's requirements by calling voter registration something else.

102.    Plaintiffs complied with the NVRA's notice requirement by providing Defendant with written notices of the violation on August 26, 2022, and October 28, 2022. Defendant has failed to correct the violation within the ninety-day period required under 52 U.S.C. § 20510(b)(1) and set forth in Plaintiffs' March 31, 2023 correspondence.

103.    Defendant has violated, and continues to violate, the NVRA by refusing to accept and use voter registration forms of suspended voters without providing documentary proof of eligibility.

**COUNT TWO**

***Denial of the Right to Vote in Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983***

104.    Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

105.    It is well established that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Thus, "the State may not by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-5 (2000).

106.    Although they are similarly situated, "suspended" voters with past convictions seeking to become active registered voters are treated differently than new registrants with past convictions in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

107.    Though Louisiana law makes a cursory distinction between "new" voters and "suspended" voters, the distinction is arbitrary under state and federal law for the purposes of voter registration. The NVRA's requirements apply to all persons who submit a voter registration

form—whether they are "new" voters or previously "suspended" voters. *See generally* 52 U.S.C. § 20507(a)(1) (outlining requirements for voter registration for "any eligible applicant.").

108.    First, eligible individuals with felony convictions in "suspended" status stand in the same shoes as those individuals with felony convictions who are not in "suspended" status when seeking registration. Both groups have the same purpose for applying to register – to be added to the active voter rolls so they can cast a ballot on Election Day.

109.    Additionally, regardless of whether the State labels the process "registration" or "reinstatement," the mechanism for being added to the voter rolls is the same – completing either the state or federal registration form.

110.    Furthermore, the outcome of "registration" or "reinstatement" is the same. Regardless of whether a voter is added to the rolls by "registration" or "reinstatement," they will follow the same process and regulations for casting their ballots.

111.    Despite being similarly situated, voters applying for what the State labels "reinstatement" face different, arbitrary, and unnecessarily burdensome barriers.

112.    In 2021, Louisiana changed the law to remove the documentary proof requirement for new voter registrations for those with prior felony convictions who are eligible to vote. The State, however, has interpreted and has stated that it will interpret the law as retaining the documentary proof requirement for voters whose registration was suspended due to a felony conviction.

113.    The State already has access to all the information which it demands the voter to produce, including records of the individual's order of imprisonment and proof that the individual has not been incarcerated under that order in the preceding five years. Furthermore, Louisiana's statutory scheme already provides for extensive sharing of conviction records between the

Secretary of State's Office, the Department of Public Safety and Corrections, and local registrars. *See* La. R.S. §§ 171; 171.1; 175; 176.

114.     Because Louisiana maintains records of an individual's order of imprisonment, and because the channels of communications and policies already exist to share information regarding when an individual becomes ineligible, the State could readily communicate information to its agencies regarding when a voter with a felony conviction is eligible.

115.     The requirement that an individual must produce records themselves places the burden onto the individual to track down and even pay for records which are already in possession by the State, creating an arbitrary and unnecessary barrier to voting.

116.     Furthermore, it is irrational for registrars to not use the lists in their possession of ineligible voters to verify both the eligibility of *new* and suspended registrants. The failure to use this information creates unnecessary risks for good-faith new registrants who may simply be mistaken about their eligibility to vote.

117.     Under the Fourteenth Amendment of the United States Constitution, the right to vote may not be denied or abridged without being narrowly tailored to meet a compelling government interest, absent a less restrictive means. Because Louisiana's purported "reinstatement" system implicates the right of eligible individuals to vote, it is subject to heightened scrutiny.

118.     This practice is not narrowly tailored to any potential state interest, as there are much more efficient and indisputably less restrictive means for parish registrar offices to receive such information.

119.    However, there is not even a rational basis to require the individual to produce additional documentation of those criminal records which are already in the State's possession, much less a compelling or important reason to do so.

## **REQUEST FOR RELIEF**

WHEREFORE Plaintiffs respectfully request that this Court:

A.    Declare that Defendant's requirement that facially-eligible voter registrants present additional documentation beyond the voter registration form in order to become actively registered to vote violates the NVRA;

B.    Declare that Defendant's arbitrary distinction in the treatment of suspended voters versus new voters violate the Equal Protection Clause of the Fourteenth Amendment;

C.    Enjoin Defendant from requiring documentary proof of eligibility from voter registrants who were previously suspended for a felony but who present valid voter registration forms and do not appear on the DPSC's list of currently disqualified voters;

D.    Order Defendant to issue statewide guidance that parish registrars may not require documentary proof of eligibility from facially eligible voter registrants that do not appear on the DPSC's list of currently disqualified voters and to provide sufficient training and supervision to ensure that the guidance is followed;

E.    Order Defendant to prominently display relevant guidance for people with felony convictions on their website, in laymen language that is easy to understand;

F.    Award Plaintiffs their reasonable attorneys' fees and costs; and

G.    Grant such other relief the Court may deem just and proper.

Respectfully submitted this 1st day of May, 2023.

*/s/Valencia Richardson*
Valencia Richardson (LSBA #39312)      William P. Quigley (LSBA #07769)
Danielle Lang*                         Loyola University Law New Orleans
Blair Bowie*                           College of Law
Christopher M. Lapinig*                7214 St. Charles Ave. Campus Box 902
Kate Uyeda*                            New Orleans, LA 70118
Allison Walter*                        Quigley77@gmail.com
Campaign Legal Center
1101 14th St. NW Suite 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegal.org
bbowie@campaignlegal.org
vrichardson@campaignlegal.org
clapinig@campaignlegal.org
kuyeda@campaignlegal.org
awalter@campaignlegal.org

*pro hac vice motions forthcoming*