**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VOICE of the EXPERIENCED, on behalf of itself and its members; POWER COALITION for EQUITY and JUSTICE, on behalf of itself and its members; and LEAGUE of WOMEN VOTERS of LOUISIANA, on behalf of itself and its members** | **Case: 3:23-cv-00331-JWD-SDJ** |

v.

**R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana**

<u>**OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**</u>

**NOW INTO COURT,** through undersigned counsel, comes Defendant, R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana, who submits the following Opposition to the Motion for Protective Order filed by Plaintiffs, Voice of the Experienced ("VOTE"), Power Coalition for Equity and Justice ("the Coalition"), and the League of Women Voters ("the League") (collectively, "Plaintiffs").

## I.    INTRODUCTION

The present suit arises out of Louisiana's procedure for reinstatement of voter registration following suspension for conviction of a felony set forth in La. R.S. 18:177. Plaintiffs filed the instant suit against Secretary Ardoin on May 1, 2023, seeking a declaratory judgment, a permanent injunction, and attorney fees and costs.[1] On May 22, 2023, Plaintiffs filed a Motion for Preliminary Injunction.[2] On May 31, 2023, the Court held a status conference with the parties during which the Court scheduled the hearing on Plaintiffs' Motion for Preliminary Injunction.[3] During the

---

[1] R. Doc. 1. Plaintiffs initially failed to file the exhibits to their Complaint (*see* R. Doc. 15), but on May 18, 2023, they were granted leave to supplement their Complaint to include the exhibits. R. Doc. 20.
[2] R. Doc. 21.
[3] R. Doc. 27. The hearing on Plaintiffs' Motion for Preliminary Injunction is scheduled for July 5, 2023.

conference, the Court asked the parties if discovery was necessary in advance of the preliminary injunction hearing. The parties verbalized their discovery requests to each other during the conference. As the Court noted in its minute entry, "[n]either side believes [the discovery requested] will be a problem, but should these requests be difficult or if the current deadlines are affected, the parties are to inform the Court as soon as possible."[4]

Plaintiffs requested the following discovery: (1) the list of suspended felons; and (2) the list from the Louisiana Department of Corrections for those who are ineligible for felony convictions that occurred in Louisiana, which list may include some with out of state convictions if they were supervised on parole or probation by the Louisiana DOC.

Defendant requested the following discovery: (1) the names and contact information for all felons who have been suspended for conviction of a felony and who have attempted to obtain reinstatement by using the federal mail in form or the state mail in form and who have encountered problems with respect there to; and who are members of any plaintiff organization, including the date of birth and mother's maiden name for each individual so that the records may be located for the correct individuals; (2) the parish where reinstatement was sought and the date reinstatement was sought, and the problems encountered by each individual in obtaining reinstatement after suspension for conviction of a felony.

Counsel for Defendant attempted to confirm the discovery requests with Plaintiffs' counsel by email on May 31, 2023.[5] Plaintiffs' counsel did not respond until June 6, 2023 and indicated for the first time, that Plaintiffs had an issue with Defendant's discovery requests.[6] Plaintiffs stated, "to facilitate our search it would be most helpful if the Secretary of State could provide the lists

---

[4] R. Doc. 27.
[5] R. Doc. 30-2, pp. 24-26.
[6] R. Doc. 30-2, pp. 22-23.

we requested first…This would enable our clients to use those lists to help identify affected individuals that are members and/or that they have assisted."[7] When the parties failed to reach an agreement, Plaintiffs filed the instant Motion for Protective Order on June 13, 2023.[8]

Plaintiff VOTE claims it is aware of members who "were unable to vote in a federal election because they were unable to obtain the required paperwork verifying their eligibility in time to register to vote."[9] The Coalition and the League do not contend there is any harm to their members resulting from the voter reinstatement process set forth in La. R.S. 18:177.[10] Defendant seeks only the information for the specific individuals alleged by Plaintiffs as having been harmed by the voter reinstatement process set forth in La. R.S. 18:177.[11]

