## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| VOICE of the EXPERIENCED, *on behalf of itself and its members*; POWER COALITION for EQUITY and JUSTICE, *on behalf of itself and its members*; and LEAGUE of WOMEN VOTERS of LOUISIANA, *on behalf of itself and its members*;<br><br>               *Plaintiffs*,<br><br>v.<br><br>NANCY LANDRY, *in her official capacity as Secretary of State of Louisiana*,<br><br>               *Defendant*. | Civil No. 3:23-cv-00331-JWD-SDJ |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Voice of the Experienced ("VOTE"), the Power Coalition for Equity and Justice ("Power Coalition" or "PCEJ"), and the League of Women Voters of Louisiana (the "League") bring this action against Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana, and allege the following:

### INTRODUCTION

1.    This case challenges Louisiana's burdensome, discriminatory, and unnecessary requirement that certain voters provide documentary proof of eligibility to register to vote, while other similarly situated voters are not required to do so. Plaintiffs' claims arise under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment.

2.    Under the Louisiana Constitution and statutes, Louisianans are temporarily disenfranchised upon incarceration for a felony conviction, but the right to vote is restored

automatically and immediately on discharge of sentence or, if still on parole, once five years have elapsed since incarceration. However, Louisiana law arbitrarily treats voter registrants with felony convictions differently depending on whether they previously registered to vote prior to their incarceration. A person who was previously registered to vote must present documentary proof of their renewed eligibility. If they do not provide specific paperwork that can only be obtained in-person from certain officials in Louisiana's Department of Public Safety & Corrections ("DPSC or "DOC"), their voter registration will be rejected. On the other hand, a person who is registering for the first time is not required by law to provide such paperwork and is supposed to be registered like any other individual. The same is true for individuals who were convicted of a felony but never subject to incarceration. Nevertheless, in practice some, but not all, such registrants are also required to provide the paperwork, depending on the parish where they reside.

3.      Regardless of an individual's provision of this paperwork, Louisiana's elections officials already have in their possession sufficient information to verify the restoration of voting rights for registrants with past felony convictions. Thus, this discriminatory treatment is irrational, imposes unnecessary burdens on the right to vote, and allows the State to shirk its responsibility to verify voter registrations from new registrants.

4.      A vestige of Jim Crow, Louisiana's modern felony voter disenfranchisement laws are entangled with a historical effort to use the criminal legal system to suppress the Black vote. Until 2019, Louisiana had one of the highest voter disenfranchisement rates for individuals with felony convictions in the United States. Pursuant to Louisiana's 1974 Constitution, the Legislature has the discretionary power to disenfranchise only individuals who are under order of imprisonment for a felony conviction. La. Const. art. I, § 10(A).

5.      In 1976, the Legislature used that power to temporarily disenfranchise individuals "under an order of imprisonment," which it defined broadly as not just people who are actually incarcerated for a felony conviction, but also individuals who are on probation or parole.

6.      In 1997, the Legislature enacted a process for "suspending" the registrations of certain individuals, including individuals who were previously registered to vote but later were convicted of a felony. 1997 La. Act No. 1420. The "suspended" voter would then have a flag on their registration file such that they could not vote. However, their registration could be "reinstated" once the registrar received "documentation from the appropriate correction official" showing that the individual was "no longer under an order of imprisonment." *Id.* The requirement that such documentation be provided in-person by the voter was added in 1999. 1999 La. Act No. 1381. This requirement was not an eligibility criterion or a necessary step for restoring the right to vote, but instead an additional requirement for registration. Indeed, it could not have been an eligibility criterion or a rights restoration requirement: such individuals were no longer "under an order of imprisonment" and thus could not be disenfranchised under the Louisiana Constitution, as the state Constitution only allows the Legislature to disenfranchise individuals who are "under an order of imprisonment." La. Const. Ann. art. I, § 10.

7.      In 2019, the Louisiana Legislature passed Act 636, which provided that individuals with felony convictions who have not been incarcerated for at least five years are eligible to register to vote. Previously, only those individuals who had completed the terms of their sentence, including probation and parole, could register to vote. Act 636 opened the door to voting rights restoration for approximately 30,000 Louisianans on either probation or parole. Since its passage, tens of thousands more Louisianans have had their voting rights restored.

8.      Despite Act 636's passage, Louisiana struggled to implement access to the right to vote for individuals with felony convictions. Initially under Act 636, those still on probation or parole had their voting rights restored only upon submission of documentation from the Department of Corrections to a local registrar's office showing that they had not been incarcerated for a felony within the last five years. *See* 2018 La. Act No. 636 (H.B. 265). In other words, for those still on probation or parole, restoration of the right to vote was not automatic and did not occur until the prospective voter met this paperwork burden. *Id.* In parallel, Act 636 added a paperwork requirement for reinstatement of registration for people who were five years out from incarceration. In turn, because this paperwork is not readily available to many affected citizens, this requirement prevented many of the voters whose rights could have been restored from exercising that right. Moreover, parishes disparately and arbitrarily implemented the paperwork requirement, requiring documentation of first-time registrants and those who never lost the right to vote, and failing to adequately advise individuals about how to obtain the necessary documentation.

9.      In response to this confusion, the Louisiana Legislature passed Act 127 in 2021, removing the paperwork requirement for rights restoration for people who were five years out from prison. Act 127 made clear that an individual who is under an order of imprisonment for conviction of a felony but has not been incarcerated pursuant to the order within the last five years is eligible to vote regardless of whether they present proof of eligibility to the registrar. *See* 2021 La. Act No. 127 (H.B. 378) (deleting "if the person submits documentation to the registrar of voters"). This has always been true for people who are no longer under an order of imprisonment because they cannot constitutionally be disenfranchised.

10.    Importantly, elections officials already have information in their possession as to who is ineligible because of a felony conviction. The DPSC has long been required to report to election officials the information of Louisianans convicted of a felony and placed under an order of imprisonment. *See* 1987 La. Act No. 831. Election officials would use those reports to place any currently registered voters who appeared on the list into suspended status. *Id*. Act 127 ensured that this list from DPSC would only contain people who are currently ineligible to vote: people actually incarcerated for order of imprisonment and people on probation or parole who have been released from imprisonment for less than five years. *See* 2021 La. Act No. 127 (H.B. 378). The Act also required the DPSC to share individual information about any registrant upon the request of parish election officials. *Id.* In August 2022, the DPSC issued a regulation requiring that it send information to the Secretary of State that identifies 1) individuals who are incarcerated, 2) individuals who have been on parole or probation for less than five years, and 3) individuals under an order of imprisonment for an election crime. In other words, the list from DPSC is authoritative as to who is currently disenfranchised by reason of a Louisiana felony conviction after Act 127. If a person who once appeared on the list no longer does, they are no longer disqualified from voting by reason of a Louisiana felony. This list is more accurate than the Secretary of State's list of suspended voters, which includes thousands of individuals who were once ineligible, but who have since become eligible.

11.    However, the Defendant continues to require documentary proof of eligibility from voter registrants whose registrations were previously "suspended" due to an order of imprisonment for a felony conviction, even though these "suspended" voters have their right to vote automatically restored under law, and even where an individual cannot physically obtain the paperwork.

12. The paperwork requirement for suspended voters is a part of a long history of erecting barriers for individuals with felony convictions to gain access to the franchise in Louisiana, a practice with Jim Crow-era origins.

13. The Supreme Court has specifically held that states cannot impose additional documentation requirements on voters via the voter registration form. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 4 (2013) ["*ITCA*"] (quoting 42 U.S.C. § 1973gg–4(a)(1), now codified as 52 U.S.C. § 20505). Defendant's paperwork requirement violates this prohibition, as well as federal law requiring that states place eligible registrants on the voter rolls and undertake voter registration programs in a uniform and nondiscriminatory manner.

14. Defendant's paperwork requirement also violates the Equal Protection Clause of the Fourteenth Amendment because the requirement arbitrarily treats eligible "new" voters with prior felony sentences differently from similarly situated applicants who had previously registered to vote, and results in the differential treatment of voters based on which parish they live.

## JURISDICTION AND VENUE

15. This action is brought under 42 U.S.C. § 1983, 52 U.S.C. §§ 20507 and 20510, and the United States Constitution. This Court therefore has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

16. This Court has personal jurisdiction over the Defendant because she is a citizen of Louisiana.

17. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District and because a substantial portion of the events giving rise to these claims occurred in the Middle District of Louisiana.

