**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| VOICE of the EXPERIENCED, *on behalf of itself and its members*; POWER COALITION for EQUITY and JUSTICE, *on behalf of itself and its members*; *and* LEAGUE of WOMEN VOTERS of LOUISIANA, *on behalf of itself and its members*;<br><br>            Plaintiffs,<br>   v.<br><br>NANCY LANDRY, *in her official capacity as Secretary of State of Louisiana*,<br><br>          Defendant. | Civil No. 3:23-cv-00331-JWD-SDJ |

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iii

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

   I.    Louisiana's System of Registration for People with Felony Convictions ...........................2

        A.  New voter registrations and probation-only registrations.......................................3

        B.  Registration and reinstatement by individuals with felony convictions .................6

        C.  History of the Paperwork Requirement .................................................................8

        D.  State procedures for registration and reinstatement for individuals with felony convictions ........................................................................................................12

   II.    Plaintiffs' Efforts to Register Voters with Felony Convictions...........................................15

        A.  Voice of the Experienced .....................................................................................15

        B.  Power Coalition for Equity and Justice ...............................................................17

        C.  League of Women Voters of Louisiana ................................................................19

        D.  Plaintiffs' NVRA notice efforts...........................................................................20

  III.    Burdens on individual voters ............................................................................................20

PROCEDURAL BACKGROUND...........................................................................................25

LEGAL STANDARD .............................................................................................................26

LEGAL ARGUMENT .............................................................................................................27

   I.    Plaintiffs Can Demonstrate Article III Standing.................................................................28

        A.  VOTE has associational standing .........................................................................29

        B.  Plaintiffs have organizational standing .................................................................33

            i.    VOTE has organizational standing to bring all claims .............................34

           ii.    PCEJ has organizational standing to bring all claims..............................35

          iii.    The League has organizational standing to bring all claims.....................38

        C.  Plaintiffs' injuries are traceable to Defendant and redressable by this Court ........40

            i.    Plaintiffs' injuries are traceable to Defendant's conduct .........................40

      ii.     This Court can redress Plaintiffs' injuries by enjoining Defendant's conduct ................................................................................................42

II.     Plaintiffs Can Demonstrate That They Will Prevail at Trial ...............................................43

     A.  Plaintiffs will prevail at trial on their NVRA claims (Counts 3 and 4).................45

        i.     Count 3: Accept and Use.............................................................45

            a)  Plaintiffs' evidence demonstrates a failure to accept and use voter registration for federal elections ....................................................45

            b)  Defendant mischaracterizes Plaintiffs' evidence, creating a genuine dispute of material fact...................................................................48

        ii.    Count 4: Uniform and Nondiscriminatory .................................................51

     B.  Plaintiffs will prevail at trial on their constitutional claims (Count 6) .................54

        i.     The Paperwork Requirement is unconstitutional.......................................54

        ii.    People with felony convictions have constitutional rights ........................58

CONCLUSION...........................................................................................................................60

CERTIFICATE OF SERVICE ..................................................................................................62

APPENDIX.................................................................................................................................63

**TABLE OF AUTHORITIES**

Cases                                                                                                       Page

*Ardoin v. Louisiana through Department of Public Safety & Corrections, Office of State Police*,
    No. CV 08-593-JJB-DLD, 2012 WL 12986189 (M.D. La. June 14, 2012) ............................26

*Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014) ...........................................30

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ("*ITCA*")..................42, 46, 50

*Association of American Physicians & Surgeons, Inc. v. Texas Medical Board*,
    627 F.3d 547 (5th Cir. 2010).................................................................................32, 33

*Brackeen v. Bernhardt*, 937 F.3d 406 (5th Cir. 2019).................................................................29

*Burdick v. Takushi*, 504 U.S. 428 (1992) ....................................................................................55

*Bush v. Gore*, 531 U.S. 98 (2000) ...............................................................................................54

*Diez v. Schneider*, No. 2:24-CV-00295, 2025 WL 4686235 (S.D. Tex. Sep. 24, 2025) ..........57, 59

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*AHM*")......................33, 35, 36

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993)......................................................................35

*Hancock County Board of Supervisors v. Ruhr*, 487 F. App'x 189 (5th Cir. 2012).......................42

*Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982).....................................................36

*Hopkins v. Secretary of State Delbert Hosemann*, 76 F.4th 378 (5th Cir. 2023) ...........................31

*Hopkins v. Watson*, 108 F.4th 371 (5th Cir. 2024) ......................................................................58

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) ....................32, 34

*Hunter v. Underwood*, 471 U.S. 222 (1985) ................................................................................58

*In re Matter of Jack'd Up Charters LLC*, 690 F. Supp. 3d 560 (E.D. La. Sep. 5, 2023)...............29

*King v. O'Bannon*, 817 F. Supp. 3d 354 (E.D. Va. 2026) ............................................................58

*League of Women Voters of Florida, Inc. v. Detzner*, 314 F. Supp. 3d 1205 (N.D. Fla. 2018)......55

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..............................................................28, 40

*Marbury v. Madison*, 5 U.S. 137 (1803) ......................................................................................43

*Mealey v. Gautreaux*, No. 16-716-JWD-RLB, 2020 WL 7043329 (M.D. La. Dec. 1, 2020)........47

*Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 WL 862406
    (D. Ariz. Feb. 29, 2024)..........................................................................................52

*Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929 (D. Ariz. 2024) ...................................................53

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ...............................................29, 52, 53

*Montgomery v. Whidbee*, No. 3:19-CV-00747, 2021 WL 780730 (M.D. Tenn. Mar. 1, 2021) .....56

*Murthy v. Missouri*, 603 U.S. 43 (2024) ........................................................................................28

*NetChoice v. Murrill*, 812 F. Supp. 3d 594 (M.D. La. 2025) .........................................................32

*O'Brien v. Skinner*, 414 U.S. 524 (1974) .......................................................................................57

*OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017) ..............................27, 28, 33, 34, 39

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ..........................................................................42

*Payne v. Collins*, 986 F. Supp. 1036 (E.D. Tex. 1997)...................................................................47

*R & L Inv. Prop., L.L.C. v. Hamm*, 715 F.3d 145 (5th Cir. 2013) .................................................26

*Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024) ...........................................................................40

*Richardson v. Ramirez*, 418 U.S. 24 (1974)...............................................................................58, 59

*Richardson v. Texas Secretary of State*, 978 F.3d 220 (5th Cir. 2020)..........................................55

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ................28, 40

*Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014). ...........................................................34, 40, 42, 53

*Tellis v. LeBlanc*, No. 18-CV-0541, 2019 WL 1474777 (W.D. La. Apr. 3, 2019) ........................32

*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ..................................................40

*Texas Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006)...............................................30

*Tiede v. Lumpkin*, No. 1:23-CV-1004-RP, 2026 WL 751904 (W.D. Tex. Mar. 16, 2026) .............29

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
    517 U.S. 544 (1996)....................................................................................................................32

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012)............................................52, 53

*United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967)..................................................................56

*United States v. Polidore*, 690 F.3d 705 (5th Cir. 2012) ................................................................47

*United States v. Samaniego*, 345 F.3d 1280 (11th Cir. 2003) ........................................................47

*United States by Katzenbach v. Original Knights of Ku Klux Klan*,
    250 F. Supp. 330 (E.D. La. 1965) ..............................................................................................56

*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016)..............................................................................55

*Voice of the Experienced v. Ardoin*, 813 F. Supp. 3d 600 (M.D. La. 2025) ...................................29

*Wilkins v. County of Alameda*, 571 F. App'x 621 (9th Cir. 2014) .......................................54, 57, 59

*Young v. Hosemann*, 598 F.3d 184 (5th Cir. 2010) .................................................................54

**Constitutional Provisions**

La. Const. art. I, § 10(A) ...............................................................................................................2

**Statutes & Rules**

52 U.S.C. § 20505(a) ...................................................................................................................45

52 U.S.C. § 20505(a)(1)...............................................................................................................46

52 U.S.C. § 20505(a)(2)...............................................................................................................46

52 U.S.C. § 20507(a)(1)...........................................................................................................45, 46

52 U.S.C. § 20507(b) ...................................................................................................................53

52 U.S.C. § 20507(b)(1) ...........................................................................................................41, 51

52 U.S.C. § 20508(b)(1) ...........................................................................................................45, 46

52 U.S.C. § 20509...........................................................................................................40

La. R.S. 18:101 ...........................................................................................................3, 56

La. R.S. 18:102 ...........................................................................................................3, 10, 60

La. R.S. 18:103 ...........................................................................................................56

La. R.S. 18:104 ...........................................................................................................3, 9

La. R.S. 18:107 ...........................................................................................................5

La. R.S. 18:108 ...........................................................................................................4

La. R.S. 18:111(b) ...........................................................................................................5

La. R.S. 18:114 ...........................................................................................................2

La. R.S. 18:115 ...........................................................................................................2

La. R.S. 18:115(A) ...........................................................................................................3

La. R.S. 18:115.1 ...........................................................................................................2

La. R.S. 116...........................................................................................................2

La. R.S. 18:171(B)(1) ...........................................................................................................13

La. R.S. 18:171(B)(2) ...........................................................................................................13

La. R.S. 18:176 ......................................................................................1, 3, 5, 6, 7, 48, 50, 60

La. R.S. 18:177 .................................................6, 8, 9, 10, 11, 13, 28, 42, 44, 45, 54, 59, 60

La. R.S. 18:191 ........................................................................................................................3

La. R.S. 18:191.1 .....................................................................................................................5

La. R.S. 18:193 ........................................................................................................................5

La. R.S. 18:198 ........................................................................................................................5

La. R.S. 18:199 .....................................................................................................................4, 5

Fed. R. Civ. P. 56(a) .........................................................................................................26, 29

Fed. R. Evid. 803(1)...............................................................................................................47

**Other Authorities**

1987 La. Act No. 831.............................................................................................................13

Acts 1976, No. 697, § 2(2)......................................................................................................9

Acts 1976, No. 697, § 104 ......................................................................................................8

2012 La. Sess. Law Act 138 (H.B. 852) .................................................................................9

2026 La. Sess. Law Serv. Act 7 (H.B. 842) ...........................................................................4

Lee Hargrave, *The Declaration of Rights of the Louisiana Constitution of 1974*,
    35 La. L. Rev. 1 (1974) ...................................................................................................57

Voice of the Experienced, Our Members, https://www.voiceoftheexperienced.org/members
    (last visited July 14, 2026) .............................................................................................34

**INTRODUCTION**

Plaintiffs Voice of the Experienced ("VOTE"), Power Coalition for Equity and Justice ("PCEJ"), and League of Women Voters of Louisiana ("the League") (collectively, "Plaintiffs") respectfully submit this Response in Opposition to Defendant Nancy Landry's Motion for Summary Judgment, ECF 256-1, 256-3. Plaintiffs challenge Defendant's interpretation and enforcement of Louisiana Revised Statutes 18:177(A)(1), and the attendant requirement that certain eligible voters take additional steps to ensure they are an active voter (hereinafter referred to as the "Paperwork Requirement"). This requirement violates federal law and the Constitution by creating confusion, disparate treatment, and unnecessary barriers to voter registration. Plaintiffs are entitled to proceed to trial based on the evidence gathered in support of their claims.

Evidence from discovery, and from Plaintiffs and their members, demonstrates that Plaintiffs have standing. The evidence also demonstrates material factual disputes, including but not limited to: (1) whether Defendant appropriately requires voter registrants to provide additional documentation under La. R.S. 176 and 177; (2) the burdens on individuals to provide additional documentation to register to vote; (3) the parishes' understanding of the Paperwork Requirement, as laid out in Defendant's Felony Procedures; and (4) whether individuals who are not subject to La. R.S. 18:177 are being required to comply with its provisions, such as new registrants and people with felony convictions who were not sentenced to actual confinement. Each of those issues will require resolution by the Court through trial.

Defendant's Motion does not meet her burden for summary judgment because, among other things, it fails to address several material legal and factual issues. Defendant fails to address Plaintiff VOTE's associational standing. Because only one Plaintiff needs standing to proceed to trial, this waiver suffices to defeat Defendant's Motion as to all Plaintiffs' standing. Defendant

1

argues that she is entitled to summary judgment on Plaintiffs' National Voter Registration Act ("NVRA") claims but elides evidence that voters who should never have been suspended nevertheless were, and therefore were improperly subjected to the Paperwork Requirement. Likewise, Defendant argues that she is entitled to summary judgment on Plaintiffs' Equal Protection claim but fails to address the Paperwork Requirement's effective ban on the right to vote for eligible registrants who are in jail.

Even if Defendant had addressed all material issues in this case, her Motion would still fail. Defendant rehashes legal arguments already rejected by this Court twice, with no substantive change in her legal position since this Court's Second Order on Defendant's Motion to Dismiss, ECF 215 ("Order"), and no undisputed material facts to bolster those arguments. Rather, the volume of Defendant's evidence—nearly 80 exhibits across 56 pages of argument—as well as Plaintiffs' evidence—an additional 75 exhibits—underscores the breadth of the material fact disputes in this case, and the ample evidence to be weighed at trial. This Court should deny Defendant's Motion.

## FACTUAL BACKGROUND

### I. Louisiana's System of Registration for People with Felony Convictions.

The Louisiana Constitution provides that "[e]very person who is both a citizen of the state and of the United States, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended for a person . . . who is under an order of imprisonment for conviction of a felony." La. Const. art. I, § 10(A). An eligible individual may register to vote for the first time by mail, online, or in person at the office of a parish registrar of voters. La. R.S. 18:103; 115; 115.1.[1] An individual is eligible to vote in Louisiana if they are 1) 18

---

[1] An individual may also register to vote a driver's license facility or a public agency which has been designated for voter registration. La. R.S. 18:114; 116.

years of age; 2) a United States citizen; 3) a resident of Louisiana; and 4) if convicted of a felony, are not under an order of imprisonment or have not been incarcerated pursuant to the order within the last five years.[2] La. R.S. 18:101, 102. Once registered, an individual remains on the active voter rolls unless their registration is cancelled or suspended. *See* La. R.S. 18:176, 191. An individual seeking to register may use the National Voter Registration Form ("Federal Form"), R.S. 18:115(A), or the Louisiana Voter Registration Form ("State Form"), R.S. 18:104. Voter registration files are maintained in the State's list maintenance system, the Election and Registration Information Network ("ERIN"). ECF 258-7 ¶ 13.

### A. New voter registrations and probation-only registrations.

This Court noted that "the registration of any person as provided in Louisiana's Election Code shall remain in effect for so long as the registration is not canceled for a cause and in the manner set forth in the Election Code." ECF 215 at 73 (citation modified). As such, the Legislature "has made a clear distinction between registration and reinstatement," and only "those subject to La. R.S. § 18:177(A)(1) are not eligible to vote until completing the statute's paperwork requirement." *Id.*

Defendant does not dispute that individuals who were never registered in Louisiana before their felony convictions, otherwise known as "first-time registrants," are "new registrants" who should not be subject to R.S. 18:176 or 177. ECF 258-13, Feb. 2026 Felony Procedures. It is also undisputed that individuals who were never sentenced to actual confinement, frequently known as "probation only" voters, never lose the right to vote, such that they should not be subject to La. R.S. 18:176 or 177. ECF 258-13. However, Defendant has artificially narrowed the definition of

---

[2] La. R.S. 18:102 disenfranchises individuals convicted of an election crime until final discharge of their sentence, including probation and parole. *Id.* at A(1)(c).

"new registrant" in her implementation of the Paperwork Requirement to *only* include first-time registrants. ECF 258-13.[3]

Based on evidence obtained in discovery, the scope of individuals who are considered "new registrants" under the Election Code includes not only those registering in Louisiana for the first time. Instead, "new registrants" also includes those whose registrations have been "cancelled" for various circumstances and those who must submit new registrations to avoid cancellation.[4] Each of these categories constitutes a "new registrant" such that La. R.S. 18:176(A)—and the Paperwork Requirement under R.S. § 18:177—does not apply to them.