Plaintiffs should have been aware of these individuals when the Complaint was filed. Indeed, as alleged in paragraph 14 of the Complaint, "VOTE is aware of members who…". Additionally, as alleged in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, "[m]any of VOTE's members have sought assistance from VOTE…," and "[s]ome have been denied the right to vote…".[12] As stated in the Declaration of Norris Henderson attached to the Motion for Preliminary Injunction, "[VOTE] is aware of individuals, VOTE supporters, and VOTE members…".[13] The members of VOTE mentioned in these instances and perhaps otherwise throughout the pleadings are the members whose name and information Defendant seeks to defend against VOTE's claim of associational standing and request for preliminary injunction. This necessarily includes checking with the relevant registrars of voters to see what interactions have

---

[7] R. Doc. 30-2, p. 22.
[8] R. Doc. 30
[9] R. Doc. 1, paragraph 13
[10] R. Doc. 1
[11] *See e.g.,* R. Doc. 1, paragraph 14; R. Doc. 21-1, pp.11-12; R. Doc. 21-3, paragraph 6; R. Doc. 21-4, paragraph 11.
[12] R. Doc. 21-1, pp. 16-17.
[13] R. Doc. 21-3 at paragraph 6; *see also* Declaration of Nziki Wiltz at paragraph 11 (R. Doc 21-4).

occurred with these particular individuals and to learn whether or not they are now registered to vote.

Plaintiffs move the court for a protective order seeking to maintain the confidentiality of the following:

> The names of members of Plaintiff organizations and all personally identifying information, including but not limited to:
> 1. The social security numbers of such individuals, in whole or in part;
> 2. The driver's license numbers of such individuals;
> 3. The birth dates of such individuals;
> 4. The personal telephone numbers of such individuals;
> 5. The personal email addresses of such individuals or other contact information used for electronic messaging;
> 6. The digitized signature of such individuals;
> 7. Other government-issued, including tribal government issued, unique identifiers of such individuals.
> 8. Other information that is not public pursuant to federal or Louisiana law that could reveal the identity of such individuals.[14]

Although VOTE's own allegations in the Complaint allege harm to members who, it claims, were not able to obtain the necessary paperwork to verify their eligibility to vote in a federal election, VOTE wishes to keep the identity of these members confidential. For the reasons set forth below, the Motion for Protective Order should be denied, or in the alternative, the proposed protective order should be revised and limited to the issues set forth in the Motion for Protective Order, should any protective order be required, which Defendant opposes here.

## II.    LAW AND ARGUMENT

Fed. R. Civ. P. 26 provides, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access

---

[14] R. Doc. 30-4.

to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, …including **…**forbidding the disclosure or discovery…"[15] Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[16]

Parties are required, even without waiting for a discovery request, to provide the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."[17]

Parties also must "provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment: (i) the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it may call if the need arises…"[18]

Fed. R. Civ. P. 5.2 (a) relates to redacted filings and states, "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security

---

[15] Fed R. Civ. P. 26(c)(1).
[16] *Ryder v. Union Pac. R.R. Co.,* 315 F.R.D. 186, 188 (M.D. La. 2016), citing *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir.1998).
[17] Fed. R. Civ. P. 26(a)(1)(A)(i)
[18] Fed. R. Civ. P. (a)(3)(A)(i)

number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:

(1) the last four digits of the social-security number and taxpayer-identification number;

(2) the year of the individual's birth;

(3) the minor's initials; and

(4) the last four digits of the financial-account number."

According to Fed. R. Civ. P. 5.2(e), the court may order redaction of additional information for good cause shown.[19]

Plaintiffs failed to show good cause for issuance of a protective order in this case. The proposed protective order is also overly broad and not narrowly tailored to the alleged needs of the Plaintiffs or the facts of the case. Therefore, the Motion for Protective Order filed by Plaintiffs should be denied.