**PARTIES**

18.     Plaintiff **Voice of the Experienced ("VOTE")** is a nonpartisan, grassroots nonprofit organization founded and operated by formerly incarcerated people. VOTE has three chapters, New Orleans, Baton Rouge, and Lafayette, as well as members throughout Louisiana. The organization advocates to restore the full human and civil rights for people who are incarcerated and people who are formerly incarcerated. Some areas of the organization's work include but are not limited to voting rights, medical rights, and employment rights. VOTE's membership is comprised of formerly incarcerated people and their family members, as well as community members. VOTE members also actively engage eligible voters incarcerated in parish jails by registering them to vote, following up with them on if they need additional documentation of eligibility, and ensuring access to absentee ballots.  VOTE also engages its membership through direct organizing, voter education, registration drives, and know-your-rights workshops, and is considered a leader in criminal justice and voting rights reform both nationally and in Louisiana.

19.     Through its rights restoration work, VOTE is aware of staff and members who had their voter registrations suspended because of a felony conviction, became eligible to vote, and have been required to provide documentary proof of their eligibility before the State allowed them to register to vote. VOTE is also aware of eligible, suspended voters in parish jails who sought registration and were required to provide documentary proof of their eligibility, but could not provide documentation because of their eligibility. Some of these members were unable to vote in a state or federal election because they were unable to obtain the required paperwork verifying their eligibility in time to register to vote. These members and Louisiana citizens are harmed by the onerous process imposed by state law that requires them to provide documentation to prove their eligibility in order to register to vote, despite their facial eligibility. This process requires

members to seek documentation, ensure that the documentation they were provided is correct, and submit the documentation in person to their parish registrar before they can register to vote.

20.    For the eligible voters incarcerated in parish jails that VOTE is assisting to get registered, this process is ultimately impossible for them to comply with because they cannot submit the paperwork in person.

21.    To assist its constituents and other community members, including eligible voters incarcerated in parish jails, with the rights restoration process, VOTE has had to divert significant resources from its other activities related to its core mission. Specifically, the paperwork requirement has resulted in VOTE diverting significant resources to educate voters on the paperwork requirement and help suspended voters navigate the process of complying with it. Staff and volunteers must hold public education workshops to explain the requirements to register to vote after suspension, do additional outreach on behalf of suspended voters, and even help taxi those individuals to the proper offices to acquire paperwork and register to vote.

22.    Additionally, VOTE has had to create original resources and material because neither the Secretary of State's website nor the local registrars have sufficient information available to the public on what suspension is nor how to obtain the paperwork required for reinstatement. VOTE must also divert resources to advise registrants on how to get the paperwork. VOTE would not have to engage in this additional education and outreach for individuals with felony convictions but for the documentary proof of eligibility requirement.

23.    Plaintiff **Power Coalition for Equity and Justice ("Power Coalition" or "PCEJ")** is a nonpartisan coalition of community-based organizations. Headquartered in New Orleans, Louisiana, Power Coalition educates and empowers voters across Louisiana. Power Coalition advances its mission with the support of a small staff, community volunteers, and

partnerships with nonprofit, organizing, and advocacy organizations. Collectively, Power Coalition's network unites around an integrated civic engagement strategy to amplify the voices of those who have been historically marginalized, with a focus on Black Louisianans and communities of color. Power Coalition's work includes outreach to voters impacted by the criminal legal system in Louisiana, working with partners, including VOTE, to provide voter registration, education, and engagement to eligible individuals with prior felony convictions, most of whom are Black Louisianans.

24.     Power Coalition diverts significant resources from its other activities related to its core mission to assist voters with registering to vote after suspension. Power Coalition provides voter registration support and voter education to hundreds of thousands of Louisiana voters across the state. This includes running an "11-touch program" across a universe of about 600,000 voters during election cycles, aiming to engage with these voters eleven times each over the course of an election through a mix of text messages, door-knocking, calls, and other forms of outreach. The outreach is often conducted by community volunteers and hundreds of paid canvassers, who encounter individuals with felony convictions during their voter engagement work and are who are trained to discuss the paperwork requirement with impacted individuals. For eligible individuals on the suspended list, Power Coalition must divert significant resources to providing additional education and assistance about the paperwork requirement that it would not otherwise have to do. For example, phone bankers and canvassers must spend additional time speaking with the individual, sometimes up to twice or three times as long as a voter without a felony conviction. This means that the canvasser reaches fewer voters per shift and that PCEJ must spend additional resources to hit its outreach goals. Additionally, because of the challenges posed by the reinstatement process, Power Coalition does not always have the staff capacity to assist voters with

completing the voter registration process. Absent the paperwork requirement, PCEJ would be able to reach additional voters, and resources expended on educating voters about the onerous reinstatement process would otherwise be spent on Power Coalition's engagement with more Louisiana voters, registering voters, and encouraging them to vote.

25.    Plaintiff **League of Women Voters of Louisiana (the "League")** is a nonpartisan, nonprofit organization that seeks to encourage informed and active participation in government. Formed in the 1940s, the League is a state chapter of the League of Women Voters of the United States, which was integral in the passage of the National Voter Registration Act of 1993. The League has six chapters across Louisiana: the Caddo-Bossier Chapter, Lafayette Chapter, New Orleans Chapter, St. Tammany Chapter, Tangipahoa Chapter, and Iberia Chapter. The League's mission is to encourage informed and active participation in government, increase voter understanding of major public policy issues, and influence public policy through education and advocacy. The League ensures that all eligible individuals have the opportunity and information needed to vote, with a particular focus on traditionally underrepresented and underserved communities, including voters impacted by the criminal legal system, people of color, and first-time voters. The League's members include hundreds of individuals across the state of Louisiana who share in its mission to register, educate, and engage eligible voters. Because the League is an entirely volunteer-based organization, it relies heavily on the time and dedication of its unpaid members and volunteers to advance its mission.

26.    The League diverts significant resources from its other activities related to its core mission to assist its constituents and other community members with the voting rights restoration process for Louisianans with past felony convictions. Specifically, the paperwork requirement has resulted in the League diverting significant volunteer time and money away from its priorities to

educate impacted voters and help them navigate the process of complying with it. For eligible individuals on the suspended list, the League must divert significant resources providing additional education and assistance about complying with the paperwork requirement that it would not otherwise have to do. Resources expended on navigating the onerous process for these voters would otherwise be used towards registering and engaging more Louisiana voters and encouraging them to vote. Specifically, the League has identified target groups of voters that it would like to dedicate its volunteer time and money toward, such as eligible incarcerated voters, young voters, and inactive voters. However, educating voters on the paperwork requirement and addressing the confusion it creates directly reduces the League's available resources to spend on its other priorities.

27.    Defendant **Nancy Landry** is the Secretary of State of Louisiana and is sued in her official capacity. As Louisiana's chief election officer, Defendant Landry is tasked with enforcing state and federal election laws in Louisiana, including the National Voter Registration Act. La. R.S. 18:18; 52 U.S.C. § 20509.

## LEGAL FRAMEWORK

### *Louisiana's Felony Disenfranchisement Schemes*

28.    The Louisiana Constitution provides that "[e]very person who is both a citizen of the state and of the United States, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended for a person . . . who is under an order of imprisonment for conviction of a felony." La. Const. art. I, § 10(A).

29.    Prior to the Civil War, Louisiana only disenfranchised individuals for criminal convictions if they were convicted of one of four election-related felonies. Brief of Amicus Curiae NAACP Legal Defense Fund *et al.* at 9, *VOTE v. Louisiana*, No. 2017-1141 (La. App. 1 Cir. Nov.

6, 2027), available at https://www.sentencingproject.org/app/uploads/2022/08/Ex.-A-Vote-Amicus-Br-11.6.pdf. However, after Reconstruction and the passage of the Fifteenth Amendment, which extended voting rights to Black men, Louisiana dramatically expanded its criminal disenfranchisement law. *Id.* at 9. Louisiana's 1898 Constitution permanently disenfranchised individuals convicted of *any* felony and did so with the explicit and implicit purpose of suppressing the votes of Black Louisianans, who constituted half of the state's population at the time. *Id.* at 10-15.

30.     When the Louisiana Constitution was amended in 1974, it gave the Legislature the limited, discretionary power to temporarily disenfranchise individuals who are "under an order of imprisonment for a conviction of a felony." La. Const. art. I, § 10 (A).

31.     In 1976, the Legislature passed a law that temporarily suspended the right to vote from Louisiana citizens "under an order of imprisonment." The Legislature defined "under an order of imprisonment" broadly to mean "a sentence of confinement, whether or not suspended, whether or not the subject of the order has been placed on probation, with or without supervision, and whether or not the subject of the order has been paroled." Acts 1976, No. 697, § 1 (codified at La. R.S. 18:102(B); La. R.S. 18:2(8)). Thus, the Legislature disenfranchised all individuals who were in prison for a felony as well as those serving community supervision, including parole or probation in place of incarceration.