For example, when an individual's registration is cancelled, they must submit a new registration form and are thus considered "new registrants." La. R.S. 18:199 ("A person whose registration has been canceled shall not be permitted to vote except upon a new registration made[.]"). A registrant who moves parishes will have their registration in their previous parish canceled upon registration in their new parish. La. R.S. 18:108; Ex. 1, Deposition of Sherri Hadskey (Department of State) at 122:20-23 ("If they move parishes, it's the same process for registering to vote, whether you're a felon or you're not a felon. You have to live in the parish where you reside."); *see also* 2026 La. Sess. Law Serv. Act 7 (H.B. 842) (amending R.S. 18:108 to explicitly state that "[t]he other registrar shall cancel the voter's previous registration in the other parish").

An individual's registration is also typically cancelled under the NVRA if they are an active voter but have failed to return an address confirmation notice and failed to vote in two federal

---

[3] This is not to say that registration and reinstatement are functionally the same. Rather, evaluating Defendant's processes within the parameters of this Court's finding that reinstatement and registration are separate process, Plaintiffs have discovered that Defendant is not applying this distinction appropriately.

[4] An appendix illustrating these and other various scenarios has been provided for the Court's convenience. *See* Appendix.

4

elections. La. R.S. 18:191.1, 193, 198. This includes Joey Justin Stevenson, who also registered to vote using the Federal Form. See *Appendix.* An individual's registration may also be cancelled if they permanently move outside of the state, R.S. 18:193.[5] Because the Election Code requires a new registration if an individual's registration is cancelled, such individuals are therefore new registrants should they move back to Louisiana. R.S. 18:199; *see also* ECF 215 at 73.[6] This includes Nathan Steckel, the individual wrongly accused of having a felony conviction. *See Appendix.* As new registrants, they should not be subject to R.S. 18:177(A)(1).

There are other voters for which Louisiana law may require new registration to remain an active registrant, like voter registrants who change their name by virtue of marriage. R.S. 18:111(b). Similarly, someone who changes their party affiliation may need to submit a new registration in order to vote as a member of that party. La. R.S. 18:107 ("A registrant may change his party affiliation by making application therefor in writing to the registrar."). Other changes to the registration form, such as changing one's contact information, may require a new registration. Hadskey Dep. at 119:17-24. In other words, under various circumstances, the Election Code requires individuals to submit a new voter registration even if previously registered in Louisiana.

For example, VOTE learned about Monique Canada through a community referral. Ex. 2 ¶ 17, Declaration of Norris Henderson (VOTE). Ms. Canada was registered to vote for the first time in Louisiana in Caldwell Parish in 2014. ECF 259-3 at 1. In 2017, she received a felony conviction and was sentenced to one year in prison. *Id.* at 8. Her registration was subsequently suspended in Caldwell Parish in 2018. *Id.* at 4. Then, in 2023, she received a probation-only felony conviction. *Id.* at 6. She moved to Ouachita Parish and registered there in 2024. ECF 259-4 at 7.

---

[5] And individual's registration is also cancelled if they pass away. La. R.S. 18:173, 176.
[6] There is an exception to this requirement if the cancellation was due to the error of the registrar to process the application correctly. La. R.S. 18:113.1.

A new voter registration file was created for her when she re-registered in Ouachita. *Compare* 259-3 (Caldwell file) *with* 259-4 (Ouachita file). Thus, Ms. Canada was a new registrant in Ouachita Parish in 2024. However, because of her prior convictions, it appears that she was required to provide additional documentation to register to vote. *See id.* at 10.

**B.  Registration and reinstatement by individuals with felony convictions.**

When an individual gets convicted of a felony but has never registered before in Louisiana, the individual should be able to register to vote upon becoming eligible: that is, when they have been finally discharged from their sentence, or if five years have passed since their incarceration. La. R.S. 18:176; 177. That individual should only need to submit a new voter registration application like any other voter. Ex. 1, Hadskey Dep. at 79:19-24; ECF 258-13 at 2.

When a voter with an active registration is convicted of a felony and is incarcerated, their registration will be marked "cancelled" in ERIN. La. R.S. 18:177; Ex. 1, Hadskey Dep. at 302:10-15. It is the Defendant's position that this category of voters marked "cancelled" in the system are not cancelled but suspended voters. *Id.* And the most recent guidance to parish registrars states "[i]f an individual applies for registration, but that same individual's voter registration is currently suspended for conviction of a felony in any parish, that individual is actually applying for reinstatement not registration." ECF 258-13 at 2.

An individual whose registration is suspended is no longer on the active voter rolls and cannot vote. Ex. 1, Hadksey Dep. at 78:02-07. The individual should receive a 21-day challenge letter noting that their registration has been suspended and stating that they have 21 days to submit documentation proving that they are eligible to vote. Ex. 1, Hadskey Dep. at 24:02-16; ECF 258-13 at 8-9; *e.g.*, ECF 259-19 at 8; 259-6 at 7. If an individual fails to appear in 21 days, they may receive a notice of suspended registration. ECF 258-13 at 8-9.

To reinstate their existing registration, such an individual must appear in-person at the office of the registrar with a certified copy of the Voter Eligibility Certificate (otherwise known as the "Voting Rights Certificate," "VRC," or "VEC"), or other documentation demonstrating that the individual's felony conviction is not disqualifying. ECF 258-13 at 4. Voters with out-of-state or federal felony convictions who are not in Louisiana Department of Public Safety and Corrections ("DPSC") custody may not receive a VRC, since DPSC may only provide the VRC to those individuals who have previously been under their supervision. *See* Ex. 3, Deposition of Renee Delouche (DPSC) at 86:09-18. Individuals who have been on parole for much longer than five years often face difficulties getting a local parole office to issue the VRC. Ex. 2 ¶ 15, Henderson Decl.

The VRC may only be obtained from the DPSC or one of its parish offices, either upon final discharge or upon request at a local parole and probation office. ECF 258-13 at 2. VOTE's experience is that individuals must go to the parole and probation office in order to receive a VRC. Ex. 4 ¶ 7, Declaration of Charles Amos. Although an individual may request the VRC by email or phone, the DPSC testified that "unless they can verify who they are," individuals seeking the VRC must "go in person to the district office." Ex. 3, Delouche Dep. at 29:09-30:05. And the VRC can only be submitted to the registrar in person with the original copy. Ex. 1, Hadskey Dep. 157:18-158:11, 159:04-160:14. Thus, the Paperwork Requirement requires at least one in-person transaction (to the registrar's office), and usually two (to the registrar's office and the DPSC office) or more if either transaction is initially unsuccessful. *See* Ex. 2 ¶ 23, Henderson Decl. When an active voter is convicted of a felony but does not go to prison, they do not lose the right to vote. La. R.S. 18:176; ECF 212 ¶ 60. If their registration is cancelled for any other reason or needs to be updated with a new application under the Election Code, they should only have to submit the

voter registration application. ECF 212 ¶ 60; *supra* Part I.A. As a new registrant, and as a probation-only voter following the enactment of Act 127, Louisiana law does not require them to submit the VRC or any other documentation proving their eligibility. *See* ECF 256-8. And as noted above, an active voter with a felony conviction becomes a new registrant just as anyone else, including whenever they move parishes and/or need to update their voter registration address or other details like party affiliation. Neither La. R.S. 18:177 nor any other part of the Election Code exempt active voters with felony convictions from becoming a new registrant under these circumstances. *See, e.g.*, Ex. 1, Hadskey Dep. at 119:17-120:04, 122:20-23.

Ultimately, the majority of individuals who leave prison will be new registrants. *See, e.g.*, Ex. 1, Hadskey Dep. 120:01-04. Very few individuals leave prison and do not have to update their contact information, especially individuals who have been in prison for long periods of time. *Id.* Many individuals move to a new parish after being released, or within the first five years of their parole. *See* Ex. 2 ¶ 14, Henderson Decl.; Appendix. Others may be incarcerated out of state, then return to Louisiana upon release. *See id.* Under many of those circumstances, an individual's pre-incarceration registration will need to be cancelled as they will re-apply as a new registrant. *See supra* Part I.A. But individuals who were previously registered are nevertheless required to submit the VRC or analogous documentation—even where their previous registration is necessarily cancelled—despite Defendant otherwise treating them as new registrations.

## C. History of the Paperwork Requirement.

In 1976, following the ratification of its new Constitution, Louisiana's Legislature passed a law—what became La. R.S. 18:102—that temporarily suspended the right to register or vote from all persons "under an order of imprisonment for conviction of a felony." *See* Acts 1976, No. 697, § 104. The 1976 bill defined "under an order of imprisonment" broadly to mean "a sentence

8

of confinement, whether or not suspended, with or without supervision, and whether or not the subject of the order has been paroled." Acts 1976, No. 697, § 2(2).

In 1997, Louisiana passed La. R.S. 18:177, initially requiring "a person whose registration has been suspended by the registrar of voters pursuant to R.S. 18:176(A)" for conviction of a felony to provide their registrar, in person, with "documentation from the appropriate correction official showing that [they were] no longer under an order of imprisonment." ECF 256-5. This is colloquially known as the Paperwork Requirement. *See* Ex. 2 ¶ 11, Henderson Decl. The Paperwork Requirement was amended in 1999, ECF 256-6, and 2012, 2012 La. Sess. Law Act 138 (H.B. 852), to exempt people with disabilities from complying with the in-person requirement.

In 2019, Louisiana enacted Act 636, which amended the Election Code to provide that:

> [A] person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order if the person submits documentation to the registrar of voters from the appropriate correction official showing the person has not been incarcerated pursuant to the order within the last five years.

ECF 256-7 § 1 (codified at La. R.S. 18:102(A)(1)(b) (2019)). Act 636 also amended the Paperwork Requirement such that the certification must show that "if the applicant is under [an order of imprisonment], that the applicant has not been incarcerated pursuant to the order within the last five years and [the person] is not under an order of imprisonment related to a felony conviction pursuant to election fraud or any other election offense pursuant to R.S. 18:1461.2." *Id.* 18:104. Act 636 meant that individuals serving probation or parole but who had not been incarcerated pursuant to that order in the preceding five years were eligible to vote. *Id.*

Act 636 opened the door to voters who were on probation or parole, re-enfranchising tens of thousands of Louisianans. But there were significant implementation problems. For example, all individuals with prior felony convictions were required to provide documentation of eligibility

9

to register to vote, whether or not they were previously registered. La. R.S. 18:102, 177; Att. O, Henderson Decl.; ECF 258-8. Individuals who were convicted of a felony but not sentenced to imprisonment were still subject to R.S. 18:177's suspension requirements. Att. O, Henderson Decl. Louisiana still required additional documentation to register to vote with the Federal Form. *Id.* The in-person appearance requirement of R.S. 18:102 and 177 imposed a substantial barrier on eligible applicants. *Id.* And registrars provided inconsistent information about the registration requirements. *Id.* In 2021, Louisiana enacted Act 127, which amended R.S. 18:102 to clarify that otherwise eligible individuals who were not sentenced to actual confinement do not lose the right to vote. *See* ECF 256-8. Act 127 also eliminated the requirement under R.S. 18:102 to provide documentation proving eligibility to register to vote:

> (b) Except as provided in Subparagraph (c) of this Paragraph, a person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order ~~if the person submits documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to the order within the last five years~~.

*Id.* at 3. Act 127 also required DPSC to provide Defendant a list of presently ineligible persons under their custody or supervision. *See* ECF 256-8; *see also* Ex. 1, Hadskey Dep. at 152:02-152:17. Act 636 and 127 together resulted in several new processes regarding individuals with felony convictions seeking to become active voters.

Notwithstanding Act 127, Defendant does not apply the Paperwork Requirement consistently; rather, Defendant has shifted her position as to whom the Requirement applies. As such, despite whether La. R.S. 18:176 applies to the registrant, if an individual receives a notice of suspension or other letter from a parish registrar indicating that they must appear in person to provide documentation to register or reinstate their registration, that individual's registration will

remain suspended until they appear in person with the appropriate documentation. *See e.g.*, ECF 259-19.[7]

This haphazard implementation of La. R.S. 18:176 and 177 has real and tangible consequences. First, Defendant's actions require individuals whose registrations were never suspended because they were never under an order of imprisonment or subject to actual confinement to nonetheless comply with the Paperwork Requirement. *E.g.*, Ex. 1, Hadskey Dep. at 310:11-311:22. Act 127 clarified that individuals who were never subject to actual confinement (such as those with suspended sentences or probation-only sentences) never lose the right to vote. *See* ECF 212 ¶ 60. However, those people whose registrations were suspended prior to Act 127 remain on the Suspended List. Ex. 1, Hadskey Dep. at 307:17-308:13. As a result, people who have pre-2022, probation-only or suspended sentences, are subject to the Paperwork Requirement. *Id.* Defendant has not clarified that these individuals should not have to provide additional documentation to register to vote. *See* ECF 258-13 (no mention of people who were not sentenced to actual confinement before Act 127's enactment). Moreover, Defendant's cursory statement about what Louisiana law requires after Act 127, ECF 258-13 at 2, has not allayed confusion by registrars. As a result, some registrars require individuals convicted after 2022 to comply with the Paperwork Requirement.  *See* ECF 259-10; ECF 259-9.

Second, and relatedly, registrars do not know who is required to seek reinstatement—and therefore produce VRC or its equivalent—and who is considered a new registrant. ECF 257-14; Ex. S-3; Ex. 5, Deposition of M. Christian Green (LWVLA) at 108:09-20 (representing that

---

[7] This includes Bridget Weaver, who received a challenge letter but has yet to submit paperwork, such that her registration is currently suspended. ECF 259-19 at 1-8. As her challenge letter states, "[i]order to have your voting privileges reinstated," Ms. Weaver must "appear in person at the Registrar of Voters Office." *Id.* at 8; *cf.* ECF 258-7 at 10 ("Nothing in the ERIN file shows she has appeared at the registrar with documentation of eligibility for reinstatement.").

11

Lafayette may not distinguish between first time and suspended registrants). Therefore, there is no consistent application of the Paperwork Requirement across parishes. Ex. S-3. That inconsistent application means that new registrants—including individuals whose earlier registrations were actually cancelled—are required to comply with the Paperwork Requirement. *See* Ex. 6, Deposition of Marcel Wall (St. Tammany Registrar of Voters) at 65:20-66:11.

Third, many voter registration applicants do not know whether they are a suspended voter subject to the Paperwork Requirement. Some individuals who have been imprisoned for many years may not remember or realize that they were previously registered. *See* Ex. 2 ¶ 14, Henderson Decl. And individuals who have moved parishes since their incarceration do not always know that they are new registrants in the place where they have moved. *See id.* An individual in either case who submits a voter registration application will belatedly discover they must comply with the Paperwork Requirement. *See, e.g.*, *id.*

Fourth, the Paperwork Requirement poses a total bar to voter registration for applicants in jail, regardless of their suspension status. Some new registrants in jail are required to comply with the Paperwork Requirement, like those who must re-register where they are jailed but who were previously registered in another parish. And for registrants whose prior registrations were suspended, whether or not they were subsequently cancelled, it is impossible to comply with the Paperwork Requirement. Ex. 1, Hadskey Dep. at 315:22-316:06. The requirement to appear in person means that no jailed voter can successfully comply, and those previously registered will be (and have been) denied the right to vote. *See* Appendix; Ex. 1, Hadskey Dep. 315:01-10.

**D.  State procedures for registration and reinstatement for individuals with felony convictions.**

The DPSC has long been required to produce reports to Defendant, known as the "Ineligible List," identifying Louisianans convicted of a felony and placed under an order of

12

imprisonment. *See* 1987 La. Act No. 831; La R.S. 18:171; ECF 258-13 at 6. Act 127 ensured that this list from the DPSC would only contain people who are currently ineligible to vote. *See* 2021 La. Act No. 127 (H.B. 378). In August 2022, the DPSC issued a regulation requiring that it send information to the Secretary of State that identifies 1) individuals who are incarcerated, 2) individuals who have been on parole or probation for less than five years, and 3) individuals under an order of imprisonment for an election crime. Ex. 3, at PL25205-06.