### a.  Plaintiffs have failed to show good cause for issuance of a protective order.

Plaintiffs state in their Memorandum in Support of the Motion for Protective Order that they "seek a protective order prohibiting Defendant from publicly disclosing personally identifying information about Plaintiffs' members without the consent of that individual."[20] Plaintiffs also seek an order protecting the identity of their members.[21]

As discussed above, Defendant does not seek Plaintiffs' entire membership list. Defendant only seeks the identity of the members of Plaintiffs' organizations who, Plaintiffs claim, have encountered problems attempting to reinstate their voter registrations. Defendant's request is only

---

[19] Fed. R. Civ. P. 5.2(e)
[20] R. Doc. 30-1
[21] Id.

for information which is specifically alleged in Plaintiffs' own Complaint and Motion for Preliminary Injunction and is necessary for Defendant to prepare a defense in this matter.

Plaintiffs contend their members who are felons have "unique privacy concerns" and that they are not parties to the lawsuit and have not consented to disclosure of their identities.[22] According to Plaintiffs, the public disclosure of the identity of their members will adversely affect the associational rights of Plaintiffs and their members.[23] In support of this conclusory statement, Plaintiffs attach a Declaration of Emily Posner, general counsel for VOTE since January 1, 2023.[24] Ms. Posner contends, "[a]s formerly incarcerated persons, VOTE members are particularly sensitive to the public disclosure of their information. They often worry that public involvement with the government may adversely impact their housing or employment status. They also worry about retaliation from the government."[25] Ms. Posner admits that VOTE's members often share their stories as part of VOTE's advocacy work and that VOTE always receives permission from the particular member before any such disclosures.[26] Ms. Posner's declaration further provides that "[p]ublic disclosure of personally identifiable information of VOTE members without their consent, however, would hamper VOTE's work, including its advocacy on sensitive issues, because it risks discouraging individuals from working with and communicating candidly with VOTE's staff."[27] Ms. Posner also declares that VOTE has no problem with disclosure of the identity of a member who has consented to such disclosure.[28]

Plaintiffs' motion fails to establish good cause for the protective order they seek because they do not state that they have even contacted any members who are the subject of the discovery

---

[22] *Id.*
[23] *Id* and R. Doc. 30-2.
[24] R. Doc. 30-2.
[25] R. Doc. 30-2 at paragraph 5.
[26] *Id* at paragraph 6.
[27] *Id* at paragraph 11.
[28] *Id* at paragraph 10.

request to seek their consent to such disclosure. Plaintiffs provide only the declaration of Ms. Posner, which states VOTE has no issue with producing the identity of a member who consents to such disclosure, but they provide no statement that such consent has been sought and refused. On this basis alone, Plaintiffs motion must fail as it is premature, at best.

   i.   *The discovery requested relates to the factual allegations of the Complaint.*

The information that Defendant seeks specifically relates to the factual allegations of Plaintiffs' own complaint and Motion for Preliminary Injunction. Defendant has requested the name, contact information, date of birth and mother's maiden name for all members who claim to have encountered problems with the reinstatement process set forth in La. R.S. 18:177. Plaintiff VOTE asserts standing in this matter based on certain of its members experiencing alleged harm in being "unable to vote in a federal election because they were unable to obtain the required paperwork verifying their eligibility in time to register to vote."[29] Clearly, Defendant's request for the identity of those individuals who have experienced such alleged harm relates specifically to the Plaintiffs' own allegations in their Complaint and Motion for Preliminary Injunction.

In *Terrebonne Parish Branch NAACP, et al. v. Piyush "Bobby" Jindal, the Governor of the State of Louisiana, et al*, (U.S.D.Ct. M.D. La., Civil Action No. 14-69-JJB-SCR), the Middle District of Louisiana ordered an organizational plaintiff asserting standing with respect to its members who had allegedly suffered injury because of the defendant Secretary of State's actions to provide the defendant Secretary of State with a "list of all members of the plaintiff organization from its founding to present."[30] Plaintiff, Terrebonne Parish Branch of the NAACP objected, claiming that Interrogatory No. 1 "asks Terrebonne Parish NAACP to waive their rights under

---

[29] R. Doc. 1, paragraph 13
[30] *Terrebonne Parish,* Civil Action No. 14-69, R. Doc. 30, p. 22.