*"Suspension" and "Reinstatement" of Voter Registration Under Louisiana Law*

32.     Current Louisiana law requires parish registrars to send notices to active registered voters who are currently under an order of imprisonment and (1) have been incarcerated pursuant to the order in the last five years or (2) have been convicted of an election offense. This notice must inform the individual to appear in person at the registrar's office within twenty-one days to

show cause why his voter registration should not be suspended. La. R.S. 18:176(A) (citing La. R.S. 18:171, 18:171.1). If the voter fails to do so, the registrar places the individual's voter registration in "suspended" status. *Id.*

33.    In other words, a voter's registration is placed in "suspended" status if 1) the individual is a registered, active voter, and 2) is then convicted of a felony and incarcerated for that conviction. *See* La. R.S. 18:176(A). While on suspended status, a person may not cast a ballot and thus for all intents and purposes, is not registered to vote. The registration will remain "suspended" indefinitely, even after the person is released from prison, unless "reinstated."

34.    Under La. R.S. 18:177(A)(1), a voter whose registration has been "suspended" under § 18:176(A) may only be "reinstated" when:

> [T]he person appears in the office of the registrar and provides documentation from the appropriate correction official showing that such person is no longer under an order of imprisonment or, if the person is under such an order, that the person has not been incarcerated pursuant to the order within the last five years and the person is not under an order of imprisonment related to a felony conviction pursuant to election fraud or any other election offense.

### *Act 636 Opened the Door for Rights Restoration for 30,000 Louisianans*

35.    Louisiana enacted Act 636 in 2019, which provided that:

> [A] person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order if the person submits documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to the order within the last five years.

2018 Act 636 § 1 (codified at La. R.S. 18:102(A)(1)(b) (2019)).

36.    Act 636 opened the door to re-enfranchisement for an estimated 30,000 Louisiana voters who were on probation or parole. Under Act 636, individuals on probation or parole who had not been incarcerated pursuant to the order within the last five years could restore their right to vote, unless they were convicted of an election-related crime. 2018 La. Act No. 636 (H.B. 265).

13

However, to restore their right to vote under Act 636, those who were still on probation or parole were required to submit paperwork demonstrating that they had not been imprisoned for that conviction within the last five years.

37.    Act 636 also updated the voter registration form allowing for the registrant to attest that they are not currently under an order of imprisonment "or, if the applicant is under such an order, that the applicant has not been incarcerated pursuant to the order within the last five years . . . ." 2018 Act 636 § 1 (codified at La. R.S. 18:104).

38.    Similarly, Act 636 allowed for a person who had previously been registered to vote but whose registration had been suspended due to imprisonment for a felony to be reinstated on the voter rolls:

> [W]hen the person appears in the office of the registrar and provides documentation from the appropriate correction official showing that such person is no longer under an order of imprisonment or, if the person is under such an order, that the person has not been incarcerated pursuant to the order within the last five years. . . . .

2018 Act 636 (codified at La. R.S. 18:177(A)(1) (2019)). This additional documentation is known as the "paperwork requirement."

39.    In the months following Act 636's, the Department of Public Safety and Corrections ("DPSC") created a "Voter Eligibility Certificate" (VRC) within their internal database, which can only be produced by DPSC at one of the Probation and Parole Offices in Louisiana. The VRC became the standard form that the DPSC provided to individuals with felony convictions who needed the additional documentation to register to vote.

40.    Despite these significant changes to Louisiana's election code, the Secretary of State produced no educational materials for DPSC officers or applicants produced by the Secretary of State, and no guidance provided for applicants on the voter registration website. The Secretary

of State provided no notice to any people incarcerated, on parole or probation, that they were

placed on an indefinite "suspended" list.

### Act 127 Automatically Restored the Right to Vote to at least 30,000 Louisianans and Eliminated the Documentary Proof of Eligibility Requirement

41.     In 2021, Louisiana enacted Act 127, which repealed the paperwork requirement for

voter restoration from Act 636. La. R.S. 18:102 (2021). Specifically, Act 127 amended the

disenfranchisement statute by striking the condition that a person who has not been incarcerated

for the previous five years present proof of eligibility to the registrar as a precursor to re-

enfranchisement:

§ 102.  Ineligible persons
A.  No person shall be permitted to register or vote who is:
(1) *        *        *
(b)  Except as provided in Subparagraph (c) of this Paragraph, a person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order ~~if the person submits documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to the order within the last five years~~.

42.     By removing the requirement that an individual must provide documentary proof

of eligibility, Act 127 made clear that an individual who has not been under an order of

imprisonment or incarcerated pursuant to the order within five years has their right to vote restored

*automatically*. This automatic restoration occurs regardless of whether an individual presents

documentary proof to the registrar. 2021 La. Act No. 127 (H.B. 378).[1] In other words, a person

who has not been incarcerated for a felony conviction in the last five years is immediately restored

the right to vote pursuant to Act 127 and the Louisiana Constitution.

---

[1] Plaintiffs are aware that this Court has already held that the additional documentation requirement is "an illustration of Louisiana acting pursuant to its long-recognized power to determine the voting eligibility of those with felony convictions. . ." ECF No. 155 at 70. Based in part on that finding, the Court dismissed Plaintiffs NVRA claims. *Id.* Plaintiffs maintain that reinstatement is not a part of the voting rights restoration process where Act 127 automatically restores those rights. Rather, reinstatement serves as a step in the voter registration process for certain individuals.

43.    Act 127 also requires DPSC and the United States Attorneys to share information on felony convictions and service of sentences with the Secretary of State, with the Department of State, and the parish registrars, so that they can confirm voter eligibility without relying on the individual voter to provide documentation related to their felony convictions.

44.    Although DPSC had already been providing data reports to the Secretary of State, Act 127 clarified and simplified the process: the DPSC would now only provide the SOS with a list of those individuals currently ineligible to vote due to their conviction status.

45.    Despite Act 127, Defendant has continued to impose a paperwork requirement on people with felony convictions seeking to register to vote if the relevant individual was previously registered prior to their felony conviction, and sometimes on individuals who never lost the right to vote in the first place.

46.    As dictated by Act 127, Louisiana's eligible voter registrants with past felony convictions (i.e., those who are no longer incarcerated, or if still on probation or parole, have not been incarcerated pursuant to the order for five years, except if convicted of an election-related crime) who were not previously registered may, according to the law, simply submit a voter registration form to become registered to vote. *See* La. R.S. 18:101.

47.    However, the same process is not made available to those who were previously registered to vote in Louisiana prior to their incarceration.

48.    An individual who is registered to vote but becomes ineligible because of incarceration due to a felony conviction is placed in "suspended" status and removed from the active voter rolls. *See* La. R.S. 18:176. That individual becomes eligible to vote again upon being released from incarceration, or the passage of five years since incarceration if still on parole. They

may only become re-registered (or "reinstated") to vote by submitting paperwork demonstrating their eligibility. *See* La. R.S. 18:177.

49.     Defendant acknowledged this dissimilar treatment of similarly eligible applicants, asserting that "Louisiana law provides different procedures for individuals who are registering to vote and whose voting rights are not currently suspended within our system for [a] felony conviction, and for individuals whose voting rights are or have been suspended for a felony conviction." Ex. 3 at 2 (citing La. R.S. 18:171, 177, 171.1, 176(A)(3)(B)).

50.     La. R.S. 18:177 need not and should not be read to require documentary proof of eligibility after a felony for any person eligible to vote under § 18:102. Although it states that a person who provides this documentation *shall* be reinstated, it does not prohibit the registration of those who do not present it. Such a reading would conflict with other Louisiana law.

51.     The Louisiana Constitution has always mandated automatic voting rights restoration for those who are no longer under an order of imprisonment.  Indeed, the Constitution does not empower the legislature to infringe upon the right to vote of otherwise qualified citizens who are not under an order of imprisonment, regardless of prior felony conviction. Yet the re-registration process for these individuals requires them to submit additional documentary proof of eligibility to become active voters and to be able to cast a ballot.

52.     Advocates previously notified the Secretary of State's Office in 2020 that this documentary proof of eligibility requirement, also known as the paperwork requirement, violated the NVRA. *See* Ex. 1.

53.     Act 636 re-enfranchised individuals on probation and parole for non-election related offenses on the condition that they "submit[] documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to

the order within the last five years." *Id.* At that time, restoration of the right to vote was dependent on submission of the paperwork. However, Act 127 made restoration automatic for individuals who have not been incarcerated for a felony within the last five years, *regardless* of whether they have submitted paperwork confirming that they are not under an order of imprisonment or have not been incarcerated pursuant to the order in the last five years. 2021 La. Act No. 127 (H.B. 378).

54.     The Secretary of State does not allow a person who has been suspended for a felony conviction to avail themselves of the ordinary registration process available to all other eligible voters in Louisiana. In order to become an active voter registrant, the Secretary requires that the person present in person to the registrar the documentary proof of eligibility outlined in the reinstatement process. This is true even if the individual submits a new voter registration form— it will be denied without the additional paperwork. *See* Ex. 3 at 3.