Defendant uses the Ineligible List to produce the Felon Report, which is a monthly list of all ineligible individuals that Defendant uploads to ERIN for the parish registrars to access. Ex. 1, Hadskey Dep. 20:16-21:14. The Felon Report notes whether an individual was sentenced to prison or supervision. *E.g.*, ECF 259-16 at 9 (noting that Roseanne Hayles Robinson was not sentenced to prison). ERIN also contains a record of every individual in Louisiana who is currently suspended because of a felony conviction. Ex. 1, Hadskey Dep. at 45:06-10. When downloaded, these records result in the Suspended List, which is accessible to both Defendant and parish registrars. *Id.* at 48:12-20. Parish registrars use the Felon Report and the Suspended List to assess whether an individual is ineligible to vote. *See id.* 22:17-23:05. The DPSC is also required to provide to a parish registrar, upon request, "information . . . regarding a person who is" eligible to vote under R.S. 18:102. La. R.S. 18:171(B)(2). Likewise, sheriffs and district attorneys are required under Louisiana law to provide to a parish registrar, upon request, "information regarding a person convicted of a felony . . . including . . . whether the conviction resulted in an order of imprisonment pursuant to which the person is incarcerated." La. R.S. 18:171(B)(1).

Defendant memorializes its instructions to registrars for complying with their understanding of La. R.S. 18:177's Paperwork Requirement in Defendant's Felony Procedures, which have changed over time. *See* Ex. 1, Hadskey Dep. at 37:01-14. They were first promulgated

13

to interpret Act 636, ECF 258-8, and not updated again until after the enactment of Act 127, Ex. 1, Hadskey Dep. 139:25-140:18; ECF 258-9, and upon inquiries from VOTE and other individuals. Atts. M and N, Henderson Decl. Those updated Felony Procedures specifically stated that "[n]o additional documents are required to register to vote for new registrants who may have had prior felony convictions." ECF 258-9 at 1. It did not explain how to process applications in ERIN, nor did it explain that people on probation only are not subject to suspension under R.S. 18:177. *Id.*

After this lawsuit began, Defendant updated the Felony Procedures to state that "[i]f the individual was not incarcerated pursuant to the order of imprisonment, you do not send a 21-day challenge. Make a note on the record that the sentence was not imposed or the sentence was suspended." ECF 258-10 at 2 (emphasis in text). However, these Procedures also said to "[c]hallenge all convicted felons listed on the ineligible list []" without any directive to further research to confirm whether an individual became eligible since the issuance of the monthly report, or any individual who was sentenced to probation only but still present on the Suspended List. *Id.* Similarly, the Felony Procedures discuss R.S. 18:177 implementation elsewhere and refer to "individuals whose voting rights have been suspended in any parish for a felony conviction" without denoting whether the individual's registration is new or a reinstatement. *Id.* On August 30, 2024, Defendant added a definition for first-time registrants: "an individual who has never been registered to vote in any parish in Louisiana," with no additional citation in support of that statement. ECF 258-11 at 5; Ex. 1, Hadskey Dep. Ex. 4. The Felony Procedures were updated again in December 2024, noting that not all individuals with felony convictions were ineligible. ECF 258-12; Ex. 1, Hadskey Dep. at 99:07-101:05.

The most recent updates to the Felony Procedures maintain the same definition for first-time voter registration and include an instruction to "[p]rocess first-time registration applications

14

as you would any other registration application." ECF 258-13 at 2. The February 23, 2026, Procedures defines the Paperwork Requirement as requiring the VRC or "[o]ther documentation that is signed by a corrections official . . . or other appropriate government official and establishes that the individual" is eligible to vote. *Id.* at 4.

## II. Plaintiffs' Efforts to Register Voters with Felony Convictions.

Plaintiffs have a long history of advocating for and assisting voters with felony convictions.

### A. Voice of the Experienced

VOTE was "[b]orn inside Angola" as the Angola Civics Project "and built by people who survived the system," Att. A, Henderson Decl., to "speak out on the necessity of fair and equal access for housing for [] formerly incarcerated persons, and their loved ones;" to "educate folks around the collateral consequences that formerly incarcerated people face trying to get employed," Ex. 7, Deposition of Norris Henderson (VOTE) at 41:01-03, 38:12-14, and more. But "voting rights is key to all of it," because VOTE believes that "these are all the collateral damages that people face because they're formerly incarcerated" and cannot participate in the political process. Ex. 7, Henderson Dep. at 43:18-44:01. VOTE is a membership organization. *See* Att. A, Henderson Decl. at PL68618.

As a part of their voting rights mission, VOTE advocated for the passage of Act 636. ECF 120 at 36:06-15. But with this success came challenges with voter registration due to the Paperwork Requirement. *See supra* Part I.C.; Ex. 2 ¶ 39, Henderson Decl. The Paperwork Requirement is the "greatest impediment" to VOTE's efforts to help people register and is the "most common reason" why the individuals they try to help do not have their registrations accepted. ECF 120 at 43:06-09.

15

Although Act 127 removed the Paperwork Requirement for new registrants, it left the requirement in place for suspended voters. VOTE continues to be impacted by that barrier, including for new registrants. Nearly every interaction with an individual subject to the Requirement requires follow-up to ensure that they have the right documentation. *See* Ex. 2 ¶¶ 32-33, Henderson Decl. VOTE will often drive individuals without cars to their local probation and parole office and registrar's office to ensure that the individual complies with the in-person appearance requirement. *See id.* VOTE staff members who need to comply with the Paperwork Requirement themselves have to take off work to obtain the VRC and hand-deliver to the registrar. *See id.* ¶ 27. To date, VOTE has been unable to identify a consistent pattern for when the VRC is required. *See id.* ¶ 18. Sometimes, a parish official will simply accept the voter registration application, other times they will not. *See id.* VOTE also encounters individuals who are confused and intimidated when they receive the 21-day challenge letter and sometimes accompanies those individuals. ECF 21-4 ¶ 14. Perhaps especially because these individuals have experience with the criminal legal system, they are hesitant to get in trouble, and the challenge letter often makes them feel like they are doing something wrong. Ex. 4 ¶ 6, Amos Decl.

VOTE is well-known in the community—individuals and other organizations will often reach out for guidance in navigating the voter registration process for people with prior felony convictions. *See* Ex. 2 ¶ 10, Henderson Decl. This includes PCEJ, with whom VOTE shares a close partnership. *See id.* ¶ 28; Ex. 8 ¶ 16, Declaration of Ashley Shelton (PCEJ); Ex. 9, Deposition of Ashley Shelton (PCEJ) at 46:18-47:25. It also includes individuals who are familiar with VOTE's work but have never had contact with the criminal legal system, such as David Smith, who nonetheless required VOTE's assistance to navigate the Paperwork Requirement. Ex. 10 ¶¶ 11-13, Declaration of David Smith.

VOTE estimates that the Paperwork Requirement triples the work required to register one person. Ex. 2 ¶ 32, Henderson Decl. VOTE must follow up with nearly every individual to confirm whether their registration application was accepted or not due to the Paperwork Requirement, diminishing the overall number of individuals VOTE can assist. *Id.* ¶ 5. These are resources VOTE could be putting "to registering more voters and other activities within its mission." *Id.* ¶ 36; *see also* Ex. 4 ¶¶ 26-28, Amos Decl; ECF 120 at 64:20-66:04. Without having to assist individuals navigating the Paperwork Requirement, VOTE could expand its outreach in other areas, such as housing and employment. Ex. 2 ¶¶ 3, 36, Henderson Decl.  Moreover, because of the Paperwork Requirement, VOTE often fails to successfully register voters even after extensive work. *See id.* ¶ 33; Ex. 4 ¶ 6, Amos Decl. This is especially the case for voters in jail who are completely unable to comply with the Paperwork Requirement. *Id.* at ¶¶ 29-30; *supra* Part I.C. This also hinders VOTE's ability to recruit members, since voter registration is a requirement of membership. *See* Ex. 2 ¶ 34, Henderson Decl. VOTE believes that their voter registration work is foundational to their mission. Ex. 7, Henderson Dep. at 41:01-03; 38:12-14, 43:18-44:01. But the Paperwork Requirement diminishes their ability to accomplish this work.

### B.  Power Coalition for Equity and Justice

PCEJ provides voter registration services on behalf of people with felony convictions as part of their mission to support community-driven activism and grassroots leadership development to empower citizens to address classism, racism, and other marginalization in their own lives and communities. Ex. 8 ¶ 4, Shelton Decl. Because voters with felony convictions in Louisiana are among the most marginalized voters, ensuring that they register is key to fulfilling PCEJ's mission. *Id.* ¶ 7. As such, registering voters with felony convictions is a priority for the organization. *Id*.; Ex. 9, Shelton Dep. at 15:01-19; 113:25-114:03.

17

PCEJ pursues its priority of registering voters with felony convictions in part by conducting voter registration drives at probation and parole offices. Ex. 8 ¶ 18, Shelton Decl. They also specifically conduct registration drives in the parishes with the highest rates of felony convictions and conduct civic engagement clinics to assist individuals in getting registered after a conviction. *Id.* ¶ 19. One of PCEJ's primary methods of registering voters is their 11-touch program, in which PCEJ aims to contact about 600,000 voters across Louisiana 11 times each, through a combination of door knocking, phone calls, text messages, and more. *Id.* ¶ 12; ECF 120 at 163:18-25; Ex. 9, Shelton Dep. at 75:14-76:10; ECF 257-9 at 10-11.

PCEJ must spend extra time working with individuals who face barriers due to the Paperwork Requirement. Former PCEJ organizer Billy Anderson worked with individuals with felony convictions. Ex. 11 ¶¶ 3, 5, 7-13, Declaration of Billy Anderson. Mr. Anderson encountered voters who were confused about the process and spent time answering questions about obtaining the VRC and complying with the Paperwork Requirement. *Id.* ¶¶ 15, 19-22. The time Mr. Anderson spent with those voters was time taken away from PCEJ's other priorities, including work with other potential voter registration applicants. *Id.* ¶ 25. As a trusted resource in the community, PCEJ organizers like Mr. Anderson often received questions from voter registrants with felony convictions. *Id.* ¶ 8. PCEJ is comprised of a small staff, so refers individuals to VOTE, their close partner, for additional assistance. Ex. 9, Shelton Dep. at 46:18-47:25; 109:03-04. Even in those instances when PCEJ ultimately refers an individual to VOTE, it takes time to call VOTE and make the referral, which is time taken away from PCEJ's other efforts and finite resources. Ex. 8 ¶¶ 16-17, Shelton Decl.

### C. League of Women Voters of Louisiana

The League's mission is to "encourage informed and active participation in government, increase voter understanding of major public policy issues, and influence public policy through education and advocacy." Ex. 5 ¶ 5, Declaration of M. Christian Green (LWVLA). This includes voters with felony convictions, because the League has a particular focus on traditionally underrepresented and underserved communities. *Id*. League members regularly engage in voter registration work for voters with felony convictions. *Id*. ¶¶ 6-8; Ex. 12 ¶¶ 5-6, Declaration of Charleen Markle; Ex. S-1. In Iberia Parish, for example, League members have worked with the local probation and parole office to register voters. Ex. 12 ¶¶ 7-9, Markle Decl. Additionally, the League provides voter education specific to voters with felony convictions. *Id*. ¶¶ 5-9; Ex. 5 ¶ 9, Green Decl.; Att. D, Green Decl.

In the League's experience, confusion about the Paperwork Requirement creates barriers to voter education and registration, so people with felony convictions turn to the League for assistance. Ex. 5 ¶¶ 6-11, Green Decl.; Ex. 12 ¶¶ 5-6, Markle Decl. The League, often working with VOTE, will guide those people in complying with the Paperwork Requirement. Ex. 5 ¶¶ 6-8, Green Decl.; Ex. 12 ¶¶ 6-8, Markle Decl.; Ex. 13, Green Dep. at 56:01-13.

The League's voter registration and education services, including for people with felony convictions, are a core part of their mission. Ex. 5 ¶ 5, Green Decl. The Paperwork Requirement hinders their ability to fulfill their mission because assisting voters overcome this unlawful requirement requires substantial member time, money, and other resources, reducing the overall number of eligible voters they can assist and diverting resources from their other voter education and engagement work. *Id*. ¶¶ 6-11; Ex. 12 ¶¶ 6, 9-10, 13, Markle Decl.

19

### D. Plaintiffs' NVRA notice efforts.

To reduce the burdens on voters and their organizations' resources, Plaintiffs have attempted to work with the State for years to implement the Paperwork Requirement in a manner consistent with federal law. On October 22, 2020, through counsel, Plaintiff VOTE provided the Secretary of State with written notice regarding the NVRA violations created by requiring additional documentation of suspended, eligible voters. *See* Att. O, Henderson Decl. The October 22, 2020 Notice Letter notified the Secretary that the Paperwork Requirement violated the NVRA's prohibition on additional documentation, and that multiple aspects of its implementation violated the NVRA's mandate that election programs and activities be "uniform" and "nondiscriminatory." *Id.* As noted, this letter resulted in conversations between VOTE and Defendant that were never resolved Ex. 1, Hadksey Dep. Ex. 23, as well as Act 127. *Supra* Part I.C.

Because problems still persisted in the process after the passage of Act 127, Plaintiffs exchanged various correspondence regarding the ongoing NVRA violation with Defendant on August 26, 2022, October 28, 2022, March 8, 2023, and March 31, 2023. *See* Att. B, Green Decl.; Att. C, Green Decl.; ECF 258-9; Ex. 14; Ex. 15. On May 31, 2024, and August 30, 2024, the parties further corresponded regarding the ongoing NVRA violations. *See* Att. P, Henderson Decl.; ECF 258-11.

### III. Burdens on individual voters.

Stories from applicants and voters illustrate the burdens posed by the Paperwork Requirement.[8] Charles Amos, a VOTE member and staff member, was formerly incarcerated and released on April 12, 2022, without community supervision. Ex. 4 ¶¶ 2-3, 12, 14, Amos Decl. He tried to register to vote for the first time in Orleans Parish immediately upon release, on April 23,

---

[8] *See* Appendix.

20

2022, and again a month later. *Id.* ¶¶ 15-16; ECF 260-2. Mr. Amos received a 21-day challenge letter, despite being a new registrant. Ex. 4 ¶¶ 13, 17, Amos Decl.; ECF 260-2. Without VOTE's help, he would not have known how to resolve his issue. Ex. 4 ¶¶ 19, 24, Amos Decl. Mr. Amos was not able to obtain the VRC until July 11, 2022—nearly three months after he first attempted to register—and on his third attempt to do so. *Id.* ¶ 22.

Gregory Finney, VOTE member, was an active voter registrant prior to his felony conviction. ECF 21-5 ¶ 6. He first attempted to reinstate his voter registration in August 2020, after going to his parole and probation office twice to obtain the VRC, and then back to the registrar's office to submit it. ECF 21-5 ¶¶ 9-12. He was challenged again in fall 2020, and had to seek reinstatement a second time. ECF 21-5 ¶ 15. Mr. Finney reached out to VOTE for assistance because he was confused by the second challenge despite being eligible to vote. ECF 21-5 ¶ 15.

Lawerence Pittman, VOTE member, was a new registrant when he was released from prison. Ex. 16 ¶¶ 3, 7, Declaration of Lawrence Pittman. Mr. Pittman was released from prison in April 2024, and had no community supervision; therefore, he was eligible upon release. *Id.* ¶ 7. Mr. Pittman tried to register to vote for the first time in April 2024. *Id.* ¶ 5. About a week or two later, a 21-Day Challenge letter was sent to him. ECF 260-4; Att. B, Pittman Decl. at PL68476. Mr. Pittman had to go to the Jefferson Registrar three times to provide documentation proving his eligibility. Ex. 16 ¶¶ 12, 20, 29, 33, Pittman Decl. He was sent another challenge letter in July, 2024, and a "Notice of Suspension" in August, 2024. *Id.*; Att. B, Pittman Decl. at PL68476. Despite not being on probation or parole, he had to go to a probation and parole office to obtain a VRC. Ex. 16, Pittman Decl. ¶¶ 14, 18. VOTE took him to get his VRC and then took him to submit the VRC to the registrar. *Id.* ¶¶ 27-28. He was finally registered in October 2024, six months after he first registered. *Id.* ¶ 27, 37; ECF 260-4.