*NAACP v. Alabama*, 357 U.S. 449 (9158)."[31]  Defendant Secretary of State cited the portion of the Complaint where the plaintiff's "other members include numerous Black registered voters who reside in an area of Terrebonne Parish, in which black voters could comprise a majority of the voting age population in at least one district, and whose voting strength is diluted by Section 2 and constitutional violations."[32] The Secretary of State cited *Summers v. Island Inst.*, 555 U.S. 438, 497-502 (2009), for the proposition that parties are not required to take the organization's word that its members are threatened with or have suffered injury," and noted that the discovery inquired into the plaintiff's allegations with respect to standing.[33]

Magistrate Riedlinger of the Middle District of Louisiana granted the Secretary of State's motion to compel, finding "[a]ll of the discovery requests and responses … have been carefully reviewed.  For the reasons stated by the defendant, the plaintiff's discovery responses are deficient and evasive, and their objections are baseless.  No useful purpose would be served by reiterating those reasons in this ruling.  <u>Defendant's discovery is clearly focused on obtaining the facts relevant to the plaintiff's own allegations.</u>"[34] Thus, the defendant, Terrebonne Parish NAACP was ordered to produce its entire membership list to the Secretary of State.

Similarly, here, Defendant's discovery is "clearly focused on the facts relevant to [Plaintiffs'] own allegations." This information will assist Defendant in investigating Plaintiffs' claims and preparing a defense of the allegations. Particularly, Defendant must know the identity of the members who, Plaintiffs contend, were "unable to vote in a federal election because they were unable to obtain the required paperwork verifying their eligibility in time to register to

---

[31] *Id.*
[32] *Id.*
[33] *Id.*, p. 23).
[34] *Terrebonne Parish,* Civil Action No. 14-69, R. Doc. 37, p. 2 (emphasis supplied).

9

vote."[35] Information such as date of birth and mother's maiden name, as well as contact information, will assist Defendant in his investigation by ensuring the accuracy of the identities of the particular members. Defendant must be able to speak with the registrars of voters about these individuals to determine if the individuals were suspended prior to their felony convictions, what attempts, if any, were made by the individuals to reinstate their voter registrations, and what interactions, if any, the individuals had with the appropriate office of the registrar.

Plaintiffs' reliance on *Hastings v. N. E. Indep. Sch. Dist.* is misplaced.[36] The appellants in *Hastings* provided the appellees all names of members whose claims were the subject of the lawsuit. Nevertheless, the appellants continued to seek the names of all members of the organization, even though the identities of the withheld members were unrelated to the factual allegations of the case. The U.S. Fifth Circuit Court of Appeals concluded the appellees did not have to disclose the identities of the members who had no claims or issues associated with the lawsuit. In this case, Defendant only seeks the identity of the Plaintiffs' members who have allegedly encountered problems with the voter reinstatement process at issue in the present suit. Defendant does not seek the entire membership list. Thus, *Hastings* does not apply here.

Plaintiffs' reliance on *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson* is likewise misplaced.[37] The U.S. Supreme Court held that the state's interest in obtaining the organization's membership list was not "sufficient to overcome petitioner's constitutional objections to the production order."[38] But again, the entire membership list was sought in that case. Further, the information sought herein directly relates to the allegations in

---

[35] R. Doc. 1, paragraph 13
[36] *Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 630 (5th Cir. 1980).
[37] *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 78 S. Ct. 1163, 1173, 2 L. Ed. 2d 1488 (1958).
[38] *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. at 465.

Plaintiffs' Complaint. Defendant's interest in the information sought is sufficient to overcome Plaintiffs' constitutional objections.