55.     La. R.S. 18:177 does not define what documentation must be provided and states only that it must be "documentation from the appropriate correction official." The statute also does not define who is an "appropriate correction official." *Id.*

## **FACTUAL ALLEGATIONS**

***The State Continues to Impose a Paperwork Requirement for Those Re-Registering to Vote After a Felony Conviction, and Fails to Properly Train Parish Officials Regarding Registrants with Felony Convictions Who Do Not Need to Submit Paperwork***

56.     Even though other forms of documentation may certify the same information as the VRC, such as discharge paperwork, parish registrars often only accept VRCs as valid documentation for reinstatement.

57.     Moreover, the VRC is often only available upon visiting the Parole and Probation office in-person. Upon information and belief, a parish registrar may require a VRC even if the individual does not have a parole or probation officer to report to.

58.    Upon information and belief, this requirement also prevents eligible, incarcerated individuals from registering to vote if their registrations are in "suspended" status. Because every individual is required to reinstate their registration in-person, incarcerated people are physically unable to fulfil the paperwork requirement. The Secretary of State also provides no exception to the in-person requirement for incarcerated voters whose registrations were suspended but who are eligible to reinstate their registration while they are incarcerated.

59.    Upon information and belief, the Secretary of State does not properly train parish officials regarding two groups of individuals with felony convictions who, although they may have a felony conviction, are not required to show additional documentation even under Defendant's current interpretation of La. R.S. 18:177. The result of Defendant's confusing policy is that even individuals whose registrations were never suspended, or first-time registrants, might still be subject to the paperwork requirement.

60.    First, eligible individuals who were not registered before their conviction, and therefore were not "suspended," do not need to show paperwork to register for the first time. *See* La. R.S. 18:102; 2021 La. Act No. 127 (H.B. 378). Some parish registrars are aware of this and do not require the paperwork of these first-time registrants. However, upon information and belief, many parish registrars require eligibility paperwork of all individuals with felony convictions, including first-time registrants. Whether such paperwork is required varies from parish to parish, as some parish registrars are aware that such individuals need not provide documentation of eligibility while other parish registrars are not.

61.    Second, individuals with felony convictions who were never subject to incarceration never lost the right to vote, and are thus facially eligible to vote. Under Louisiana law, previously registered individuals can only be suspended for a felony conviction if they are

both subject to an order of imprisonment *and* they have been incarcerated pursuant to that particular order within the past five years. *See* La. R.S. 18:176(A)(1)-(3) (discussing suspension procedures for individuals who are under an order of imprisonment under La. R.S. 18:102(A)(1) or who are listed on a report of persons "for which there is an order of imprisonment," either under La. R.S. 18:171 for Louisiana convictions or La. R.S. 18:171.1 or federal convictions); 2021 La. Act No. 127 (HB 378) (codified at La. R.S. 18:102(C)) (clarifying that "incarcerated pursuant to the order" means "actual confinement in a correctional facility pursuant to the order of imprisonment, including confinement after conviction but prior to sentencing."). Individuals with felony convictions who were never incarcerated never lost the right to vote. However, upon information and belief, many parish registrars require eligibility paperwork of all individuals with felony convictions, including individuals who were never incarcerated.

### *Louisiana's Process of Verifying the Eligibility of Individuals with Felony Convictions*

62.    The Help America Vote Act ("HAVA") requires states to maintain "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." 52 U.S.C. § 20183(a)(1)(A). HAVA further requires states to "coordinate the[ir] computerized list[s] with State agency records on felony status." *Id.* § 20183(a)(2)(A)(ii).

63.    To facilitate voter-roll maintenance, DPSC sends to the Defendant information regarding "any person currently under the custody or supervision of the Department of Public Safety and Corrections" who is currently under an order of imprisonment for a felony conviction and has been incarcerated pursuant to the order in the last five years, or anyone who has committed

an election offense. La. R.S. 18:171. In turn, the Defendant is required to report that information to the parish registrars at least quarterly. La. R.S. 18:171(C)(4). Similar requirements apply to the U.S. Attorney for federal convictions. La. R.S. 18:171.1.

64.    DPSC is also required under Louisiana law to provide to a parish registrar, upon request, "information . . . regarding a person who is under an order of imprisonment for conviction of a felony, including whether the person is under an order of imprisonment for conviction of a felony offense of election fraud or any other election offense . . . and whether the person has been incarcerated pursuant to the order within the last five years." La. R.S. 18:171(B)(2).

65.    Likewise, sheriffs and district attorneys are required under Louisiana law to provide to a parish registrar, upon request, "information regarding a person convicted of a felony . . . including . . . whether the conviction resulted in an order of imprisonment pursuant to which the person is incarcerated." La. R.S. 18:171(B)(1).

66.    In August 2022, the Department of Public Safety and Corrections issued a regulation requiring that the agency issue the list of ineligible individuals pursuant to La. R.S. 18:171 to parish registrars on a monthly basis. *See* Ex. 4 at 8-13, Dep't of Public Safety and Corrections, Dep't Reg. No. IS-F-3 at 7(A)(1)(b) (Aug. 1, 2022). Unlike the list of suspended voters, this list matches the contours of Louisiana law and only includes people who are currently disenfranchised, except those few individuals who were restored the right to vote since the last monthly batch was processed.

### *Louisianans Who Submit a Registration Form Attesting to Their Eligibility Are Facially Eligible, Absent Information Establishing Ineligibility*

67.    The Federal and Louisiana Forms require registrants to attest to their eligibility.[2] The Louisiana Form requires the applicant to swear or affirm under penalty of perjury that "I have

---

[2]    *See* Federal Form, *infra* ¶ 71; Louisiana Form, *infra* ¶ 72.

not been incarcerated pursuant to an order of imprisonment for conviction of a felony within the past five years, nor am I under an order of imprisonment for a felony offense of election fraud or other election offense pursuant to R.S. 18:1461.2 . . . ." Louisiana Form at 1. Similarly, the instructions on the Federal Form require that the applicant swear or affirm that they meet the eligibility requirements of their state, which for Louisiana include that they "not currently be under an order of imprisonment for conviction of a felony; or if under such an order (1) not have been incarcerated pursuant to the order within the last five years and (2) not be under an order of imprisonment related to a felony conviction for election fraud or any other election offense pursuant to R.S. 18:1461.2 . . . ." Federal Form at 3, 10. A person who so attests and submits an otherwise complete registration form is facially eligible to vote absent information establishing their ineligibility.

68.    The Federal Form requires no additional documentation to be submitted; nor do the state-specific instructions for Louisiana ask for additional documentation.

### *Louisiana's Bifurcated Voter Registration Process for Similarly Situated Voters*

69.    Defendant has attempted to create a bifurcated process for accepting voter registration forms for people with convictions: (1) what it calls "registration," for voters who had previously never been registered to vote, and (2) what it calls "reinstatement," for voters who had previously registered to vote.

70.    Defendant asserts that this bifurcation is necessary because voters who had previously registered to vote, upon becoming subject to an order of imprisonment, are still registered albeit with a "suspended" status in which they are ineligible to vote, while voters who had never been registered to vote are not. *See* Ex. 3 at 2.

71.    Registrars will reject the registration application of individuals who are on the suspension list if they do not provide paperwork showing that they are eligible, even if the voter

completed the national voter registration form disseminated by the United States Election Assistance Commission. *See* National Mail Voter Registration Form, U.S. Election Assistance Commission,

https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_ENG.pdf (the "Federal Form"). By contrast, voters who were not previously registered can have their registration application accepted, even without providing paperwork showing their eligibility. In other words, this bifurcation is based solely on whether that voter was previously registered and placed into "suspended" status because of a felony, not their eligibility to vote.

72.    Whether previously registered to vote or not, however, voters in both of these supposedly distinct processes are functionally equivalent. Voters in both processes seek to become active registered voters. That is, the desired outcome of "registration" or "reinstatement" is the same. Indeed, both voters must submit either the Federal voter registration form or the Louisiana voter registration application, circulated by Defendant, *see* Louisiana Voter Registration Application, Louisiana Secretary of State, https://www.sos.la.gov/ElectionsAndVoting/PublishedDocuments/ ApplicationToRegisterToVote.pdf (the "Louisiana Form"). Furthermore, neither voter registration application form provides additional or differing instructions for voters registering for the first time after a felony conviction versus those "reinstating" their suspended registration; the forms simply treat reinstatement and registration the same. Moreover, regardless of whether a voter is added to the rolls by "registration" or "reinstatement," they will follow the same process and regulations for casting their ballot.

73.    Although voters seeking "registration" and voters seeking "reinstatement" are functionally equivalent and similarly situated, Defendant arbitrarily treats these similarly situated individuals differently depending on whether they had previously registered to vote.