21

Lorena Lachelle Jones was previously registered to vote before she was convicted of a felony in the 1990s. ECF 259-13; Ex. 4 ¶ 11, Amos Decl. Ms. Jones was never sentenced to prison, and only served a probation sentence. *Id.* ¶ 11. VOTE helped her register to vote. *Id.* Ms. Jones received a 21-day challenge letter dated July 18, 2025, despite not having lost the right to vote under Act 127. ECF 259-13 at 8, 11. Mr. Amos helped Ms. Jones obtain the VRC and then took her to the registrar's office to register to vote. Ex. 4 ¶ 11, Amos Decl.

Stephen Hebert and David Smith are Louisiana residents neither of whom have been arrested or convicted of a felony. Ex. 17 ¶¶ 1-2, 5, Declaration of Stephen Hebert; Ex. 10 ¶¶ 1-2, 5, Smith Decl. Mr. Hebert's voter registration was erroneously suspended. Ex. 17 ¶¶ 4-5, 14-18, 22, Hebert Decl. He received a challenge letter in September 2024, shortly before the November 2024 general election. *Id.* ¶ 4; Att. A, Hebert Decl. Mr. Hebert initially thought the letter was spam because he has never been convicted of a felony or arrested. Ex. 17 ¶ 4, Hebert Decl. Because the 2024 election was approaching, he nonetheless followed up to avoid being disenfranchised. Ex. 17 ¶ 6, Hebert Decl. Mr. Hebert had to go in person to the Orleans Registrar and was told to go to DPSC, although he never had a corrections official. *Id.* ¶¶ 9-12. After visiting both locations of the Orleans Parish Registrar of Voters and receiving confusion instructions, Mr. Hebert was told that his name had been mistakenly flagged as part of a "felon check" and that the issue was resolved. *Id.* ¶¶ 8-15; ECF 259-7 at 1. Mr. Hebert then received a notice of suspension for failure to appear in person. Ex. 17, ¶ 17, Hebert Decl.; Att. B, Hebert Decl. He again had to speak to both the Louisiana Secretary of State's Office and the Orleans Parish Registrar of Voters until his registration was finally reinstated. Ex. 17, ¶¶ 19-21, Hebert Decl.; ECF 259-7 at 4. The employee at the registrar's office informed Mr. Hebert that they just receive the list of felons from the Secretary of State and send out letters to suspend registrants, and claimed they were not responsible

for mistaking his identity. Ex. 17, ¶ 22, Hebert Decl. Likewise, Mr. Smith received a challenge letter ahead of the November 2024 election, despite being a regular voter since 2010. Ex. 10 ¶ 4, Smith Decl.; ECF 259-6 at 8. He was very confused about how to resolve the problem given he has never been convicted of any crime and therefore does not have a parole officer. Ex. 10 ¶¶ 5-7, Smith Decl. He called the registrar's office, who confirmed that his identity was mistaken. Ex. 10 ¶¶, 8-9, Smith Decl.

VOTE also regularly assists voter registrants who are incarcerated in parish jails. Ex. 2 ¶ 28-29, Henderson Decl.; Ex. 7, Henderson Dep. at 128:07-129:06 (describing VOTE's voter registration efforts in parish jails); Atts. C & D, Henderson Decl. VOTE contacts individuals to make sure they are registered. *See* Ex. 2 ¶ 20, Henderson Decl.; Att. E, Henderson Decl. When VOTE discovers that an individual is in jail but needs to comply with the Paperwork Requirement, VOTE attempts to advocate on their behalf. *See* Ex. 2 ¶ 30, Henderson Decl.; Atts. F & G, Henderson Decl. VOTE is aware of multiple voters in East Baton Rouge Parish whose absentee ballot applications were rejected for the November 2024 election because their registration needed to be reinstated after a prior felony conviction. Ex. 18; Ex. 19 at SOS025816. VOTE is also aware of several eligible voter registrants who were confined in Caddo Correctional Center in March 2024 whom VOTE believes were required to provide a voter eligibility certificate to register to vote. *See* Att. H, Henderson Decl. According to the Caddo Parish Registrar of Voters, those individuals would have no way to obtain or submit the documentation required of them, and therefore most likely missed the March 2024 Presidential Preference Primary and Municipal Elections. *See* Ex. 20, Deposition of Dale Sibley (Caddo) at 85:13-20. Any of those individuals who remain confined would have missed all subsequent state and federal elections. Finally, VOTE is aware of several voters in Orleans Parish whose registrations may have been rejected in 2024

23

and 2025 for failure to submit the required documentary proof of eligibility because of their incarceration in Orleans Justice Center. *See* Atts. K, I, J, Henderson Decl.; Ex. 21. All of these individuals would have missed any election held during their period of confinement, regardless of their eligibility. *See* Ex. 1, Hadskey Dep. at 315:07-14.

There are countless more examples. Plaintiffs have provided evidence of VOTE members and other individuals who have been injured by the Paperwork Requirement, including:[9]

- VOTE members and other individuals who were required to comply with the Paperwork Requirement even though they were never suspended or never lost their right to vote: Sheila Jackson, Joshua Adams, William Barry III, Joe Justin Stevenson, Joshua Lee Jones, and Lorena Lachelle Jones.

- Individuals who VOTE assisted have been unable to vote because of the Paperwork Requirement including the jail-based registrants: Sheila Jackson, Kerry Shelby.

- VOTE members and other individuals who have had to face significant hurdles to registration because of the Paperwork Requirement, including the confidential list of names provided to Defendant: A.D., M.S., C.Y.

- VOTE members who are currently suspended and will become eligible after the date of this Opposition: C.C.

- VOTE members who are new registrants and will become eligible after the date of this Opposition: J.B.

This list is not exhaustive. Plaintiffs found an example of an individual with probation-only conviction who used the Federal Form to register to vote, and was improperly required to provide the VRC for reinstatement when he never should have been suspended in the first place. ECF 259-

---

[9] The citations for these individuals provided in Appendix.

24

10; Ex. 1, Hadskey Dep. at 309:05-311:23. Through third-party discovery, Plaintiffs also identified additional voters who were required to provide the paperwork despite not needing to. ECF 257-14; ECF 258-3.

Plaintiffs' expert, Dr. Traci Burch found that of the 27,956 Louisianans with past convictions who were eligible to register as of January 2026, the registration rate of first-time registrants was more than twice as high (15.8%) as that of previously-registered registrants (5.9%), supporting the conclusion that the requirement for previously registered voters with felony convictions to submit additional documentation poses an administrative barrier to registration. *See* Att. A, Burch Decl. at 18. Notably, in most states, people who were registered prior to their conviction register and vote at higher rates post-conviction than people who were not previously registered, but in Louisiana the pattern is the opposite. *See* Att. A, Burch Decl. at 5-13. In support of this Opposition, Dr. Burch updated her estimates as of March 2026, Ex. 22 ¶¶ 2-9, Declaration of Traci Burch, and found that there are at least 8,880 individuals whose registrations are currently suspended who are eligible to vote; and 19,785 individuals who are not registered but should not require additional documentation to register to vote, *id.* ¶¶ 12-13.

## PROCEDURAL BACKGROUND

Plaintiffs filed this action on May 1, 2023, alleging that the Paperwork Requirement violates the NVRA and the Equal Protection Clause of the Fourteenth Amendment. *See* ECF 1; ECF 168, ¶¶ 13-14. On September 25, 2025, this Court dismissed Counts One, Two, and Five of Plaintiffs' First Amended Complaint. ECF 210.

Of the remaining claims, Count Three alleges that Defendant's enforcement of the Paperwork Requirement violates the NVRA when applied to individuals who are registering to vote for the first time or are otherwise new registrants, or who were previously registered and

convicted of a felony but never incarcerated. ECF 168 ¶¶ 3, 54, 142-151. Plaintiffs claim that some parish registrars are requiring new registrants, or registrants who were never ineligible due to a felony conviction, to nonetheless submit documentation of eligibility. *Id.*; *cf.* ECF 215 at 13. Count Four alleges that the Paperwork Requirement is not applied uniformly across parishes, also in violation of the NVRA. ECF 168 ¶¶ 152-159. Finally, Count Six alleges that the provision violates the Equal Protection Clause. *Id.* ¶¶ 167-182. In particular, the First Amended Complaint alleges that "[d]espite being similarly situated, voters applying for what the State labels 'reinstatement' face different, arbitrary, and unnecessarily burdensome barriers," *Id.* ¶ 175, and "this discriminatory treatment is irrational, imposes unnecessary burdens on the right to vote, and allows the State to shirk its responsibility to verify voter registrations from new registrants." *Id.* ¶ 3.

## LEGAL STANDARD

Summary judgment is appropriate only when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Ardoin v. La. through Dep't of Pub. Safety & Corr., Off. of State Police,* No. CV 08-593-JJB-DLD, 2012 WL 12986189, at *1 (M.D. La. June 14, 2012). "There is a genuine issue of a material fact if the evidence is such that a reasonable [factfinder] could return a verdict for the non-moving party." *R & L Inv. Prop., L.L.C. v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013) (citation modified). "The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case." *Ardoin v. La. through Dep't of Pub. Safety & Corr., Off. of State Police*, 2012 WL 12986189, at *1 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Evidence is construed in the light most favorable to the non-moving party, and we draw all reasonable inferences in that party's favor." *R & L Inv. Prop., L.L.C.*, 715 F.3d at 149 (citation modified).

**LEGAL ARGUMENT**

On October 21, 2025, this Court found as follows:

- Plaintiffs can demonstrate an Article III injury by showing that they "will likely go "out of their way to counteract the effect of Louisiana's allegedly unlawful Paperwork Requirement—not with a view toward litigation, but toward mitigating its real-world impact." ECF 215 at 49 (citing *OCA-Greater Hou. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017)).

- Defendant is the party responsible for ensuring compliance with the Election Code for purposes of the NVRA and Plaintiffs' constitutional claims. ECF 215 at 90-91.

- Under Count 3, "[t]he application of the Paperwork Requirement to new registrants directly conflicts with the 'accept and use' provision." ECF 215 at 75 (citing 52 U.S.C. § 20505(a)(1)).

- Under Count 4, if "Defendant has enabled the inappropriate application of the Paperwork Requirement to some (but not all) new registrants," "then Defendant has effectively violated Section 8 of the NVRA—namely, by tolerating, if not facilitating, disuniformity." ECF 215 at 75-76.

- Under Count 6, "subjecting thousands to a cat-and-mouse document chase is a severe burden on one's right to vote," in violation of equal protection, which is "not narrowly tailored to any potential state interest, as there are much more efficient and indisputably less restrictive means for parish registrar offices to receive such information." ECF 215 at 86.

Two years of discovery has provided significant factual support for this Court's legal conclusions and Plaintiffs' claims. The evidence demonstrates a depth of the harm to Plaintiffs,

27

their members, and their constituencies that is more than sufficient to constitute an Article III injury-in-fact. Likewise, the evidence shows that Defendant's ever-shifting Felony Procedures—the primary method of providing guidance to the registrars—mean that Defendant is both the cause of Plaintiffs' injuries and that those injuries are redressable by this Court. Discovery has similarly illuminated the systematic voter registration and vote denials caused by La. R.S. 18:177 and Defendant's interpretation of that law. Thus, Defendant's Motion should be denied.

## I.   Plaintiffs Can Demonstrate Article III Standing.

VOTE, PCEJ, and the League each have Article III standing to challenge Louisiana's discriminatory and unnecessary Paperwork Requirement and Defendant's enforcement of that requirement. To establish standing, a plaintiff "must show that she has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (citation modified). These same three elements apply to organizational plaintiffs. *OCA-Greater Hou.*, 867 F.3d at 610. Organizational plaintiffs may establish standing either by showing that they have organizational standing in their own right or showing that they have associational standing on behalf of their members. *Id.*

On summary judgment, "specific facts" supporting a plaintiff's standing must be "set forth by affidavit or other evidence . . . which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation modified). And in cases involving multiple plaintiffs, courts need not address the standing of co-plaintiffs as long as one plaintiff has standing for each claim asserted and form of relief requested. *See, e.g.*, *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006); *Voice of the*

*Experienced v. Ardoin*, 813 F. Supp. 3d 600, 641 (M.D. La. 2025) ("[I]n multi-plaintiff cases, one plaintiff's having standing establishes standing for all").

Despite this Court's prior consideration and rejection of Defendant's "prior briefs and arguments related to Article III standing," Defendant nevertheless "adopt[ed] and incorporate[d them] by reference." Br. at 5; *but see* ECF 215 at 46-51. However, Defendant made no showing regarding VOTE's associational standing, thus failing to meet her burden for summary judgment. And significant material factual disputes about Plaintiffs' diversion of resources independently require denial of Defendant's Motion as to Plaintiffs' standing.

### A. VOTE has associational standing.

Plaintiffs alleged that VOTE had associational standing in the First Amended Complaint, *see* ECF 168 ¶¶ 18-10, and argued the same in briefing on Defendant's Motion to Dismiss, ECF 180 at 27-29. Defendant nonetheless did not address associational standing in her Motion for Summary Judgment, so she has not met her burden. *See* Fed. R. Civ. P. 56(a); *In re Matter of Jack'd Up Charters LLC*, 690 F. Supp. 3d 560, 567 (E.D. La. 2023) (citing *Celotex*, 477 U.S. at 323). And if the Court finds VOTE has satisfied the requirements for associational standing as to the claims in this case, all plaintiffs in this case have standing. *See Brackeen v. Bernhardt*, 937 F.3d 406, 422 (5th Cir. 2019); *see also Tiede v. Lumpkin*, No. 1:23-CV-1004-RP, 2026 WL 751904, at *3 (W.D. Tex. Mar. 16, 2026).

Although Defendant has not met her burden, VOTE can demonstrate its standing to sue on behalf of its members. An association like VOTE has standing when "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the

29

claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). VOTE meets each criterion.

*First*, VOTE's members have an independent Article III injury.[10] VOTE's constitutional and NVRA claims allege that the Paperwork Requirement causes burdens on *all* voters who are subject to it. *See* ECF 168 ¶¶ 83-88; *infra* Legal Argument Part II. As a result, VOTE members who were required to provide additional documentation to register to vote or seek reinstatement were all injured for the purposes of Article III standing. *See Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) (holding that the enforcement of a challenged law against an individual constitutes an injury-in-fact). This includes A.D., M.S., C.Y., and Gregory Finney. And those injuries were substantial and concrete. For example, as Mr. Finney testified, compliance with the Paperwork Requirement required VOTE assisting him personally, taking off of work, and making multiple visits to the Orleans Registrar and Parole and Probation offices. *See* ECF 21-5 ¶¶ 4-20.

VOTE also has members who were first-time registrants but nevertheless subject to the Paperwork Requirement, including Charles Amos, C.J., and Lawrence Pittman. And VOTE has assisted individuals who were improperly required to comply with the Paperwork Requirement when serving probation-only sentences, including Sheila Jackson. Defendant does not dispute that an individual who was a first-time registrant or never lost the right to vote should not be required to provide additional documentation to register to vote. ECF 258-8 at 1. Registrants erroneously required to comply with a policy that does not apply to them suffices to demonstrate an Article III injury. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (Individual had an Article III injury "because they were directly injured by it when they were wrongly identified as non-citizens . . . Even though they were ultimately not prevented from voting[.]"). But this injury

---

[10] See Appendix.

is further exacerbated when, as Mr. Amos describes, obtaining the required documentation imposes real financial, psychological, and other costs. Ex. 4 ¶¶ 6-9, Amos Decl.