Similarly, Plaintiffs' reliance on *Young Conservatives of Texas Foundation v. Univ. of N. Texas* is inappropriate.[39] Like the foregoing cases cited by Plaintiffs, *Young Conservatives* involved a request for an entire membership list. The court found that Young Conservatives "made a prima facie showing of arguable First Amendment infringement" by providing "specific evidence that members of its University of North Texas Chapter have been harassed and threatened with physical violence due to their associational affiliation." Here, while VOTE asserts that its executive director and deputy director "have been the subject of several negative and inflammatory city-wide mailers, media stories, and op-eds," VOTE has provided no specific evidence of any such treatment towards its members.[40] The court also noted that "UNT offers no reason why it needs the names and contact information of *all* current members of Young Conservatives' University of North Texas Chapter rather than only those who are classified as nonresidents for tuition purposes (i.e., the standing members in this case)." Here, as previously discussed, Defendant's discovery request is limited to only those individuals who have allegedly been harmed by the reinstatement process set forth in La. R.S. 18:177 (i.e., the members upon whom VOTE has alleged associational standing), not its entire membership list.

Finally, *League of United Latin Am. Citizens v. Abbott* is also distinguishable from the present case.[41] The issue presented was whether "non-party individuals, named by plaintiffs for the purpose of showing associational standing, [may] proceed anonymously" in the pleadings. The

---

[39] *Young Conservatives of Texas Foundation v. Univ. of N. Texas*, 4:20 – cv-973-SDJ WL 2901007 (E.D. Texas Jan.11, 2022).
[40] R. Doc. 30-3, paragraph 9.
[41] *League of United Latin Am. Citizens v. Abbott*, No. EP21CV00259DCGJESJVB, 2022 WL 2806850 (W.D. Texas, July 18, 2022).

ruling, which was expressly limited to "the context of [that] case," was "connected to showing standing *at the pleading stage.*"[42] Here, the issue arises at the hearing stage, not at the pleading stage, where the purpose of the information sought is to defend against Plaintiffs' request for a preliminary injunction, including VOTE's allegations of associational standing.

ii.    *The discovery seeks information upon which Plaintiff VOTE alleges associational standing[43].*

In *Terrebonne Parish Branch NAACP, et al.,* (U.S.D.Ct. M.D. La., Civil Action No. 14-69-JJB-SCR), the magistrate judge rejected the plaintiff organization's reliance on *NAACP v. Alabama*, 357 U.S. 449 (1958) and freedom of association and accepted instead the Secretary of State's reliance on *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-502 (2009) that, with respect to standing, the parties and the court are not required to take the organization's word that its members are threatened with or have suffered injury nor the organization's description of its members. In *Summers,* the U.S. Supreme Court found that "[t]his requirement of naming the affected members has never been dispensed with..., but only where *all* members of the organization are affected by the challenged activity."[44]

In this case, Plaintiffs do not contend that all of their members are affected by the challenged activity. Further, Defendant does not seek Plaintiff organizations' entire membership lists, but only the identity of and information regarding those members who Plaintiffs' pleadings and declarations allege have suffered injury by the alleged actions of the Defendant.

The *Summers* Court also found that affidavits from affected members were required to fulfill the Article III standing requirement. "Without individual affidavits, how is the court to

---

[42] Emphasis added.
[43] Defendant has challenged Plaintiffs' Article III standing in its Motion to Dismiss (R. Doc. 32). Defendant does not waive its arguments supporting that motion, but re-urges and reiterates those arguments as if fully copied herein.
[44] *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-502 (2009).

assure itself that the Sierra Club, for example, has 'thousands of members' who 'use and enjoy the Sequoia National Forest'?"[45] Similarly, the U.S. Supreme Court noted in *FW/PBS, Inc. v. Dallas* that "[e]ven if we could take into account the facts as alleged in the city's affidavit, it fails to identify the individuals whose licenses were revoked and, therefore, falls short of establishing that any petitioner before this Court has had a license revoked under the civil disability provisions."[46]

The identity of any members allegedly affected by the challenged activity is clearly required to be provided to Defendant under the rules of Federal Civil Procedure and relevant jurisprudence to establish associational standing. Since the identities of such individuals must be disclosed, it follows that such disclosure should not be made part of any protective order.