74.    This is true even for two individuals convicted of the same felony, at the same time, and who serve the same sentence, if one individual happened to register to vote prior to their felony conviction and the other individual did not.

75.    The first individual would be placed on the suspension list and would be required to provide documentary proof of eligibility before submitting a voter registration form. That individual could only be added to voter rolls after appearing in person at their parish registrar's office with this documentary proof.

76.    The second individual could submit a voter registration form like any other eligible individual, and could register to vote by mail, in-person, or online.

77.    This distinction is particularly felt by eligible individuals who are unable to go in person to their parish registrar's office. This could include some of the over 15,000 Louisianans who are jailed on any given day in either pre-trial detention or who are incarcerated for a misdemeanor conviction. Many of these individuals are eligible to vote. However, some remain on the suspended list for a prior felony conviction, even if they have been discharged for that conviction or not been incarcerated for it in the past five years. Due to their incarceration, they cannot satisfy the in-person appearance requirement to obtain and deliver the VRC, and therefore cannot reinstate their respective suspended registration even though they are eligible to do so.

### *A "Suspended" Registration Is Not Proof Establishing Ineligibility*

78.    DPSC provides Defendant with regularly updated lists of currently ineligible voters. La. R.S. 18:171(B)(2); Ex. 4 at 8-13, Dep't of Public Safety and Corrections, Dep't Reg.

No. IS-F-3 (Aug. 1, 2022). Similarly, Defendant may be notified of new felony convictions and orders of imprisonment by the clerk of court, sheriff, and district attorney, as well as a United States Attorney. La. R.S. 18:171, 171.1; 52 U.S.C. § 20507(g) (procedures for reporting federal felony convictions to state election officials). If the people on these reports are registered to vote, their registration is "suspended" pursuant to La. R.S. 18:176(A)(1)-(3).

79.    However, most Louisianans with past convictions will have their right to vote restored. Under Louisiana law, voting rights are restored when a person's order of imprisonment ends or five years have passed since actual incarceration (so long as they were not convicted of an election crime). La. Const. Art. I § 10(A); La. R.S. 18:102(A). Accordingly, these individuals are automatically removed from the DPSC list of ineligible voters that is sent monthly to the Secretary of State. These re-enfranchised individuals are not, however, automatically removed from the "suspended" list when their rights are restored. Thus, the list of "suspended" voters necessarily includes both currently disenfranchised individuals and people who have already had their right to vote restored under law.

80.    Inclusion on the suspension list therefore does *not* establish ineligibility.

### *"Reinstatement" is Not an Eligibility Criterion for Voting Rights Restoration*

81.    "Reinstatement" is not an eligibility criterion for restoration of the right to vote for suspended voters, as this would exceed the Louisiana Legislature's authority under the Louisiana Constitution. The Legislature is only authorized to disenfranchise individuals with felony convictions who are "under an order of imprisonment." *See* La. Const. art. I, § 10 (A). This is true regardless of whether those individuals are "suspended" or are first-time registrants. A person who has fully discharged all prison, probation, and parole is unquestionably no longer "under an order of imprisonment." La. Stat. Ann. § 18:102(B).

82.    Despite this, a person who has fully discharged all prison, probation, and parole and was previously registered to vote will be required to provide documentary proof of sentence completion to be able to become actively registered and cast a ballot. If this additional paperwork requirement for reinstatement were a criterion for voting rights restoration, it would mean that such individuals would continue to be disenfranchised until they provide the documentation. This would mean that the legislature, in passing La. R.S. 18:177, would have created an additional eligibility criterion for rights restoration beyond no longer being under an order of imprisonment, and in doing so, exceeded its authority under the Louisiana Constitution to disenfranchise *only* those who are "under an order of imprisonment." *See* La. Const. art. I, § 10 (A).

### *Defendant's Unnecessary Paperwork Requirement for Suspended Voters with Felony Convictions Is Confusing and Burdensome, Depriving Thousands of Eligible Voters Access to the Franchise*

83.    This practice is onerous and burdensome to the registrant for several reasons.

84.    First, this practice shifts the burden to individual voters to track down, request, and deliver in person redundant records to prove their eligibility for registration with records already in the Defendant's possession. This is true even if the individual has long since become eligible to vote; the individual will remain "suspended" even if they have not voted for decades, and even if they have not been under an order of imprisonment or incarcerated pursuant to the order for many years.

85.    It is irrational for registrars to not use the lists in their possession of ineligible voters to verify both the eligibility of *new* and suspended registrants. The failure to use this information creates unnecessary risks for good-faith new registrants who may simply be mistaken about their eligibility to vote. By putting the burden of proving eligibility on the voter themselves, the state risks that some eligible voters will misunderstand their eligibility and not vote.

86.    Furthermore, upon information and belief, some registrars will only accept a specific document—called a "Voting Rights Certification" (VRC), issued by the Office of Probation and Parole—that the appropriate corrections official (typically the desk clerk) will print from their internal database to remove the suspension listing, even though state law does not exclusively require this specific document.

87.    Additionally, state law does not specify the appropriate corrections official from whom to obtain the required paperwork, so individuals must guess as to how to obtain proof of eligibility. This is particularly burdensome when an individual has a federal or out-of-state conviction because those individuals will not appear in the state's internal database for purposes of obtaining the VRC.

88.    Finally, upon information and belief, some corrections officials have refused to give a VRC to voters whose convictions were out of state. Likewise, some registrars will only accept the VRC provided by the State, such that there is no way for voters with out-of-state felony convictions to prove their eligibility.

### The Documentary Proof of Eligibility Requirement Is Unnecessary

89.    The State of Louisiana maintains records of orders of imprisonment through the Louisiana DPSC and other government agencies. DPSC also regularly sends lists of ineligible voters to the Louisiana Secretary of State and parish registrars. *See* La. R.S. 18:171.

90.    Unlike inclusion on the list of suspended voters—which is insufficient to establish a person's ineligibility—the DPSC list matches the contours of Louisiana law and only includes people who are currently disenfranchised as of the list's most recent monthly update.

91.    If the applicant does not appear on this list election officials have no reason to believe the applicant remains ineligible to vote, even if they do appear on the suspension list.

Moreover, elections officials can seek additional information from corrections authorities to confirm eligibility on an *ad hoc* basis, should the need arise.

92.    Thus, documentary proof of eligibility is unnecessary to confirm eligibility.

93.    Despite this records-sharing process between state agencies, the Defendant has shifted the burden to individual suspended voters to prove their eligibility for registration using a narrow, confusing, and burdensome pathway to obtaining such paperwork.

94.    As a result of this process, Plaintiffs estimate that thousands of otherwise eligible individuals have been unable to register to vote because of their difficulty or inability to provide the required paperwork.

### *Plaintiffs' Notice of Violation of the National Voter Registration Act*

95.    On October 22, 2020, through counsel, Plaintiff VOTE provided the Secretary of State with written notice regarding the NVRA violations created by requiring additional documentation of suspended, eligible voters. *See* Ex. 1 ("October 22, 2020 Notice Letter"). The October 22, 2020 Notice Letter specifically notified the Secretary of State that the paperwork requirement violated the NVRA's prohibition on additional documentation, and that multiple aspects of the paperwork requirement and its implementation violated the NVRA's mandate that election programs and activities be "uniform" and "nondiscriminatory." *Id.*

96.    On August 26, 2022, Plaintiffs Power Coalition and the League, through their counsel, sent a letter to the Secretary of State, notifying that the documentary proof of eligibility requirement for "reinstatement" of registration for people with felony convictions violates the NVRA. *See* Ex. 2 ("August 26, 2022 Notice Letter").

97.    On September 22, 2022, the Secretary of State sent Plaintiff a letter in response to their August 26, 2022 Notice Letter. Ex. 3. The Secretary of State stated his position that the

NVRA does not preempt the reinstatement process, and that registration is distinct from reinstatement. *Id.* Defendant also stated that he had communicated with all registrars that they should only require documentation for suspended voters, not new voter registrants. *Id.*

98.    On October 28, 2022, Plaintiffs Power Coalition and the League sent the Secretary of State another notice letter. Ex. 4 ("October 28, 2022 Notice Letter"). Plaintiffs' October 28, 2022 Notice Letter reiterated the ongoing violation of the NVRA and requested all records and communications between Defendant and the parish registrars concerning the implementation of Act 127. *Id.*

99.    On February 17, 2023, the Secretary of State responded to Plaintiffs' records request, stating that he would produce eighty-three pages of responsive records upon receipt of payment of 25 cents per page. Ex. 5. Upon receiving payment, the Secretary of State produced the responsive documents on February 22, 2023. Ex. 6. The Secretary of State provided no response to the substantive portions of Plaintiffs' October 28, 2022 Notice Letter in this February 17 correspondence.