Individuals who VOTE assisted like Sheila Jackson have even missed elections because of the Paperwork Requirement. And "[w]hen a voter is removed from the voter rolls by a local official acting on information and instructions provided by the Secretary and in accordance with training from his office, the voter's injury is fairly traceable to the Secretary." *Hopkins v. Sec'y of State Delbert Hosemann*, 76 F.4th 378, 394 (5th Cir. 2023), *reversed on other grounds*, 83 F.4th 312 (5th Cir. 2023).

*Second*, VOTE's members' interests align with its organizational purpose. VOTE's mission is to advocate for the rights of people who are incarcerated and people who were formerly incarcerated in the areas of voting rights, medical rights, housing rights, and employment rights. *See* Ex. 2 ¶ 3, Henderson Decl.; Ex. 7, Henderson Dep. at 41:01-03; 38:12-14, 43:18-44:01. VOTE provides voter education, registration drives, and know-your-rights workshops to communities throughout Louisiana, and is a leader in criminal justice and voter rights reform statewide and nationally. *See* Ex. 2 ¶ 6, Henderson Decl. VOTE works to assist eligible Louisianans with felony convictions, including their members, to navigate the Paperwork Requirement so they may fully participate in civic life. *Id.* ¶ 7. This overlap demonstrates the requisite alignment of both its members' interests and organizational purposes.

Nor has VOTE been "screened out" of Article III standing by virtue of its legislative efforts to resolve the Paperwork Requirement. Br. at 13. Rather, VOTE's legislative advocacy demonstrates that resolving the Paperwork Requirement issue is germane to VOTE's purpose sufficient for purposes of Article III standing. Germaneness "demand[s] that an association plaintiff be organized for a purpose germane to the subject of its member's claim," to "raise[] an

31

assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555-56 (1996); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010) ("[T]he germaneness requirement is 'undemanding' and requires 'mere pertinence.'") (citation omitted). VOTE's purpose is to restore the full human and civil rights for people who are incarcerated and people who were formerly incarcerated; as VOTE explained, "[t]he voting rights is key to all of it." Ex. 7, Henderson Dep. at 43:01-18. VOTE members who are otherwise eligible to vote, have been harmed because they are required to provide documentation proving eligibility to register to vote. VOTE's legislative efforts to reduce the burdens on voters with felony convictions, then, only corroborate the organization's connection to its members' injuries.

*Third*, neither the claims asserted nor the relief requested requires participation of individual members. This prong is satisfied so long as "the nature of the claim and of the relief sought does not make individual participation of each injured party indispensable to proper resolution of the cause." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Individual participation is unlikely to be necessary, for example, when Defendants "impose[d] relatively uniform requirements on all Plaintiffs' covered members" such that each individual's injury was not distinct enough to require its own "ad hoc factual inquiry." *NetChoice v. Murrill*, 812 F. Supp. 3d 594 (M.D. La. 2025) (citation modified). And challenges seeking only injunctive relief are less likely to require individual participation. *See id.* at 630-31; *see also Tellis v. LeBlanc*, No. 18-CV-0541, 2019 WL 1474777, at *4 (W.D. La. Apr. 3, 2019). Finally, the need to provide evidence of an individual member's harm does not constitute a need for individual participation, rather, "[p]roving the

32

illegality of the pattern . . . required some evidence from members, but once proved as to some, the violations would be proved as to all." *Ass'n of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 552. Each of these considerations weighs in favor of VOTE's associational standing, which Defendant has not challenged in her Motion.

### B.  Plaintiffs have organizational standing.

All three Plaintiffs have organizational standing to challenge Defendant's enforcement of the Paperwork Requirement. Plaintiffs may demonstrate organizational injuries in two ways. *First*, an organization may show that counteracting a defendant's unlawful conduct results in a "drain on the organization's resources" or a "concrete and demonstrable injury to [an] organization's activities." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also OCA-Greater Houston*, 867 F.3d at 612 (organization was injured where educating voters in response to the challenged law "consumed its time and resources" and frustrated the organization's mission). As this Court recognized, the Supreme Court's clarification of the *Havens* standing framework in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*AHM*") is no barrier to Plaintiffs establishing standing here. ECF 215 at 42-51. Under *AHM*, an organization establishes injury when it shows the defendant's "actions directly affected and interfered with [the plaintiff's] core business activities." *AHM*, 602 U.S. at 395 (citing *Havens*, 455 U.S. at 379). Unlike the *AHM* plaintiffs, who could not establish standing "simply by expending money to gather information and advocate against" the challenged actions, the Court noted that in *Havens*, the plaintiff had standing because the defendant's actions impaired its core activities as "not only [] an issue-advocacy organization, but also operat[ing] a housing counseling service." *Id.* at 394-95 (citation modified). *Second*, in the NVRA context, the Fifth Circuit has specifically held that a nonprofit organization had standing where the organization "devoted resources to counteract [the defendant's] allegedly unlawful

33

practices" in failing to comply with the NVRA's provisions. *Scott v. Schedler*, 771 F.3d 831, 837 (5th Cir. 2014). Plaintiffs suffer organizational injury in both ways. Ultimately, Plaintiffs have standing because a wealth of evidence shows they have diverted their time and resources towards "mitigating [the requirement's] real-world impact on [their] members and the public," *OCA-Greater Houston*, 867 F.3d at 612, impairing their ability to further their missions.

          i.     *VOTE has organizational standing to bring all claims.*

The Paperwork Requirement places a heavy burden on VOTE's staff and its members, and hinders them from furthering other activities related to its core mission. *See* Ex. 7, Henderson Dep. at 171:17-172:21; Ex. 2 ¶ 26, Henderson Decl. VOTE "would not have to engage in this additional education and outreach for individuals with felony convictions but for the documentary proof of eligibility requirement." *See* Ex. 2 ¶ 26, Henderson Decl. VOTE estimates that the Paperwork Requirement "at least triple[s]" the work of registering a single voter. *See id.* ¶ 32. The Paperwork Requirement itself, coupled with Defendant's haphazard implementation, has impaired VOTE's ability to effectively register its members and properly educate them on registration requirements. *See id.* ¶¶ 33-36. VOTE is also injured by the Paperwork Requirement because it prevents jail-based individuals from registering. VOTE regularly conducts voter registration drives in Louisiana jails as a means to educate eligible voter registrants, recruit members, and educate prospective members about VOTE's work. *See id.* ¶¶ 28-31; *see also supra* Factual Background II.A. To be a VOTE member, one must register to vote if eligible.[11] The Paperwork Requirement bars individuals in jail who must present additional documentation from registering to vote or seeking reinstatement. *See supra* Factual Background, Part I.C. The interests of those jail-based applicants therefore bear directly on VOTE's organizational interests. *See Hunt*, 432 U.S. at 345. The total

---

[11]   Ex.  2  ¶  9,  Henderson  Decl.;  Voice  of  the  Experienced,  Our  Members, https://www.voiceoftheexperienced.org/members (last visited July 14, 2026).

vote denial for VOTE's prospective members, and the corollary impact on the organization, is sufficient to establish an injury in fact.

VOTE has therefore demonstrated Article III standing, unrelated to its lobbying efforts. Defendant's characterization on this point is inaccurate, but more importantly, irrelevant. "Article III standing screens out plaintiffs who might have *only* a general legal, moral, ideological, or policy objection to a particular government action." *AHM*, 602 U.S. 367, 381 (emphasis added). VOTE's legislative advocacy has always centered around eliminating the burdens caused by R.S. 18:177 and ensuring that people on probation and parole are able to register and vote consistent with the promises of the Louisiana Constitution. *See supra* Factual Background, Part I.C.; II.A. Further, VOTE has always taken the position that the law requiring documentation for proof of eligibility could be construed in a way that does not burden voters, and challenges not only R.S. 18:177, but Defendant's unlawful interpretation of it after Act 127. *E.g.*, Att. O, Henderson Decl.; Att. B, Green Decl. Defendant's choice to interpret La. R.S. 18:177 to require paperwork in a way that burdens eligible voters has imposed direct harms to VOTE's voter registration activities and organizational resources. *Supra* Part II.A. The "asserted right" VOTE claims, then, is "to have the SOS act in accordance with" *federal law*, not simply its own understanding of the law, as mischaracterized by Defendant. *Cf.* Br. at 13. VOTE has satisfied standing under Article III to bring all claims.

> ii.     *PCEJ has organizational standing to bring all claims.*

PCEJ's mission is to support community driven activism and grassroots leadership development to empower citizens to address classism, racism, and other marginalization in their own lives and communities. *See* Ex. 9, Shelton Dep. at 14:14-19; Ex. 8 ¶ 4, Shelton Decl. PCEJ's work regarding its mission is centered on educating and assisting voters to more fully engage in the voting process and make sure Louisiana's laws support the people's engagement at the voting

35

booth. *See* Ex. 9, Shelton Dep. at 16:01-17; Ex. 8 ¶ 5, Shelton Decl. To further its mission, PCEJ engages in its 11-touch voter outreach program. *See supra* Factual Background II.B; *See* Ex. 9, Shelton Dep. at 91:15-92:25; Ex. 8 ¶ 12, Shelton Decl. PCEJ also tables at a variety of events to engage with voters, which includes providing general voter education and specific education for folks that are formerly incarcerated. *See* Ex. 9, Shelton Dep. at 31:15-33:19, 91:15-92:25; Ex. 8 ¶ 13, Shelton Decl. PCEJ organizers regularly encounter people dealing with the criminal justice system and trying to figure out their rights, so they explain what to expect at the registrar's office when attempting to register. Ex. 9, Shelton Dep. at 32:21-33:19, 23:11-24:25; *see also supra* Factual Background II.B. As an organization that primarily focuses on Louisiana's most marginalized voters, especially Black voters, assisting voters with felony convictions register to vote is a priority for PCEJ, as most of those voters are people of color. Ex. 8 ¶ 9, Shelton Decl.

The Paperwork Requirement has caused PCEJ to divert significant resources from other activities related to its core mission. *See* Ex. 8 ¶ 10, Shelton Decl. PCEJ provides voter education to hundreds of thousands of Louisiana voters and eligible individuals across the state, but they must divert significant resources to provide additional assistance to those who must comply with the Paperwork Requirement. *See Id*. ¶¶ 6, 10. This is exacerbated by Defendant's haphazard implementation of the Paperwork Requirement, especially where non-suspended voters are nevertheless told they must comply. *See* Ex. 9, Shelton Dep. at 28:25-29:21, 130:02-136:12. Like the plaintiff in *Havens*, PCEJ is "not only [] an issue-advocacy organization, but also operat[es] a [direct] service." *AHM*, 602 U.S. at 395 (citation modified); *see also Havens*, 455 U.S. at 379. PCEJ provides direct services to Louisianians statewide through voter education and registration assistance. In the first three months of 2026, PCEJ hosted at least 40 events on voter education.

36

*See* Ex. 9, Shelton Dep. at 35:08-23. There is no event that PCEJ hosts that does not include voter education. *See id.* at 78:07-17.

Contrary to Defendant's argument, PCEJ has standing to bring Counts 3 and 4. *Cf.* Br. 16-20. Eligible registrants with felony convictions that PCEJ encounters are required to provide additional documentation to prove their eligibility, including first-time registrants. *See* Ex. 11 ¶¶ 10, 16-17, Anderson Decl. PCEJ organizers have observed no consistency across parishes as to whom the Paperwork Requirement is applied. *Id.* ¶ 17. PCEJ has observed eligible voters, whose registration has not been suspended, be required to provide documentary proof of eligibility. *See* Ex. 9, Shelton Dep. at 133:04-137:06; *see also* Ex. 11 ¶ 17, Anderson Decl. The inconsistent application affects all voters, regardless of whether they are being registered or reinstated. Consequently, voters are unable to distinguish between registration and reinstatement; they just know they are required to provide paperwork and seek PCEJ's help accordingly. *See* Ex. 9, Shelton Dep. at 161:25-162:22.

Defendant mischaracterizes PCEJ's allegations regarding its diversion of resources because of the Paperwork Requirement. *See* Br. at 17-20. PCEJ spends additional time educating eligible voters with felony convictions on the Paperwork Requirement because it is being applied to eligible voters who have not been suspended. *See* Ex. 9, Shelton Dep. at 133:04-137:06; *see also* ECF 257-10; ECF 257-15. Ultimately, absent the Paperwork Requirement, PCEJ could maximize its outreach and work with more voters, including through their 11-touch program, in furtherance of its mission. *See* Ex. 9, Shelton Dep. at 93:16-96:25; Ex. 8 ¶ 25, Shelton Decl. PCEJ organizers confirm spending more time with voters to explain registering and voting after a felony conviction. Ex. 9, Shelton Dep. at 93:16-96:25, 104:04-105:19; Ex. 11 ¶ 20, Anderson Decl. PCEJ's GOTV budget also reflects the impact of the Paperwork Requirement—PCEJ is not

37

reaching their outreach goals based on predicted cost and time. *Id. See also* ECF 120 at 171:18-172:09. Indeed, PCEJ's GOTV budget and canvassing report indicate that some of the lowest canvassed rates in the parishes with the highest number of imprisoned people: Caddo, Orleans, and East Baton Rouge, reflecting the time PCEJ takes working with voters with felony convictions. Att. A, Shelton Decl. As a result, PCEJ has demonstrated that their outreach is diminished because of the extra time it takes to educate voters with a felony conviction, sufficient to establish standing. *See* Ex. 9, Shelton Dep. at 93:16-96:25. PCEJ has standing to bring all Counts.

       iii.    *The League has organizational standing to bring all claims.*

The League has demonstrated that the Paperwork Requirement frustrates its mission by forcing it to divert its resources—money and time—towards assisting voters overcome the Paperwork Requirement and away from the League's other priorities. *See* Ex. 13, Green Dep. at 16:22-17:17, 81:20-82:22; Ex. 5 ¶¶ 6-11, Green Decl.; ECF 120 at 145:15-146:25, 152:17-153:01. In particular, League members have diverted and continue to divert their time away from other priorities, including voter registration and education, towards assisting voters overcome the Paperwork Requirement. *See* Ex. 12 ¶¶ 5-13, Markle Decl.; Ex. 5 ¶¶ 6-11, Green Decl.; *see also supra* Factual Background II.C.

The League is comprised of two organizations, a 501(c)(3) which focuses on voter education and a 501(c)(4) which focuses on non-partisan issue advocacy. *See* ECF 120 at 126:08-13; Ex. 5 ¶¶ 2-3, Green Decl. The 501(c)(4) is also the statewide membership organization, such that every League member—including those who are also members of parish-level League chapters ("Local Leagues")—is a member of the League's 501(c)(4). *See* Ex. 13, Green Dep. at 12:15-20, 16:08-11; Ex. 5 ¶ 3, Green Decl. The two entities "work in synergy," Ex. 13, Green Dep.

38

at 12:19-20, to further the League's mission of registering and educating Louisiana voters. Ex. 5 ¶¶ 3, 5, Green Decl.

Contrary to Defendant's assertion, Br. at 6-7, the League sued on behalf of its 501(c)(3) and 501(c)(4) organizations. *See* ECF 168 ¶¶ 25-26. Throughout the litigation, Plaintiffs have asserted that the League is comprised of both organizations. *See, e.g.*, ECF 120 at 125:21-126:13 (testifying that she was an organizational representative for "the League of Women Voters of Louisiana" or "the League," which is comprised of both a 501(c)(3) and a 501(c)(4) organization); Ex. 13, Green Dep. at 12:15-16 ("Well, normally, we refer to both [the 501(c)(3) and 501(c)(4)] together in litigation.").[12] And the public views the League as one organization who performs both 501(c)(3) and 501(c)(4) work. *See* Ex. 5 ¶ 4, Green Decl. Defendant put forth no argument that the League's 501(c)(3) would lack standing, only arguing that the 504(c)(4) alone would not have standing, and therefore cannot meet her burden as to the 501(c)(3) on summary judgment.