> iii.    *Plaintiffs failed to allege specific facts necessary to show good cause for issuance of the protective order.*

As previously stated, Plaintiffs have failed to establish specific reasons particular to each individual member allegedly affected by the reinstatement process as to why public disclosure of their identity would cause "annoyance, embarrassment, oppression, or undue burden or expense so as to meet the "good cause" threshold for issuing a protective order.[47] Rule 26(c) requires a party seeking a protective order to bear the burden of showing "the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[48] Plaintiffs failed to provide any specific or particular facts to demonstrate good cause for the protective order. Plaintiffs merely make general and conclusory statements in support of their motion for protective order. Plaintiffs provided an affidavit of their general counsel

---

[45] *Summers*, 555 U.S. at 499.
[46] *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 235, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).
[47] Fed R. Civ. P. 26(c)(1).
[48] *Ryder v. Union Pac. R.R. Co.,* 315 F.R.D. 186, 188 (M.D. La. 2016), citing *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir.1998).

who has been in that position a mere five months without any specific individualized facts about the allegedly affected members that would support the issuance of a protective order.

iv.       <em>A protective order would not balance the interests of all parties.</em>

Plaintiffs argue that the proposed protective order "strikes a balance between Plaintiff VOTE's interest in confidentiality of its memberships and the Defendant's ability to probe Plaintiff VOTE's evidentiary basis for standing."[49] Plaintiffs contend that the proposed protective order would allow Defendant to receive the information requested, yet "prohibit Defendant from publicly disclosing this information in, for example, a filing in this litigation."[50] This is not sufficient to balance the interests of the parties.

As discussed above, Defendant must have the ability to share the information regarding the alleged affected members with the appropriate registrar of voters in order to determine if the individuals were suspended prior to their felony convictions, what attempts, if any, were made by the individuals to reinstate their voter registrations, and what interactions, if any, the individuals had with the appropriate office of the registrar. Plaintiffs note that the proposed protective order includes a provision "explicitly permitting Defendant to consult parish registrars."[51] In fact, the proposed protective order includes a provision authorizing Defendant to disclose the information to "**<u>county</u>** election officials to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgment and Agreement to be Bound.'"[52] Assuming this provision authorizes Defendant to consult with the parish registrars, this is not an acceptable solution.

---

[49] R. Doc. 30-1, p. 7.
[50] *Id.*
[51] *Id.*
[52] *See* R. Doc. 30-4, p. 4 (emphasis added).

The parish registrars are not parties to this lawsuit and do not work for the Secretary of State.[53] As such, neither the Court nor the Secretary of State have control over the registrars. If a parish registrar is unwilling to sign the "Acknowledgement and Agreement to be Bound," the protective order would preclude Defendant from disclosing the information to the registrar and thus, would prevent Defendant from obtaining information necessary to his defense. This is not adequate to protect Defendant's interest in and need for the information. Accordingly, the information requested should not be made part of any protective order.

### b. Plaintiffs proposed protective order is too broad.

The proposed protective order submitted by Plaintiff clearly does not apply to the facts of this case as it contains provisions which are broad, generic, and unrelated to Louisiana's elections laws and system of government.

First, the proposed protective order seeks to make confidential not only the names and contact information for the Plaintiffs' members, but also their social security number, birth date, driver's license number, personal telephone number, personal email address, digitized signature, and other government issued, including tribal issued, unique identifier.[54] The information sought by Defendant is limited to the names of the alleged harmed individuals, their contact information, date of birth, and their mother's maiden name.[55] No protective order is necessary for the additional information contained in the proposed protective order as that information is not sought by Defendant, and Defendant believes it has no relevance to the claims or defenses asserted in this matter. Also, Louisiana does not have digitized signatures, and it is unclear what is meant by "other government issued, including tribal issued, unique identifier."