100.    On March 8, 2023, the Secretary of State, through counsel, sent an additional letter to Plaintiffs requesting certain follow up information about affected voters and clarifying the contents of Plaintiffs' October 28, 2022 Notice Letter. Ex. 7.

101.    On March 31, 2023, Plaintiffs VOTE, Power Coalition, and the League sent a response to the Secretary of State's March 8, 2023 follow up letter. Ex. 8. Plaintiffs provided the Secretary of State the requested information and noted that the required period for pursuing a private cause of action under the NVRA elapsed on January 26, 2023, and that, absent further action to correct the paperwork requirement, Plaintiffs would proceed to explore their legal rights. *Id.* at 3. Plaintiffs requested a final response by April 14, 2023. *Id.*

102.    The Secretary of State did not send Plaintiffs any further response on or before April 14, 2023.

103.    On May 1, 2023, Plaintiffs filed suit against the Secretary of State, alleging violations of the NVRA and the Equal Protection Clause of the Fourteenth Amendment. ECF No. 1.

104.    On May 13, 2024, this court granted in part and denied in part Defendant's Motion to Dismiss. ECF No. 155. The Court also granted Plaintiffs leave to amend their Complaint. *Id.* at 86.

105.    On May 31, 2024, Plaintiffs sent a notice letter to Defendant Landry, alleging violations of the NVRA. *See* Ex. 9.

106.    On August 30, 2024, Defendant responded to Plaintiffs' notice letter. *See* Ex. 10. Defendant rejected Plaintiffs' allegations but stated that "a reminder of the uniform felony procedures will be sent to all registrars of voters which will include the relevant election laws, including the 2021 amendment to La. R.S. 18:102." *Id.* at 6.

107.    More than ninety days have elapsed since Plaintiffs sent their May 31, 2024 notice letter. To date, Defendant has not cured the paperwork requirement. This suit follows.

## CAUSES OF ACTION

### COUNT ONE
***Violation of the National Voter Registration Act, Section 6, Accept and Use Provisions, 52. U.S.C. § 20501 et seq, Section 8, Facial Eligibility Provision, 52. U.S.C. § 20501 et seq. as Applied to Registrants Who Are Not Under Order of Imprisonment.***

108.    Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

109.    Louisiana requires documentation to "reinstate" voter registrations from all individuals who were previously registered before being convicted of a felony and placed under an order of imprisonment.

110.    Currently, Defendant requires paperwork even if the registration applicant is no longer under an order of imprisonment. But this is not a proper exercise of the legislature's power to disenfranchise people who are no longer under an order of imprisonment.

111.    The Louisiana Constitution provides the legislature with the discretionary power to disenfranchise only Louisianans who are under an order of imprisonment. La. Const. art. I, § 10(A) ("Every person who is both a citizen of the state and of the United States, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended for a person . . . who is under an order of imprisonment for conviction of a felony."). It does not afford the legislature the power to continue to deny the right to vote to individuals who are not under an order of imprisonment for conviction of a felony. *Id.*

112.    The legislature has defined "under an order of imprisonment" to mean "a sentence of confinement, whether or not suspended, whether or not the subject of the order has been placed on probation, with or without supervision, and whether or not the subject of the order has been paroled." Acts 1976, No. 697, § 1, (codified at La. R.S. § 18:102(B); La. R.S. § 18:2(8)). Thus, the legislature, by its own account, may only disenfranchise individuals who are in prison for a felony as well as those serving community supervision, including parole or probation, after a sentence of confinement.

113.    Yet paperwork is required for "reinstatement" even of registrants who are no longer in prison, or on probation or parole.

114.    These individuals must have the right to vote under the Louisiana Constitution because the legislature does not have the authority to continue to disenfranchise them. Submitting the paperwork cannot be an eligibility requirement for voting rights restoration for people who cannot constitutionally be denied the right to vote, and therefore cannot need to have their rights restored.

115.    For this group, the paperwork requirement must be construed as a requirement of voter registration rather than a requirement of voter restoration.

116.    Because voters who are no longer under an order of imprisonment have the right to vote, guaranteed by the Louisiana Constitution, the paperwork requirement must be construed as a requirement of voter registration rather than a requirement of voter restoration, and its imposition on this class violates the NVRA.

117.    The NVRA requires that all registrars accept valid registration forms submitted by eligible individuals. 52 U.S.C. § 20507(a)(1) (requiring that each state "shall . . . ensure that any eligible applicant is registered to vote" in federal elections if the eligible applicant timely submits a "valid voter registration form"). Additionally, the NVRA requires that states "accept and use" the federal voter registration form, prohibiting them from creating additional documentation requirements to register to vote beyond the form itself. 52 U.S.C.A. § 20505(a)(1); *see Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013) (holding that Arizona could not create an additional documentary proof of citizenship requirement for registration in federal elections). In short, absent information establishing that an applicant who attests to their eligibility is actually ineligible, the registrant must be placed on the active voter rolls and cannot be required to provide additional documentary proof of eligibility. *Id.*

118.    Section 8 of the NVRA requires that all registrars place on the rolls facially eligible registrants upon timely submission of a valid registration form. 52 U.S.C. § 20507(a)(1) (requiring that each state "shall . . . ensure that any eligible applicant is registered to vote" in federal elections if the eligible applicant timely submits a "valid voter registration form").

119.    A valid registration form with an oath or affirmation under penalty of perjury attesting to one's eligibility is sufficient to establish facial eligibility. *See Kobach v. U.S. Election Assistance Com'n*, 772 F.3d 1183, 1194-95 (10th Cir. 2014) (upholding the EAC's decision to reject Arizona's and Kansas's requests to add documentary proof of citizenship to their states' instructions on the federal registration form because the agency had validly determined that the oath was sufficient to establish eligibility), *cert. denied* 576 U.S. 1055 (2015).

120.    Once individuals are no longer in the class of individuals stripped of the right to vote by statute, that right as protected by the Louisiana Constitution has been automatically restored without the need for any further action. *See Fox v. Mun. Democratic Exec. Comm. of City of Monroe*, 328 So. 2d 171, 174 (La. Ct. App. 1976) (holding that all otherwise eligible Louisianans, including those convicted of felonies, are granted the right to vote by the constitution "[u]nless this right is specifically suspended by legislative or other constitutional means.").

121.    By completing a valid voter registration form and swearing or attesting that they meet the standards for voting after a felony conviction, the applicant creates a presumption of eligibility—regardless of whether they have previously been "suspended" from the rolls.

122.    The fact that someone has been previously "suspended" is not information establishing that person is still ineligible. Moreover, Defendant and local election officials have access to accurate eligibility information for people with past convictions.

123.    Louisiana's refusal to register facially eligible applicants who are no longer under an order of imprisonment based solely on their prior "suspension" due to a past felony conviction violates Section 8 of the NVRA.

124.    Section 6 of the NVRA requires states to "accept and use" the Federal Form application. *See* 52 U.S.C. § 20505(a)(1). Pursuant to the NVRA, that application requires an attestation of eligibility under penalty of perjury, "may require only such [information] as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," and "may not include any requirement for notarization or other formal authentication."  *See id.* § 20508(b). The Federal Form does not require the applicant to submit any additional documentation along with the application to register to vote.

125.    The "accept and use" mandate requires states to accept the Federal Form "*as sufficient*" for registration. *ITCA*, 570 U.S. at 10. Policies or practices requiring this documentary proof of eligibility in order to register—or "reinstate"—violate the NVRA's prohibition on additional documentary requirements beyond the registration form as well as its mandate to register eligible voters upon application. 52 U.S.C.A. §§ 20505(a)(1), 20507(a)(1).

126.    Louisiana's paperwork requirement to prove eligibility for "suspended" applicants with past convictions is "'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form." *ITCA*, 570 U.S. at 15.

127.    Finally, Section 6 of the NVRA permits states to also create their own mail voter registration form. However, any state mail voter registration form used to register voters in federal elections must meet the same requirements as the Federal Form and "may require only such identifying information (including the signature of the applicant) and other information (including

data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1); *see also id.* § 20505(a)(2).

128. The paperwork requirement imposed on suspended voters with past felony convictions violates Section 6 and Section 8 because it exceeds the information necessary for election officials to assess an applicant's eligibility, particularly given the guaranteed statutory access election officials have to the requisite information.

129. The additional documentation requirement to register to vote, La. R.S. § 18:177, as interpreted by Defendant, is preempted by Section 6 and Section 8 of the NVRA.