But even under Defendant's theory that only the 501(c)(4) is a plaintiff, Br. at 6-7, the League has standing. *See, e.g.*, *OCA-Greater Houston*, 867 F.3d at 612. Because of the Paperwork Requirement, the 501(c)(4) members must spend more time assisting and educating voters with felony convictions per interaction, taking away from the time they could be spending registering additional voters and on other voter education. Ex. 12 ¶¶ 5-13, Markle Decl.; *see also supra* Factual Background II.C. Like the plaintiff in *OCA-Greater Houston*, the League is injured where registering and educating voters in response to the Paperwork Requirement "consumes" these 501(c)(4) members' time and "perceptibly impairs" its mission. 867 F.3d at 612. Defendant has not credibly refuted this evidence but, even if she had, this would demonstrate another genuine

---

[12] While League President, M. Christian Green, expressed some confusion during her deposition, *see* Green Dep. at 21:20-22, this confusion arose only after Defendant's counsel testified that the League's 501(c)(4) organization was the only plaintiff. *See id.* at 12:07-09. Over objections, Defendant's counsel repeated this assertion throughout the deposition. *See, e.g.*, *id.* at 22:05-07.

issue of material fact making summary judgment inappropriate. Moreover, this Court need not even address the League's standing if it finds that VOTE or PCEJ have standing to sue. *See, e.g.*, *Rumsfeld*, 547 U.S. at 52 n.2. As such, summary judgment is not appropriate here.

### C. Plaintiffs' injuries are traceable to Defendant and redressable by this Court.

#### i. *Plaintiffs' injuries are traceable to Defendant's conduct.*

Plaintiffs' concrete and particularized injuries have a "causal connection" and are "fairly traceable" to Defendant's actions. *Lujan*, 504 U.S. at 560 (1992) (citation modified); *see also Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (citation modified). Plaintiffs' injuries arise from Louisiana's discriminatory and unnecessary requirement that voters with felony convictions present additional paperwork to either register or to have their registration reinstated, and Defendant's enforcement of that requirement.

The NVRA "centralizes 'compliance responsibility' in the Secretary of State and that enforcement of the NVRA by the Secretary of State 'must be ongoing.'" ECF 215 at 77 (quoting *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014)); *see also* 52 U.S.C. § 20509; *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020). Louisiana has made Defendant its "chief election official" and thereby centralized compliance responsibility with her. ECF 215 at 77. And it is Defendant who issues the state's instructions on how the Paperwork Requirement is to be enforced, which she and her predecessors have done since 2019. *See supra* Factual Background § I.D. In fact, Defendant's Felony Procedures—the primary instructions to the registrars for implementing the Paperwork Requirement—have been changed multiple times in just the last few years. *See supra* Factual Background § I.D.

Defendant's argument on causation and traceability, however, is limited to only a portion of Count Three. Br. at 20; *see also* ECF 168 ¶¶ 141-51. Defendant's contention regarding Count 3

40

fails because she cannot avoid her responsibilities under the NVRA by delegating them to parish registrars, as this Court previously held. ECF 215 at 77. Yet that is precisely what Defendant seeks to do, again, by pointing to her written guidance and not addressing Plaintiffs' evidence regarding registrars continuing to request VRC or equivalent paperwork from new registrants. *See supra* Factual Background § I.D. Defendant asserts—without any cited authority—that having issued instructions, any harm from such a violation cannot be attributed to her. But the NVRA demands more. Indeed, "if registrars are requiring some new registrants to produce paperwork showing their eligibility, the NVRA is violated," ECF 215 at 75, and Defendant cannot delegate responsibility for that compliance to the registrars, *id.* at 77 (citing *United States v. Missouri*, 535 F.3d 844, 850 (8th Cir. 2008)); *see also id.* at 91. Moreover, Defendant points only to a section of her instructions involving first-time registrants, she does not attempt to show the same for voters whose registrations should not be suspended by operation of La. R.S. 18:102(1)(a) because they were never under an order of imprisonment. Nor does she address voters whose registrations were suspended due to felony convictions, but who nonetheless must submit new registrations due to, for example, moving into a new parish. The portion of Defendant's instructions on which she relies does not address those voters at all, ECF 258-13 at 2-3, although they are among the voters which Plaintiffs represent and for which they must divert resources. *See supra* Legal Argument § I.A-B. It is Defendant's responsibility to ensure compliance with the NVRA and, for purposes of Count Three, her interpretation of the law falls well short and is causing harm to Plaintiffs.

Defendant does not attempt to make even this thin showing regarding Count Four or Six. Causation for Count Four is much the same as for Count Three—the NVRA requires Defendant to ensure uniformity across the parishes for the registration of individuals who are eligible to vote. 52 U.S.C. § 20507(b)(1). Parishes are applying the Paperwork Requirement in ununiform ways,

41

harming Plaintiffs. *See supra* Factual Background I.C-D. And that lack of uniformity is caused, at least in part, by Defendant's failure to enforce the NVRA. *See Scott*, 771 F.3d at 839.

The causal link between Defendant's actions and Plaintiffs' harms caused by violations of the Equal Protection clause are even stronger. Defendant enforces the requirement of La. R.S. 18:177(A) in any number of ways—including but not limited to her instructions, her operation of ERIN, and the receipt and dissemination of information about eligible and ineligible voters. *See supra* Factual Background § I.D. Plaintiffs have presented evidence that Louisiana has other means by which it can determine whether a voter's registration should be reinstated, such that the Paperwork Requirement is duplicative and unduly burdensome. *See supra* Factual Background § I.D. Far from a situation in which Defendant is "without any power to enforce the complained-of statute," *cf. Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001), Defendant is the "chief election officer" of the state and enforcing this provision in a way which creates two tiers of voters with felony convictions, and harms Plaintiffs for the reasons described.

*ii. This Court can redress Plaintiffs' injuries by enjoining Defendant's conduct.*

Plaintiffs' requested relief would redress their injuries-in-fact. *See Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 197 (5th Cir. 2012) (Plaintiffs must "show that their requested relief would *likely* (or substantially likely) redress their injuries."). Plaintiffs seek declaratory and injunctive relief remedying Louisiana's unlawful and unequal Paperwork Requirement, and Defendant's enforcement of that requirement. ECF 168 at 46-47. This Court could—and should—enjoin enforcement of La. R.S. 18:177. ECF 168 at 46.[13] Enjoining enforcement of the statute would fully redress all Plaintiffs' injuries by eliminating the Paperwork Requirement altogether,

---

[13] This Court is empowered to do so under 42 U.S.C. § 1983 for violations of the Constitution, *see id.*, as well as violations under the NVRA. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 20 (2013) (affirming injunction of state law based on NVRA preemption).

42

as they would no longer be required to divert resources from other priorities to assist voters who need to comply with the Paperwork Requirement.

But this Court can also mitigate Plaintiffs' injuries through the other relief requested. *See* ECF 168 at 46. For example, Plaintiffs requested that this Court "[e]njoin Defendant from requiring documentary proof of eligibility from voter registrants who were previously suspended for a felony but who present valid voter registration forms and do not appear on the DPSC's list of currently disqualified voters," ECF 168 at 46. Additionally, the Court could "[o]rder Defendant to issue statewide guidance that parish registrars may not require documentary proof of eligibility from facially eligible voter registrants that do not appear on the DPSC's [Ineligible List], including currently incarcerated individuals, and to provide sufficient training and supervision to ensure that the guidance is followed." Requiring measures beyond the confusing and inaccurate Felony Procedures would relieve the injury caused by Defendant's failure to fulfill its responsibilities under the NVRA. And it is this Court's role, not that of the Louisiana Legislature, to remedy these ongoing legal violations. *Compare Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("[W]here there is a legal right, there is also a legal remedy.") (quoting Blackstone) *with* Br. at 13-14. Thus, Defendant's concerns are unfounded, as Plaintiffs' requested relief is appropriate and would redress their injuries.

## II. Plaintiffs Can Demonstrate That They Will Prevail At Trial.

Defendant has conflated new and suspended registrations for certain individuals, resulting in new registrants who are required to comply with the Paperwork Requirement, despite Act 127's instructions. Defendant narrows the category of new registrants to "an individual who has never been registered to vote in any parish in Louisiana." Ex. 1, Hadskey Dep. at 131:18-25 (stating this position on February 24, 2023); ECF 258-11 (adding a definition of first-time registration). This

43

narrowed definition allows Defendant to categorize additional applicants as being suspended such that they must comply with the Paperwork Requirement. But Defendant's scheme is neither contemplated nor required by this Court's understanding of La. R.S. 18:177,[14] nor the text of the statute. As this Court acknowledged, "[w]hen the Legislature disenfranchises individuals under orders of imprisonment for felony convictions, and those individuals have already registered to vote, their registrations become suspended, as opposed to canceled." ECF 215 at 3 (citing La. R.S. 18:176). The Legislature thereby distinguished between merely suspended registrations (which do not require re-registration) on the one hand, and cancelled registrations (which do require re-registration) on the other. ECF 215 at 65 (citing La. R.S. 18:176; 18:191). The suspension process under La. R.S. 18:77 exists because "re-registering would create duplicate registrations," ECF 215 at 73. But that process should not apply where new registration is otherwise required, such as when a voter's name, parish, or registered address change. *See supra*, Factual Background Part I.A. Defendant, however, interposed the suspension requirements of La. R.S. 18:177 onto voter registrants who would not otherwise be subject to it, including registrants who never lost the right to vote or who are considered new registrants under the Election Code.

Individuals may be either new registrants—by virtue of never previously registered *or* their previous registration being cancelled due to, for example, a move—or suspended registrants. The state cannot label certain voters as both or in contradictory ways to evade liability under federal law. Defendant, therefore, is violating Sections 6 and 8 of the NVRA because she is required to accept and use the voter registration applications of individuals who are new registrants whether because they never previously registered *or* their prior registrations have been cancelled (rather

---

[14] While Plaintiffs maintain that reinstatement and registration are functionally the same process, Plaintiffs do not make this argument here. Rather, accepting this Court's holding that the Legislature distinguished between suspension and reinstatement versus cancellation and registration, discovery produced evidence that Defendant does not uniformly nor appropriately apply this distinction consistent with what federal law requires.

44

than merely suspended). Section 8 of the NVRA and the Fourteenth Amendment are also violated where Defendant's haphazard implementation of the Paperwork Requirement results in disparate treatment across parishes and between similarly situated individuals, as well as a severe burden on the right to vote—in the case of jail-based voters, total disenfranchisement.

At minimum, Defendant has created material disputes about whether individuals are, in fact, suspended under La. R.S. 18:177; whether the Paperwork Requirement imposes an undue burden on voters who should not be subject to La. R.S. 18:177; and under what circumstances Defendant applies La. R.S. 18:177, among a myriad other factual disputes. Plaintiffs are entitled to proceed to the trial on the merits of their claims.

### A. Plaintiffs will prevail at trial on their NVRA claims (Counts 3 and 4).

*i.   Count 3: Accept and Use*

*a.   Plaintiffs' evidence demonstrates a failure to accept and use voter registration for federal elections.*

The NVRA requires states to "accept and use" the Federal Form as sufficient for registration, 52 U.S.C. § 20505(a), and Section 9 limits the State Form to "requir[ing] only such identifying information . . . and other information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1). Section 8 of the NVRA requires that all elections officials ensure that any eligible voter who timely submits a registration form is registered to vote in an election. 52 U.S.C. § 20507(a)(1).

As this Court acknowledged, "[i]f parish registrars are applying the Paperwork Requirement to new registrants, they are requiring additional paperwork for *registration*, not reinstatement." ECF 215 at 75. Because "states are required to accept and use the federal form, which does not include paperwork establishing that the applicant is no longer under an order of

imprisonment," "[t]he application of the Paperwork Requirement to new registrants directly conflicts with the 'accept and use' provision." ECF 215 at 75 (citing 52 U.S.C. § 20505(a)(1); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013) ("ITCA")). Only if the State has information establishing ineligibility may the voter be required to provide more information than the application requires. *See ITCA*, 570 U.S. at 2. Defendant has violated Section 6 and 8 of the NVRA by requiring the documentary proof of eligibility of people for whom state law dictates that they are new registrants, not suspended voters seeking reinstatement. 52 U.S.C. § 20507(a)(1); 52 U.S.C. § 20508(b)(1); 52 U.S.C. § 20505(a)(1), (2).

As discussed above, there is a genuine dispute of material fact regarding Defendant's treatment of individuals with prior felony convictions who are new registrants and registrants who were never disenfranchised. *See supra*, Factual Background I.A; Appendix. The record includes numerous examples of the uneven treatment of new registrants across parishes, as well as the failure to accept and use the Federal Form or State Form of new registrants during a federal election. Voters with felony convictions who become new registrants by moving parishes are required to fulfill the Paperwork Requirement as part of their registration in the new parish. Ex. 1, Hadskey Dep. at 114:05-09; Appendix. And Defendant admits that even voters who were only sentenced to probation have had to provide the VRC, even if they were a newly-registered voter. Ex. 1, Hadksey Dep. at 312:10-312:14. Defendant admits that first-time voters will be placed in suspended status if they appear on the Felon Report. *E.g.* Br. at 25. This means that facially-eligible first-time voters will be required to provide additional documentation to register to vote in violation of the NVRA.

46

As part of its white paper, "No Surrender, No Retreat," VOTE surveyed the 64 parish registrars to determine their understanding of the Paperwork Requirement in the wake of Act 127.[15] Att. L, Henderson Decl. Of the 48 parishes that responded to the survey, only 23 correctly understood that people who were not sentenced to actual confinement could register to vote. Att. L, Henderson Decl. At least 14 parishes stated that individuals who were never sentenced to actual confinement needed to comply with the Paperwork Requirement. Ex. S-3. The survey also indicated that dozens of parishes require documentation from all people with felony convictions, regardless of their suspension status. Ex. S-3.[16]

Additionally, the record includes examples of parishes that required documentation of both first-time registrants and "suspended" voters: Caddo, Jefferson, Ouachita, Terrebonne, and St. Charles. ECF 257-14. The record also includes examples of voters who were only sentenced to probation but required to provide the paperwork. *Id.* Plaintiffs can show that voter registrants like Nathan Steckel, Joshua Adams and Monique Canada, who have moved, are required to provide the paperwork although they are new registrants at new addresses. *See* Appendix; ECF 259-1; ECF 259-2. VOTE can provide examples of members required to provide paperwork despite being new registrants. *Supra* Factual Background, Part II.A. Moreover, Plaintiffs can show that at least some

---

[15] Defendant spends several pages on hearsay objections to this document, but the white paper falls under several hearsay exceptions. It is a business record, as it was produced in the ordinary course of VOTE's business of providing voter education. *Payne v. Collins*, 986 F. Supp. 1036, 1058 (E.D. Tex. 1997). The white paper also records a present-sense impression, as the underlying data was collected from the registrars' offices directly and recorded contemporaneously. *See* Fed. R. Evid. 803(1); *United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012). Its contents are also statements against interest, made by unavailable nonparty registrars who are speaking about their acting contrary to the Felony Procedures and the Election Code, and so would have been made only if the person believed it to be true. *See United States v. Samaniego*, 345 F.3d 1280, 1283 (11th Cir. 2003).In the alternative, the Court may consider the white paper not for its substance, but to demonstrate that the parties were on notice that the Paperwork Requirement is being applied to those not subject to R.S. 18:177 after Act 127. *See* Ex. 2 ¶ 35, Henderson Decl..; *Mealey v. Gautreaux*, No. 16-716-JWD-RLB, 2020 WL 7043329, at *4 (M.D. La. Dec. 1, 2020).