---

[53] *See* La. R.S. 18:51 ("There shall be a registrar of voters for each parish in the state, who shall be appointed by the governing authority of the parish.").
[54] R. Doc. 30-4.
[55] See R. Doc. 30-1.

Second, much of the information sought to be protected is required to be maintained as confidential pursuant to La. R.S. 18:154, which provides,

> Notwithstanding any provision of this Section to the contrary, the **registrar**, the clerk of court, the **Department of State**, the office of motor vehicles of the Department of Public Safety and Corrections and any entity that contracts with the office, each voter registration agency and any entity that contracts with a voter registration agency, and any person who handles the voter registration application form of another person shall be prohibited from circulating on a commercial list or otherwise disclosing the following:
>
> > (a) The fact that a registered voter is entitled to assistance in voting.
> > (b) The social security number of a registered voter.
> > (c) The driver's license number of a registered voter.
> > (d) The day and month of the date of birth of a registered voter.
> > (e) The mother's maiden name of a registered voter.
> > (f) The electronic mail address of a registered voter, except a registered voter who has qualified as a candidate for public office.
> > (g) The short message service number of a registered voter.

Since all but the "digitized signature, and other government issued, including tribal issued, unique identifier" is already required to be kept confidential by the Department of State and the registrars, issuance of a protective order requiring confidentiality of this information is unnecessary. Since Louisiana does not have digitized signatures and it is unknown what is meant by "government issued unique identifier," issuance of a protective order requiring confidentiality of this information is also unnecessary.

Third, the proposed protective order contains broad and boilerplate language that must be deleted and/or revised in the event the Court decides to issue a protective order. For instance, there is a provision allowing for any party or third party who has received a subpoena to designate other material as confidential if they make a "good faith determination" that the material should be designated confidential. Defendant strongly objects to this provision which would allow for a broad application of the protective order with the decision-maker being the party seeking to invoke the confidentiality provisions of the protective order. This provision runs afoul of Fed. R. Civ. P.

26 and should not be included in any protective order entered in this case. There is also a reference to "county," which shows this proposed protective order is simply a form document and not narrowly tailored to the needs of this case. The proposed protective order also refers to "Particular Individual Information" but does not define this phrase for purposes of the proposed protective order.

### III.    CONCLUSION

Plaintiffs failed to show good cause for issuance of a protective order in this case. The proposed protective order is overly broad and not narrowly tailored to the alleged needs of the Plaintiffs or the facts of the case. Defendant should not have to subject himself, his agents, and his employees to potential violation of a protective order to defend the instant suit against him. The motion for protective order filed by Plaintiffs should be denied.

WHEREFORE, for the foregoing reasons, Defendant, R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana, respectfully requests that this Honorable Court deny Plaintiffs' Motion for Protective Order.

Respectfully submitted:

/s/ Celia R. Cangelosi
CELIA R. CANGELOSI
Bar Roll No. 12140
5551 Corporate Blvd, Suite 101
Baton Rouge, LA 70808
Telephone: (225) 231-1453
Facsimile: (225) 231-1456
Email: celiacan@bellsouth.net

-and-

SHOWS, CALI, & WALSH, LLP

/s/ John C. Walsh
John C. Walsh (La. Bar No. 24903)
john@scwllp.com

17

Mary Ann M. White (La. Bar No. 29020)
maryannw@scwllp.com
Caroline M. Tomeny (La. Bar No. 34120)
caroline@scwllp.com
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 20th day of June, 2023, a copy of the foregoing has on this date been served upon all counsel of record via CM/ECF system and has been filed electronically with the Clerk of Court using the CM/ECF system.

/s/ Caroline M. Tomeny
Caroline M. Tomeny