130. Defendant further attempts to skirt the NVRA's requirements by distinguishing "registration" under La. R.S. § 18:101 *et seq.* and "reinstatement" under La. R.S. § 18:177. *See* Ex 3 at 2. According to Defendant, "registration" applies to those who are seeking to register to vote whose rights have not been suspended because of a felony conviction. *Id.* Registration is covered by the National Voter Registration Act, such that additional documentation is not required to submit a voter registration form. *Id.* However, "reinstatement," according to Defendant, is a process separate from voter registration, and therefore not covered by the National Voter Registration Act. *Id.* at 3. Thus, according to Defendant, suspended voters cannot submit a registration form and instead must provide documentary proof of eligibility to become active registrants. *Id.* at 3-4.

131. Defendant requires that reinstatement occur by the voter registration deadline in order to vote in an upcoming election, all the while maintaining that a suspended person is technically already registered. Yet, Defendant's policy refuses to allow suspended registrants to vote if they do not provide documentation before the voter registration deadline. Most importantly,

reinstatement is the necessary means to be able to cast a ballot. A person who is suspended is effectively not registered to vote because they are not allowed to cast a ballot, even if they satisfy the paperwork requirement before casting a ballot but after the registration deadline. Being able to cast a ballot is the sole and primary purpose of registration under the NVRA. Nothing in the NVRA indicates that its requirements regarding voter registration only apply to how a state treats new registrants. *See generally* 52 U.S.C. § 20507. Simply put, a state cannot duck the NVRA's requirements by calling voter registration something else.

132.    Plaintiffs complied with the NVRA's notice requirement by providing Defendant with written notices of the violation on August 26, 2022, October 28, 2022, March 31, 2023, and May 31, 2024. *See* Exs. 2, 4, 8, 9. Defendant has failed to correct the violation within the ninety-day period required under 52 U.S.C. § 20510(b)(1) and set forth in Plaintiffs' March 31, 2023, and May 31, 2024 correspondence.

133.    Defendant has violated, and continues to violate, the NVRA by refusing to accept and use voter registration forms of certain voters, and failing to ensure the accuracy of the voter rolls, without providing documentary proof of eligibility. Such practices are thus pre-empted by the NVRA.

## COUNT TWO
### *Violation of the National Voter Registration Act, Section 6, Accept and Use Provisions, 52. U.S.C. § 20501 et seq, Section 8, Facial Eligibility Provision, 52. U.S.C. § 20501 et seq.*

134.    Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

135.    Plaintiffs contend that for all of the reasons described *supra* Count 1, the paperwork requirement violates the NVRA for all eligible individuals who attempt to re-register, including

those who are still on probation or parole after imprisonment but are eligible because it has been five years or more since they were actually incarcerated under an order of imprisonment.

136.    The paperwork requirement for reinstatement has existed for decades in Section 177. It was created at a time when people who had been convicted of felonies could only have the right to vote restored when they were no longer under an order of imprisonment, therefore, as explained above, it could not have been an eligibility criterion for voting right restoration because it applied to people who could not constitutionally be denied the right to vote. Instead, it was created as a means for individuals to prove their eligibility at a time when reports from corrections authorities consisted only of lists of people who had at some point been placed under an order of imprisonment, which could not be used to determine whether a registrant was currently ineligible. *See supra* ¶ 6.

137.    In 2019, Act 636 restored voting rights to people on probation or parole after imprisonment if that person submitted documentation showing that they had not been actually incarcerated for five years. It also added this class of people to the reinstatement section, allowing them to be reinstated upon presentation of documentation. In 2021, Act 127 removed the requirement that a person five-years out of incarceration submit documentation to be restored to the right to vote. The paperwork requirement is still in the reinstatement section, applying to both people five years out from incarceration and those who are not under an order of imprisonment.

138.    The paperwork requirement described in La R.S. 18:177 has never been an eligibility criterion for voting rights restoration; it is a requirement for re-registration imposed on individuals who already have the right to vote under Louisiana law. The requirement violates the NVRA as applied to all eligible voter registrants, regardless of whether they are still under an order of imprisonment.

139.    Plaintiffs complied with the NVRA's notice requirement by providing Defendant with written notices of the violation on August 26, 2022, October 28, 2022, March 31, 2023, and May 31, 2024. Defendant has failed to correct the violation within the ninety-day period required under 52 U.S.C. § 20510(b)(1) and set forth in Plaintiffs' March 31, 2023, and May 31, 2024 correspondence.

140.    Defendant has violated, and continues to violate, the NVRA by refusing to accept and use voter registration forms of certain voters, and failing to ensure the accuracy of the voter rolls, without providing documentary proof of eligibility.  Such practices are thus pre-empted by the NVRA.

## COUNT THREE
***Violation of the National Voter Registration Act, Section 6, Accept and Use Provisions, 52. U.S.C. § 20501 et seq, Section 8, Facial Eligibility Provision, 52. U.S.C. § 20501 et seq., As Applied to First Time Registrants And Individuals Who Never Lost The Right To Vote.***

141.    Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

142.    Though Defendant agrees that the paperwork requirement should not be applied to first-time registrants and individuals who were convicted of felonies but who never lost the right to vote because they were never placed under an order of imprisonment (i.e., sentenced to probation only), based on information and belief, the paperwork requirement is still being applied to some – but not all – individuals in those groups.

143.    It is undisputed that individuals who are first-time registrants should not be subject to the paperwork requirement. *See* Ex. 3 at 3. But upon information and belief, Defendant's paperwork requirement has created confusion that has resulted in some registrars requiring the paperwork of all individuals with prior felony convictions, regardless of whether they are first-time or "suspended" registrants.

144. Furthermore, if an individual is convicted of a felony but never incarcerated, they are still eligible to vote. This includes individuals who, *inter alia*, were only sentenced to community supervision such as probation or parole but never sentenced to incarceration. But upon information and belief, Defendant's paperwork requirement has created confusion such that registrars will require the paperwork for individuals with prior felony convictions who were never ineligible to vote.

145. The paperwork requirement imposed on first-time registrants with past felony convictions, as well as individuals whose registrations were never suspended, violates Section 6 because it exceeds the information necessary for election officials to assess an applicant's eligibility, particularly given the guaranteed statutory access election officials have to the requisite information.

146. Voter registration denials and requests for additional paperwork from individuals in these groups violate the NVRA's mandate that eligible voters be registered and its prohibition on additional paperwork requirements under the "accept and use" provision. 52 U.S.C. § 20507(a)(1); 52 U.S.C. § 20508(b)(1); 52 U.S.C.A. §§ 20505(a)(1), (2).

147. The Secretary of State is the chief election official under the NVRA responsible for ensuring compliance across the state. *See infra* ¶ 157.

148. Though these denials violate the Secretary's written guidance, it is her statutory responsibility to ensure that such denials do not occur. Yet, upon information and belief, several registrars still require paperwork from nearly all registrants with felony convictions. This is because Defendant's policy is confusing and does not provide enough guidance for registrars or voters to understand when additional documentation is required. As result, some voters are required to provide the paperwork in violation of the NVRA.

149.    The actions of the registrars are attributable to confusion created by the Secretary's paperwork requirement and instruction and enforcement, or lack thereof, to date.

150.    These violations can be redressed by enjoining the Secretary of State's paperwork requirement, or, at minimum, providing more adequate guidance to registrars that individuals whose registrations have never been suspended may not be denied voter registration for failing to provide additional documentation, coupled with efforts to monitor and ensure that such guidance is being implemented correctly.

151.    Defendant has violated, and continues to violate, the NVRA by refusing to accept and use voter registration forms of certain voters, and failing to ensure the accuracy of the voter rolls, without providing documentary proof of eligibility.  Such practices are thus pre-empted by the NVRA.

## COUNT FOUR

*Violation of the National Voter Registration Act, Uniform and Nondiscriminatory Provision,
Section 8, 52. U.S.C. § 20501 et seq*

152.    Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

153.    Section 8 of the NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office. . .shall be uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1).

154.    The paperwork requirement results in the differential treatment of similarly situated eligible voters. Specifically, by imposing different obligations on "suspended" voters and other voters, despite their standing in the same shoes at the time of registration, the paperwork

requirement imposes discriminatory and disuniform requirements among eligible voters with prior felony convictions, based solely on their prior registration status.

155.    Furthermore, in practice, the application of the paperwork requirement is disuniform across parishes. Even though additional paperwork is not required of eligible first-time registrants with felony convictions nor eligible registrants who were never incarcerated for their felony convictions, some parish registrars still require it. *See supra* ¶¶ 60-61.

156.    Whether this documentation is required varies parish by parish, as some registrars are aware that these individuals do not need to submit paperwork, while other registrars are not. *Id.* This discrepancy violates Section 8's mandate that any State "program or activity" for maintaining voter rolls be "uniform" and "nondiscriminatory," and is thus pre-empted. 52 U.S.C. § 20507(b)(1).