[16] This includes Ascension, Assumption, Beauregard, Caddo, Calcasieu, Catahoula, Claiborne, Concordia, DeSoto, East Baton Rouge, Jackson, Lafourche, LaSalle, Livingston, Madison, Natchitoches, Orleans, Ouachita, Plaquemines, Rapides, Red River, Sabine, St. Charles, St. Helena, St. John the Baptist, St. Landry, St. Martin, St. Tammany, Tangipahoa, Tensas, Terrebonne, Union, Vermillion, Vernon, Washington, West Baton Rouge, West Feliciana & Winn Parishes. *See id.*

of these individuals were unable to vote in a federal election, despite being eligible. *Supra* Factual Background, Part II.A. The totality of this evidence shows that Defendant has failed to accept and use the Federal Form or State Form for federal elections, violating Sections 6 and 8 of the NVRA.

In the face of this evidence, Defendant seeks to confine this Court's analysis to first-time voter registrants. As before, however, this "misconstrues Plaintiffs' argument" and this Court's Order. ECF 215 at 75; *see also* ECF 168 ¶ 179. This Court has repeatedly stated that La. R.S. 18:176 "suspends—but does not cancel—" only "the registrations of those voters who are deemed ineligible to vote under § 18:102(A)(1)." ECF 215 at 65. But a voter's registration is—or should be—cancelled under certain circumstances "for cause", *see* ECF 215 at 72-73, due to other intervening factors like moving parishes or changing their name, at which point they become new registrants when they seek active registration again. *Supra* Factual Background, Part II.A. Indeed, before this litigation, Defendant's official position was that "[n]o additional documents are required to register to vote for new registrants who may have had prior felony convictions." ECF 258-9 at 1. She did not specify "first-time registrants" until May 2022. Defendant's limitation to first-time voters, then, is an extratextual policy decision, neither contemplated by the Election Code nor this Court's Order. At minimum, a material factual dispute about how Defendant categorizes certain new registrants exists, rendering summary judgment inappropriate.

> b. *Defendant mischaracterizes Plaintiffs' evidence, creating a genuine dispute of material fact.*

Defendant's assertion that various individuals were suspended and therefore "appropriately were required to appear and provide documentation to reinstate their voter registration," Br. at 33, ignores that those individuals' registrations should not have been suspended *in the first place* because they never lost the right to vote. Take Joey Stevenson, whom Defendant admits was registering to vote for the first time when he submitted the Federal Form. Ex. 1, Hadskey Dep. at

48

309:18-20 (referencing now ECF 259-10 at 12). According to Defendant, Mr. Stevenson had to provide the VRC because he was "issued the 21-day challenge notice" with no further reasoning supporting his challenge. Ex. 1, Hadksey Dep. at 312:10-312:14. But the Orleans Parish *erroneously challenged his registration*, despite his probation-only sentence. *See* ECF 259-10 (showing Mr. Stevenson was suspended in 2023 for a federal felony conviction in which he was sentenced to probation only but is still erroneously suspended). Similarly, Defendant states that the applicant Nathan Steckel was "not a first-time registrant as his voter registration was suspended for conviction of a felony." Br. at 30. Nathan Steckel communicated to Defendant that his registration was mistakenly suspended because "I'm not nor have ever been a felon[.]" Ex. 23. Defendant also points to Stephen Hebert, stating he had his "voter registration suspended," Br. at 33, egregiously omitting that his registration was erroneously suspended because he has never been arrested, much less convicted of a felony. Ex. 17 ¶¶ 1, 2, 4-5, 14-18, 22, Hebert Decl. Before his registration was reinstated, Mr. Hebert had to go in person to the Orleans Registrar and was told to go to DPSC, even though he never had a probation officer. *Id.* ¶¶ 9-12. Defendant does admit that "David Lawrence Smith's voter registration was not suspended," as he was never arrested or convicted of a felony. Br. at 33; *see also* Ex. 10 ¶ 5, Smith Decl. Yet she incorrectly maintains that "he was properly issued a 21-day challenge letter due to his name being listed on the Felon Report," despite his having been erroneously mistaken for another David Smith. Br. at 33; Ex. 10 ¶¶ 8-10, Smith Decl. At best, these omissions demonstrate disputed material facts.

Plaintiffs also point to individuals who were first time registrants required to submit additional documentation to register to vote. Again, Defendant waves them away, stating that:

> They were all registered to vote, appeared on the Felon Report, or some other information was received by the registrar of their potential ineligibility, they were sent 21-day challenge letters, and they failed to appear and show cause why their registration should not be suspended.

Br. at 34. Defendant then admits that "[a]nyone being issued a challenge letter is already a registered voter." Br. at 32. Further, Defendant admits that of the probation-only individuals whom Plaintiffs have identified, including VOTE member D.J., "[m]ost of these registrants appeared on the Felon Report or some other report during the time period when individuals under an order of imprisonment for felony conviction were ineligible to register or vote, regardless of whether they were ever actually incarcerated."[17] Br. at 34; *cf.* ECF 70-9; Ex. S-4. Finally, Defendant admits that the Felon Report has a one-month lag, such that individuals who are released from incarceration in between the periods that the Felon Report is updated, they will be subject to the Paperwork Requirement. Ex. 1, Hadskey Dep. at 249:12-249:19. However, Defendant does not—likely because she cannot—explain why individuals who were never disenfranchised must nevertheless comply with the Paperwork Requirement, simply because their conviction predates Act 127's enactment, or their registration was submitted during the lag period.

Defendant does not explain why the onus is on the individual applicant to prove their eligibility, despite federal law's clear instructions to only "deny[] registration based on information in [the registrar's] possession establishing the applicant's ineligibility." *ITCA*, 570 U.S. at 15.[18] Defendant has access to the information which would allow her to know that an individual has not been sentenced to an order of imprisonment. *Supra* Factual Background, Part I.C-D. Yet she does not instruct parish registrars to exhaust their resources before requiring additional information from voters serving probation-only sentences. ECF 258-13. That Defendant's haphazard

---

[17] This also includes William Barry III, whom Defendant admits was not sentenced to actual confinement when his registration was suspended. ECF 258-7 at 7.

[18] As Defendant acknowledges, registrars should "work the list" to examine whether an individual is actually ineligible. Ex. 1, Hadskey Dep. at 47:19-48:11. A registrar, upon a reasonable search of available sources, would have no reason to believe that a probation only voter—or a voter falling within the lag period—is ineligible under La. R.S. 18:102. And La. R.S. 18:176 cannot require mass notice to applicants without further verification, where Section 8 of the NVRA mandates exhaustive search efforts before requiring additional information of the voter registrant.. *ITCS*, 570 U.S. at 2.

implementation results in individuals being improperly suspended cannot justify imposing the Paperwork Requirement on individuals who never lost their voting rights. Moreover, Defendant has created a material dispute of fact regarding whether her policy inappropriately places voters in suspended status for the purpose of requiring additional information from voters who otherwise would not be required to provide it.

In the Court's Order, the Court credited Plaintiffs' allegations—now supported by record evidence—that DPSC sends to Defendant the Ineligible List, and that DPSC is required to provide information to the parish registrars upon request. *See* ECF 215 at 86; *compare with supra* Factual Background, Part I.C-D. At least one parish registrar has admitted that the VRC is redundant, because they have access to all the necessary information. Ex. 24, Deposition of Joanne Reed and Kassidy Peek (East Baton Rouge Registrar of Voters) at 103:02-09 (agreeing there is "no other information that [the ROV] gleans from the VRC that is not otherwise evident from the ineligible list"). As such, Defendant cannot show an absence of evidence justifying her failure to accept and use the voter registration form for federal elections.

In sum, Plaintiffs alleged—and this Court agreed—that ""[t]he application of the Paperwork Requirement to new registrants directly conflicts with the 'accept and use' provision." ECF 215 at 75. Plaintiffs have overwhelmingly demonstrated that whether Defendant accepts and uses the voter registration form of new registrants and registrants who have not been disenfranchised is a fact to be tried. Therefore, Defendant cannot satisfy her burden under Rule 56.

### ii. Count 4: Uniform and Nondiscriminatory

Section 8 of the NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . shall be uniform [and] nondiscriminatory." 52 U.S.C. §

51

20507(b)(1); *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 WL 862406, at *41 (D. Ariz. Feb. 29, 2024); *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) ("A state cannot properly impose burdensome demands in a discriminatory manner" under Section 8(b)). Because Defendant's policy imposes a confusing and unnecessary Paperwork Requirement on certain individuals, the resulting implementation by the parish registrars is nonuniform and discriminatory in violation of Section 8(b) of the NVRA.

Section 8(b) plainly applies to the present circumstances. Defendant describes her policy for people with felony convictions as registering the applicant, then placing the newly registered individual in suspended status, *then* sending a 21-day challenge letter and requiring additional documentation of those individuals based on their felony conviction status. *Supra* Factual Background, Part I.C-D. The Paperwork Requirement, then, is properly understood as a "program[] for 'maintenance' of existing lists." Br. at 38. But unlike a "program that accurately identifies noncitizens who are registered to vote without unnecessarily challenging citizens could meet the requirement of uniformity and nondiscrimination," *United States v. Florida*, 870 F. Supp. 2d at 1351. Defendant's program challenges eligible registrants with felony convictions by requiring additional documentation even though Defendant has the information available to establish eligibility. *Supra* Legal Argument Part II.A.i. Further, as noted above, there is not a uniform understanding of who is required to provide additional documentation because of a felony conviction, nor of whether to cancel or suspend a voter because of a felony conviction. *Id.*

Defendant's reliance on *Mi Familia Vota* is misplaced. In that case, the Ninth Circuit affirmed the district court's trial judgment that Arizona's "reason to believe" provision violated Section 8(b) of the NVRA. 129 F.4th at 714. Much like the Paperwork Requirement, Arizona's reason to believe provision required documentary proof of eligibility of some voter registration

52

applicants but not others, based on information which could otherwise have been easily substantiated without requiring additional information of the voter. *Id.*; *see also Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 996 (D. Ariz. 2024), *judgment entered*, No. CV-22-00509-PHX-SRB, 2024 WL 2244338 (D. Ariz. May 2, 2024). Because the requirement was applied only to a certain category of voter, and not others, just as is the case here, the provision violated the uniformity provision of the NVRA. *Mi Familia Vota*, 129 F.4th at 714.

Moreover, Defendant's attempt to distinguish the Paperwork Requirement from "purge programs" admittedly covered by Section 8(b) are belied by her own representations. Throughout this litigation, Defendant has insisted that "[r]einstatement is a different process than registration," Br. at 16, because "while suspended voters are already registered to vote," Br. at 44. Only for the purpose of addressing Count 4 does Defendant insist that the Paperwork Requirement regards how "the State treats applicants to vote (for registration and reinstatement)," which she claims falls outside of the uniform and nondiscrimination mandate of Section 8(b). Br. at 44. Defendant's about-face serves to demonstrate the material fact dispute about the nature of the Paperwork Requirement; namely, whether it is a "State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office." 52 U.S.C. § 20507(b).

Finally, Defendant makes no argument as to her responsibility to ensure uniformity and nondiscrimination. But Plaintiffs can demonstrate that Defendant has fallen far short of her duty to ensure that voter registration for federal elections is "centralized rather than fragmented." *Scott*, 771 F.3d at 839. Therefore, "Defendant has effectively violated Section 8 of the NVRA—namely, by tolerating, if not facilitating, disuniformity." ECF 215 at 76.

53

### B.  Plaintiffs will prevail at trial on their constitutional claims (Count 6).

> i.    *The Paperwork Requirement is unconstitutional.*

A state may grant the fundamental right to vote to individuals with felony convictions, as Louisiana has. Once the state does so, "the Equal Protection Clause confers the substantive right to participate on an equal basis with other qualified voters whenever the State has adopted an electoral process for determining who will represent any segment of the State's population." *Young v. Hosemann*, 598 F.3d 184, 189 (5th Cir. 2010) (citation modified). Indeed, "[e]ven a statutory benefit can run afoul of the Equal Protection Clause . . . if it confers rights in a discriminatory manner or distinguishes between groups in a manner that is not rationally related to a legitimate state interest." *Wilkins v. Cnty. of Alameda*, 571 F. App'x 621, 623 (9th Cir. 2014).

The burdens imposed by La. R.S. 18:177, and Defendant's interpretation of the same, are an unconstitutional burden on the right to vote which fails under any level of scrutiny. In *Bush v. Gore*, the Supreme Court noted that where a state policy "accord[s] arbitrary and disparate treatment to voters in its different [parishes]," that policy is subject to heightened scrutiny. 531 U.S. 98, 107 (2000). This includes evidence that registrars do not know who the Paperwork Requirement applies to, such that applicants are treated differently based on parish of residence. *Supra* Factual Background Part I.C.

Heightened scrutiny is also triggered under the *Anderson/Burdick* framework, since the evidence demonstrates a severe burden on the right to vote. As this Court noted, under that framework, the level of scrutiny that applies depends on the severity of the burden. ECF 155 at 80-81 (citing *Harding v. Edwards*, 487 F. Supp. 3d 498, 506 (M.D. La. 2020)); ECF 215 at 85-86. Specifically, "[t]he Anderson/Burdick rubric requires us to examine . . . (1) whether the process poses a 'severe' or instead a 'reasonable, nondiscriminatory' restriction on the right to vote and (2)

54

whether the state's interest justifies the restriction." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 235 (5th Cir. 2020); ECF 155 at 80-81. If the burden on the right to vote is "subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation modified). Plaintiffs' expert has identified thousands of voters who are currently eligible to vote but who have not made it to the active voter rolls. Ex. 22 ¶, Burch Decl; Att. A, Burch Decl. at 13-21. The multiple trips between offices necessitated by the in-person appearance requirement, and the conflicting information often received during those duplicative trips, is burdensome and caused some individuals to miss federal elections. *Supra* Factual Background, Part I.C. Plaintiffs experience the costs firsthand: the additional time and money spent to educate voters subject to the requirement and the additional time away from work to taxi individuals between offices to make their in person appearances, are just a few of the burdens imposed on Plaintiffs and individual applicants alike. *See* Ex. 2 ¶ 26, Henderson Decl.; Ex. 4, ¶¶ 2-28, Amos Decl.; Ex. 5 ¶¶ 6-11, Green Decl.; Ex. 12 ¶¶ 5-13, Markle; Ex. 8 ¶¶ 10-11, 16-17, 20, 24-25, Shelton Decl.; Ex. 11 ¶¶ 19-25, Anderson Decl.; *cf. Veasey v. Abbott*, 830 F.3d 216, 255 (5th Cir. 2016) (noting that similar burdens were severe); *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) (same); *League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1223-24 (N.D. Fla. 2018) (same).

These severe burdens are unjustified by any governmental interest, which here must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (internal quotations omitted). Defendant has only noted a single governmental interest—avoiding duplicate registrations by verifying the identity of the voter—an argument which suffers from several flaws. To the extent the Paperwork Requirement is meant to "reduce[] the opportunities for voter fraud" at reinstatement, Defendant has failed to articulate why she needs to identify someone

whose identity was already proven when they first registered. And La. R.S. 18:101 already outlines how new registrants are to identify themselves, with La. R.S. 18:103 specifically exempting new registrants previously registered and voted in another parish from needing to do so again. Defendant fails to articulate why La. R.S. 18:177 needs to impose a redundant requirement on those voters. Further, while the Paperwork Requirement allows voter registrants to provide documentation other than the VRC as long as it is "signed by a corrections official or other appropriate government official and establishes that the individual" is eligible to vote, Defendant does not outline any specific identifying information that is needed in that alternative documentation. *See* ECF 258-13 at 4. Defendant makes no showing how such an open-ended directive is related, let alone necessary, to avoid duplicative registrations. Defendant's justification, then, is not much more than a vague, arbitrary assertion with no parameters, not even meeting a rational basis. Since there is no rational basis for the Paperwork Requirement, the policy fails under any other level of scrutiny. At a minimum, there is a genuine dispute of fact regarding whether identification of the applicant is a sufficient justification for the requirement.