157.    As Louisiana's chief election officer, Defendant Landry is tasked with coordinating and enforcing state and federal election laws in Louisiana, including the National Voter Registration Act. La. R.S. 18:18; 52 U.S.C. § 20509; *see United States v. Louisiana*, 196 F. Supp. 3d 612, 629-30 (M.D. La. 2016), vacated, No. 3:11-CV-470-JWD-RLB, 2017 WL 4118968 (M.D. La. Aug. 21, 2017) (vacated upon parties' joint motion for voluntary dismissal in light of settlement).

158.    Defendant has violated, and continues to violate, the NVRA through her failure to enforce Section 8 of the NVRA as it relates these facially eligible applicants, and this practice is thus pre-empted by the NVRA.

159.    Plaintiffs complied with the NVRA's notice requirement by providing Defendant with written notices of the violation on May 31, 2024. *See* Ex. 9. Defendant has failed to correct

the violation within the ninety-day period required under 52 U.S.C. § 20510(b)(1) as set forth in Plaintiffs' May 31, 2024 correspondence.

## COUNT FIVE

### *Violation of the National Voter Registration Act, Section 6, 8, and 9, Voter Registration Application Provisions, 52. U.S.C. § 20501 et seq*

160.    Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

161.    Reinstatement is not an eligibility criterion for restoration of voting rights in Louisiana. *See supra* ¶¶ 81-82. However, in the alternative, if reinstatement is considered an eligibility criterion, Defendant's state registration form and instructions for the federal form violate the NVRA for failing to specify it as such.

162.    Section 8 of the NVRA requires each state to "inform applicants . . . of voter eligibility requirements" no matter whether applicants seek to register with a state or federal voter registration form or through the department of motor vehicles or any other voter registration agency. 52 U.S.C. § 20507(a)(5).

163.    Sections 6 and 9 of the NVRA also require that both the federal voter registration form and any state-issued mail-in voter registration form used to register voters for federal elections must "specif[y] each eligibility requirement" for applicants. 52 U.S.C § 20508(b)(2)(A); *see also* § 20505(a)(2) (stating that a state mail-in form should meet "all of the criteria stated in section 20508(b)").

164.    If reinstatement is an eligibility criterion, Defendant's state mail-in voter registration form and instructions to the Federal Form violate Sections 6 and 9 of the NVRA, requiring the state form to "specif[y] each eligibility requirement," and Section 8 of the NVRA,

requiring states "inform applicants . . . of voter eligibility requirements," as the Louisiana state form does not mention the reinstatement requirement for suspended voters.

165.    Defendant has violated, and continues to violate, the NVRA through her failure to enforce Sections 6, 8, and 9 of the NVRA, and this practice is thus pre-empted by the NVRA.

166.    Plaintiffs complied with the NVRA's notice requirement by providing Defendant with written notices of the violation on May 31, 2024. *See* Ex. 9. Defendant has failed to correct the violation within the ninety-day period required under 52 U.S.C. § 20510(b)(1) as set forth in Plaintiffs' May 31, 2024 correspondence.

## COUNT SIX

*Denial of the Right to Vote in Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983*

167.    Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above.

168.    It is well established that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Thus, "the State may not by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-5 (2000).

169.    Although they are similarly situated, prior-registered voters with past convictions seeking to become active registered voters are treated differently than new registrants with past convictions in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

170.    Although the Louisiana Legislature passed Act 127 to remove the documentary proof requirement for eligible voter registrants with prior felony convictions, Defendant continues

to interpret the law as retaining the documentary proof requirement for voters whose registration was suspended due to a felony conviction.

171.    Though L.A. R.S. 176 and 177 make a cursory distinction between "new" voters and previously registered voters whose registrations are "suspended," the distinction is arbitrary under state and federal law for the purposes of voter registration. The NVRA's requirements apply to all persons who submit a voter registration form—whether they are "new" voters or previously "suspended" voters. *See generally* 52 U.S.C. § 20507(a)(1) (outlining requirements for voter registration for "any eligible applicant.").

172.    First, eligible individuals with felony convictions in "suspended" status stand in the same shoes as those individuals with felony convictions who are not in "suspended" status when seeking registration. Both groups have the same purpose for applying to register – to be added to the active voter rolls so they can cast a ballot on Election Day.

173.    Additionally, regardless of whether the State labels the process "registration" or "reinstatement," the mechanism for being added to the voter rolls is the same – completing either the state or federal registration form.

174.    Furthermore, the outcome of "registration" or "reinstatement" is the same. Regardless of whether a voter is added to the rolls by "registration" or "reinstatement," they will follow the same process and regulations for casting their ballots.

175.    Despite being similarly situated, voters applying for what the State labels "reinstatement" face different, arbitrary, and unnecessarily burdensome barriers.

176.    The State already has access to all the information which it demands the voter to produce. Because Louisiana maintains records of an individual's order of imprisonment, and because the channels of communications and policies already exist to share information regarding

when an individual becomes ineligible, the State could readily communicate information to its agencies regarding when a voter with a felony conviction is eligible.

177.    The requirement that an individual must produce records themselves places the burden onto the individual to both track down records which are already in possession by the State and bring them to their parish registrar's office, creating an arbitrary and unnecessary barrier to voting that is insurmountable for some voters.

178.    For example, individuals whose previous registration is suspended and are currently in jail for a misdemeanor or pre-trial, cannot meet the State's in-person requirements for reinstatement. And upon information and belief, Defendant provides no policy or exception to the paperwork requirement which would allow those incarcerated individuals to reinstate their registration. As a result, Defendant's policy results in the total denial of voter registration for certain eligible, incarcerated individuals.

179.    Finally, Defendant's policy results in the differential treatment of eligible individuals. Because of the confusing policy, parish registrars often apply the paperwork requirement to individuals for whom the requirement does not apply, such as first-time registrants or individuals who were never incarcerated for their conviction. As a result, whether the paperwork requirement applies to an individual with a felony conviction arbitrarily boils down to their parish of registration.

180.    Under the Fourteenth Amendment of the United States Constitution, the right to vote may not be denied or abridged without being narrowly tailored to meet a compelling government interest, absent a less restrictive means. Because Louisiana's purported "reinstatement" system implicates the right of eligible individuals to vote, it is subject to heightened scrutiny.

181. This practice is not narrowly tailored to any potential state interest, as there are much more efficient and indisputably less restrictive means for parish registrar offices to receive such information.

182. However, there is not even a rational basis to require the individual to produce additional documentation of those criminal records which are already in the State's possession, much less a compelling or important reason to do so.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court:

A. Declare that Defendant's requirement that facially-eligible voter registrants present additional documentation beyond the voter registration form in order to become actively registered to vote violates the NVRA;

B. Declare that Defendant's arbitrary distinction in the treatment of suspended voters versus new voters violate the Equal Protection Clause of the Fourteenth Amendment;

C. Enjoin Defendant from requiring documentary proof of eligibility from voter registrants who were previously suspended for a felony but who present valid voter registration forms and do not appear on the DPSC's list of currently disqualified voters;

D. Order Defendant to issue statewide guidance that parish registrars may not require documentary proof of eligibility from facially eligible voter registrants that do not appear on the DPSC's list of currently disqualified voters, including currently incarcerated individuals, and to provide sufficient training and supervision to ensure that the guidance is followed;

E. Order Defendant to prominently display relevant guidance for people with felony convictions on their website, in laymen language that is easy to understand;

F.      In the alternative, if reinstatement were considered an eligibility criterion, order Defendant to create registration forms and policies that comply with the NVRA such that both the state and Louisiana's instructions for the federal form specify the registration requirements, including reinstatement.

G.      In the alternative, if registration and reinstatement were distinct processes, enjoin Defendant from refusing reinstatement to suspended voters who provide the additional documentation of their eligibility and who are otherwise qualified to vote under their previous registration;

H.      Award Plaintiffs their reasonable attorneys' fees and costs; and

I.      Grant such other relief the Court may deem just and proper.

Respectfully submitted this 6th day of September, 2024.

*/s/Valencia Richardson*
Valencia Richardson (LSBA #39312)
Danielle Lang*
Blair Bowie*
Kate Uyeda*
Ellen Boettcher*
Reginald Thedford, Jr.*
Campaign Legal Center
1101 14th St. NW Suite 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegal.org
bbowie@campaignlegal.org
vrichardson@campaignlegal.org
kuyeda@campaignlegal.org
eboettcher@campaignlegal.org
rthedford@campaignlegalcenter.org

*Admitted pro hac vice*

William P. Quigley (LSBA #07769)
Loyola University Law New Orleans
College of Law
7214 St. Charles Ave. Campus Box 902
New Orleans, LA 70118
Quigley77@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, September 6, 2024, I electronically filed the foregoing Motion with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record who are registered with the Court's CM/ECF system.

/s/ *Valencia Richardson*
Valencia Richardson
*Counsel for Plaintiffs*