Finally, Defendant fails entirely to address the Paperwork Requirement's total bar on voter registration for eligible, incarcerated individuals. Such total disenfranchisement of eligible individuals is an unconstitutional burden. *U.S. by Katzenbach v. Original Knights of Ku Klux Klan*, 250 F. Supp. 330, 355 (E.D. La. 1965); *United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967) ("The right to vote encompasses the right to register" because "[r]egistration is 'a critical, inseparable part of the electoral process.'"). And "[i]ndividuals who are otherwise entitled to vote do not lose that right because they are subject to pretrial detention." *Montgomery v. Whidbee*, No. 3:19-CV-00747, 2021 WL 780730, at *3 (M.D. Tenn. Mar. 1, 2021), *report and recommendation adopted*, No. 3:19-CV-00747, 2021 WL 1037860 (M.D. Tenn. Mar. 18, 2021), *aff'd and remanded*,

56

No. 21-5327, 2022 WL 1008284 (6th Cir. Mar. 16, 2022); *O'Brien v. Skinner*, 414 U.S. 524, 530-31 (1974) ("[U]nder no legal disability impeding their legal right to register or to vote; they are simply . . . denied any alternative means of casting their vote although they are legally qualified to vote" the statute impeding their ability to register to vote violates equal protection.). *See also* Lee Hargrave, *The Declaration of Rights of the Louisiana Constitution of 1974*, 35 La. L. Rev. 1, 31-32 (1974) (noting that under the 1974 amendments to the Louisiana Constitution, the "right is not suspended as to persons awaiting trial or imprisoned for a misdemeanor; hence, these people have the right to vote"). No court has ever held that re-enfranchisement can be conditioned on pretrial incarceration. *Accord Wilkins*, 571 F. App'x at 623 (regarding the right to re-enfranchisement in prison); *Diez v. Schneider,* No. 2:24-CV-00295, 2025 WL 4686235 (S.D. Tex. Sep. 24, 2025) (same). To the extent that Defendant claims that she may legally disenfranchise jail-based voter registrants based on their suspended status, she is mistaken for all the reasons set forth above. There is no rational basis for excluding an entire population of applicants based on their pretrial incarceration status.

Defendant does not dispute that an individual cannot seek reinstatement in jail. Ex. 1, Hadskey Dep. at 314:19-314:22. Nor can a new registrant in jail obtain the VRC if his registration is challenged. *Supra* Factual Background, Part I.B. Under no circumstance can an incarcerated individual provide the VRC from the Department of Corrections in person to their registrar. *Id*. These individuals have the right to vote, and are unable to due to the Paperwork Requirement. *Id*. Plaintiffs' evidence shows that Defendant systematically denies registration to all individuals when she determines that they need to provide the VRC. *Supra* Legal Argument, Part I.A.i. Defendant's failure to address the total bar on voting for incarcerated individuals alone shows that Defendant

has not met her burden of showing she is entitled to summary judgment on Plaintiffs' constitutional claims.

### ii. People with felony convictions have constitutional rights.

Defendant's bald claim that "[f]elons do not have a fundamental right to vote" is simply incorrect. Plaintiffs do not dispute that Louisiana may disenfranchise its citizens because of conviction of a felony. Their equal protection injury, however, rests on whether different categories of individuals, all of whom are eligible to vote under Louisiana law, may be then treated differently. The Fourteenth Amendment does not permit that type of discriminatory treatment.

Defendant's reliance on *Richardson* and *Hopkins* underscores her misunderstanding of the relevant issues. In *Richardson v. Ramirez,* the Supreme Court held that the California Constitution, which denied the franchise to individuals with felony convictions until the completion of probation or parole, did not violate the Equal Protection Clause.[19] *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974). In *Hopkins,* similarly, the Fifth Circuit held that the Mississippi Constitution may legally disenfranchise individuals convicted of certain felonies. *Hopkins v. Watson*, 108 F.4th 371, 382 (5th Cir. 2024). Neither case permitted the establishment of the two-tier type categorization of eligible voters that Defendant envisions. While states are allowed to disenfranchise individuals, they must do so consistent with the Constitution. Indeed, *Richardson* explicitly distinguished between the state's power to "exclude from the franchise convicted felons who have completed their sentences and paroles" and the "total lack of uniformity in county election officials'

---

[19] Even that legislative power has limitations under *Richardson*. Racial animus may not motivate a state's decision to disenfranchise people with felony convictions. *Hunter v. Underwood*, 471 U.S. 222, 233 (1985). Additionally, states may be bound from disenfranchising people with felony convictions by other provisions of federal law, such as readmission acts. *King v. O'Bannon*, 817 F. Supp. 3d 354, 383 (E.D. Va. 2026). *Hopkins* also left open the question of whether states may disenfranchise individuals with felony convictions consistent with the Eighth Amendment. *Hopkins*, 108 F.4th at 389 (holding that a challenger would need to show "the clearest proof" of "a punitive or otherwise excessive purpose" to subject a felony disenfranchisement scheme to Eighth Amendment scrutiny).

enforcement of the challenged state laws as to work a separate denial of equal protection," which it expressly declined to address. *Richardson*, 418 U.S. at 56 (1974).

Defendant's other citations similarly miss the mark. As Defendant notes, *Diez*,[20] *Wilkins*, and *Valenti* all regard the state's right to establish voting criteria under which individuals with felony convictions may vote under *Richardson*, not the method by which eligibility is determined. *See* Br. at 42-43; *cf. Diez v. Schneider*, No. 2:24-CV-00295, 2025 WL 4686235, at *6 (S.D. Tex. Sep. 24, 2025), *report and recommendation adopted*, No. 2:24-CV-00295, 2026 WL 850698 (S.D. Tex. Mar. 27, 2026) (challenging the criterion for a person to be a "qualified voter"); *Wilkins v. Cnty. of Alameda*, 571 F. App'x 621, 623 (9th Cir. 2014) (same); *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (same). The Louisiana Constitution "gives the Legislature the discretionary power to temporarily disenfranchise individuals who are "under an order of imprisonment for a conviction of a felony." ECF 215 at 64 (citing La. Const. art. I, § 10(A)). Louisiana "exercised this discretionary power through La. R.S. § 18:102(A)," *not* R.S. 18:177. ECF 215 at 64. Rather, "La. R.S. § 18:177(A)(1) is an illustration of Louisiana acting pursuant [to] its long-recognized power to *determine the voting eligibility* of those with felony convictions[.]" ECF 215 at 74 (emphasis added). Plaintiffs do not challenge Louisiana's eligibility criterion under R.S. 18:102, but the constitutionality of a procedural requirement, R.S. 18:177, imposed on certain eligible voters to be able to vote. *See also* ECF 168 ¶¶ 167-79. And "subjecting thousands to a cat-and-mouse document chase" under R.S. 18:177 "is a severe burden on one's right to vote." ECF 215 at 86.

---

[20] *Diez* and *Wilkins* are also distinguishable because Diez and Wilkins were pro se litigants incarcerated in a *prison*, not a jail. *Diez v. Schneider*, No. 2:24-CV-00295, 2025 WL 4686235, at *1 (S.D. Tex. Sep. 24, 2025), *report and recommendation adopted,* No. 2:24-CV-00295, 2026 WL 850698 (S.D. Tex. Mar. 27, 2026); *Wilkins v. Cnty. of Alameda*, 571 F. App'x 621, 621 (9th Cir. 2014). Because Louisiana does not enfranchise voters in prison, and does enfranchise voters in jail, this distinction is critical to understanding Plaintiffs' equal protection injuries.

Moreover, Defendant's theory falls apart in the face of the burdens placed on individuals who have not lost the right to vote. As Plaintiffs demonstrate, *supra* Factual Background Part I.C., the Paperwork Requirement can burden *all* individuals with felony convictions, including those who are not required to seek reinstatement under La. R.S. 18:177—the disparate treatment based on parish of residence means that new registrants and suspended registrants alike could face the Paperwork Requirement. Regardless of whether Louisiana may constitutionally disenfranchise people with felony convictions, it has already made the decision that people who were not sentenced to actual confinement never lost the right to vote, and that new registrants need not seek reinstatement. R.S. 18:102, 176-177. And neither *Richardson*, nor the Constitution, nor the Louisiana Constitution endorse the imposition of severe burdens on individuals who were never convicted of a felony. As such, Plaintiffs can demonstrate at trial that La. R.S. 18:177, and Defendant's application of the same through the Paperwork Requirement, is unconstitutional.

\*    \*    \*

At every turn, Defendant has underscored myriad facts to be tried. There are an untold number of facts in dispute, all pointing to evidence that Defendant's implementation of La. R.S. 18:177, is a scheme that confuses voters and election officials, that impairs voter registration, and that results in the disparate application of the Election Code depending on parish of residence. Plaintiffs can demonstrate at trial that there is a systematic denial of voter registration in violation of the National Voter Registration Act and the Constitution.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied. Respectfully submitted this 24th day of July, 2026.

*/s/ Valencia Richardson*
Valencia Richardson (LSBA #39312)

60

Alice Huling*
Blair Bowie*
Daniel S. Lenz*
Kate Uyeda*
Ellen Boettcher*
Reginald Thedford, Jr.*
Campaign Legal Center
1101 14th St. NW Suite 400
Washington, DC 20005
(202) 736-2200
vrichardson@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
bbowie@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
kuyeda@campaignlegalcenter.org
eboettcher@campaignlegalcenter.org
rthedford@campaignlegalcenter.org

*admitted pro hac vice

William P. Quigley (LSBA #07769)
Loyola University Law New Orleans
College of Law
7214 St. Charles Ave. Campus Box 902
New Orleans, LA 70118
Quigley77@gmail.com

61

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, July 24, 2026, I electronically filed the foregoing Motion with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record who are registered with the Court's CM/ECF system.

/s/ Valencia Richardson
Valencia Richardson
*Counsel for Plaintiffs*

62

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| VOICE of the EXPERIENCED, *on behalf of itself and its members*; POWER COALITION for EQUITY and JUSTICE, *on behalf of itself and its members*; *and* LEAGUE of WOMEN VOTERS of LOUISIANA, *on behalf of itself and its members*;<br><br>　　　　　　　Plaintiffs,<br>　　v.<br><br>NANCY LANDRY, *in her official capacity as Secretary of State of Louisiana*,<br><br>　　　　　　　Defendant. | Civil No. 3:23-cv-00331-JWD-SDJ |

**APPENDIX OF INDIVIDUALS REQUIRED TO PROVIDE ADDITIONAL
DOCUMENTATION FOR VOTER REGISTRATION OR REINSTATEMENT**

| **Scenario** | **Affected Individual and Supporting Documentation** | **Relevant Statute** |
|---|---|---|
| An individual was previously registered to vote in Louisiana, and does not appear to have moved from parish of residence, or otherwise have changes requiring new registration. | • Reginald Patterson: ECF 259-05<br>• K.H.: ECF 260-7 | • R.S. 18:102<br>• R.S. 18:176<br>• R.S. 18:177 |
| An individual's registration is currently suspended and will become eligible after the date of this Opposition. | • C.C. *See* Ex. 2 ¶ 21, Henderson Decl.[21] | • R.S. 18:102<br>• R.S. 18:176<br>• R.S. 18:177 |
| An individual has previously registered to vote was previously convicted of a felony, and is now eligible to vote (i.e. is no longer under an order of imprisonment or has not been incarcerated pursuant | • Darryl Jupiter: Ex. 18<br>• Zantheus Quiett: Ex. 19<br>• Caddo Correctional Center voters: Att. K, Henderson Decl. | • R.S. 18:102<br>• R.S. 18:176<br>• R.S. 18:177 |

---

[21] Identity at Ex. S-2.

63

| | | |
|---|---|---|
| to the order in five years), but is incarcerated in a parish jail on a misdemeanor or awaiting trial ("suspended registrant") | • Orleans Justice Center voters: Att. G, Henderson Decl.<br>• Kentrell Finister: Ex. 21; Att. G, Henderson Decl.<br>• Kerry Shelby: Ex. 25 | |
| An individual has never registered to vote before in the State of Louisiana and was previously convicted of a felony, and is now eligible to vote (i.e. is no longer under an order of imprisonment or has not been incarcerated pursuant to the order in five years) ("first-time registrant"). | • Charles Amos: Ex. 4, Amos Decl.; ECF 260-2.<br>• Lawrence Pittman: Ex. 16, Pittman Decl.; ECF. 260-4<br>• C.Y., ECF 70-11[22]<br>• M.S., ECF 70-13[23]<br>• C.J., ECF 260-3 | • R.S. 18:102 |
| An individual has never registered to vote before in the parish where they reside and was previously convicted of a felony, and is now eligible to vote (i.e. is no longer under an order of imprisonment or has not been incarcerated pursuant to the order in five years) ("new registrant"). | • Joshua Adams, ECF 259-9<br>• Monique Canada: ECF 259-3; ECF 259-4<br>• George Wetherbee: ECF 259-20; ECF 259-21<br>• James Washington: ECF 259-23; ECF 259-24 | • R.S. 18:102<br>• R.S. 18:111 |
| An individual was convicted of a felony but not sentenced to actual confinement (sometimes known as "probation only"). | • Sheila Jackson, ECF 259-8;<br>• Joshua Adams, ECF 259-9;<br>• Monique Canada: ECF 259-3; ECF 259-4<br>• William Barry III, ECF 259-11; ECF 257-14<br>• George Wetherbee: ECF 259-20; ECF 259-22<br>• Joey Justin Stevenson, ECF 259-10; ECF 257-14; Hadskey Dep. at 309:05-311:23.<br>• Joshua Lee Jones: ECF 259-12; ECF 257-14; | • R.S. 18:102 |

---

[22] Identity at Ex. S-2. *See also* Ex. S-4. Note: registered to vote before the passage of Act 127.
[23] Identity at Ex. S-2. *See also* Ex. S-4. Note: registered to vote before the passage of Act 127.

64

| | | |
|---|---|---|
| | • Elijah Powell: ECF 259-14<br>• D.J.: ECF 260-5<br>• Reshard Robinson: ECF 259-15<br>• Rosanne Hayles Robinson: ECF 259-16<br>• Barbara Ponthieux: ECF 259-17<br>• Charles Babin: ECF 259-18<br>• Bridget B. Weaver: ECF 259-19 | |
| An individual has previously registered to vote, and was convicted of a felony but not sentenced to actual confinement (often referred to as "probation only"). | • Lorena Lachelle Jones : ECF 259-13; ECF 257-14; Ex. 4 ¶ 11, Amos Decl. | • R.S. 18:102 |
| An individual has previously registered to vote before was previously convicted of a felony, and is now eligible to vote (i.e. is no longer under an order of imprisonment or has not been incarcerated pursuant to the order in five years), but needs to update their address, name, or contact information. ("new registrant") | • Gregory Finney: ECF 21-5; ECF 70-12<br>• Sheila Jackson, ECF 259-8; ECF 257-14<br>• A.D.: ECF 70-6[24]; ECF 260-6 | • R.S. 18:102<br>• R.S. 18:107<br>• R.S. 18:108 |
| An individual's registration was cancelled for being an inactive voter under the NVRA, and became a first time voter by submitting an new registration. ("first time" or "new registrant") | • Joey Justin Stevenson, ECF 259-10; ECF 257-14; Hadskey Dep. at 309:05-311:23. | • R.S. 18:102<br>• R.S. 18:191.1<br>• R.S. 18:193<br>• R.S. 18:198 |
| An individual who was never convicted of a felony. | • Stephen Hebert: Ex. 17, Hebert Decl.; ECF 259-7<br>• David Smith: Ex. 10, Smith Decl.; ECF 259-6<br>• Nathan Steckel: Ex. 23; ECF 259-1; ECF 259-2 | • R.S. 18:102 |

[24] Identity at Ex. S-2. *See also* Ex. S-4. Note: registered to vote before the passage of Act 127.

65

| An individual who is a new registrant and will become eligible after the date of this Opposition | • J.B.: Ex. 2 ¶ 22, Henderson Decl.[25] | • R.S. 18:102 |
|---|---|---|

---

[25] Identity at Ex. S-2 Plaintiffs' Confidential Supplemental Initial Disclosures.