**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| VOICE of the EXPERIENCED, *on behalf of itself and its members*; POWER COALITION for EQUITY and JUSTICE, *on behalf of itself and its members*; *and* LEAGUE of WOMEN VOTERS of LOUISIANA, *on behalf of itself and its members*;<br><br>        Plaintiffs,<br><br>    v.<br><br>NANCY LANDRY, *in her official capacity as Secretary of State of Louisiana*,<br><br>        Defendant. | Civil No. 3:23-cv-00331-JWD-SDJ |

**PLAINTIFFS' OPPOSING STATEMENT OF MATERIAL FACTS**

**TABLE OF CONTENTS**

RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS ..................................3

PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS ......................................30

    I.      Background ...............................................................................................................30

    II.     Parties.......................................................................................................................34

    III.    Plaintiffs' NVRA Notice Efforts ..............................................................................49

    IV.   Louisiana's Registration Provisions and Procedures ...............................................50

Pursuant to Rule 56(c) of the Local Rules and in conjunction with their Opposition to Defendant's Motion for Summary Judgment, Plaintiffs submit the following Opposing Statement of Material Facts:

## RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

1.  "Louisiana's Constitution grants the Legislature the power to disenfranchise those under orders of imprisonment for felony convictions. La. Const. art. I, § 10(A)." Doc. 215, pg 3-4.

**Response**: Qualified. Defendant accurately quotes this Court's Ruling and Order on Defendant's Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint at the cited page, but Defendant improperly cites to a legal opinion rather than a record citation as required by Local Rules 56(a) and 56(f).

2.  "When the Legislature disenfranchises individuals under orders of imprisonment for felony convictions, and those individuals have already registered to vote, their registrations become suspended," as opposed to canceled. *See* La. R.S. § 18:176." Doc. 215, pg 3-4.

**Response**: Qualified. Defendant accurately quotes this Court's Ruling and Order on Defendant's Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint at the cited page, but Defendant improperly cites to a legal opinion rather than a record citation as required by Local Rules 56(a) and 56(f). The ERIN database used by Defendant and the Registrars of Voters ("ROVs") to maintain the voter file categorizes nominally suspended voters as "cancelled" because there is no option to "suspend" someone in that database, Ex. 1, Deposition of Sherri Hadskey (Department of State) at 302:10-15, and some ROVs use the term "cancelled" when referring to suspended voters. *See* Ex. 24, Deposition of Joanne Reed and Kassidy Peek (East Baton Rouge Registrar of Voters) at 50:20-51:01 (describing individuals with felony convictions as "canceled" in ERIN); *see* Ex. 20, Deposition of Dale Sibley (Caddo) at 58:14-24.

1

3. "To reinstate their suspended registrations, such individuals must meet the criteria and follow the procedures set forth in § 18:177(A)(1)." Doc. 215, pg 3-4.

**Response**: Qualified. Defendant accurately quotes this Court's Ruling and Order on Defendant's Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint at the cited page, but Defendant improperly cites to a legal opinion rather than a record citation as required by Local Rules 56(a) and 56(f). Further, Defendant frequently inaccurately suspends the registrations of individuals who should not be subject to La. R.S. 18:177. *E.g.*, ECF 259-6; 259-7.

4. As of February 1, 2022, first-time registrants with past felony convictions are not required to provide documentation of eligibility in order to register to vote. Ex. D, Act 127 of 2021.

**Response:** Denied. While Act 127, effective February 1, 2022, legally removed the documentation requirement for first-time registrants with past felony convictions, discovery demonstrated the regularity with which first-time registrants are improperly required to provide the paperwork, including that some ROVs still sometimes require it for first-time registrants. Att. L, Ex. 2, Declaration of Norris Henderson (VOTE); Ex. 26, Deposition of Dennis A. DiMarco (Jefferson Registrar of Voters) at 81:09-82:11; Ex. 6, Deposition of Marcel Wall (St. Tammany Registrar of Voters) at 54:03-09.

5. La. R.S. 18:177, which provides relative to reinstatement of a suspended voter registration, was enacted in 1997 to require documentation of eligibility to reinstate a voter registration suspended for a felony conviction. Exhibit A- Act 1420 of 1997. It was amended in 1999 to include the requirement to appear in the office of the registrar. Exhibit B - Act 1381 of 1999.

**Response:** Qualified. In 1997, Louisiana passed La. R.S. 18:177, initially requiring "a person whose registration has been suspended by the registrar of voters pursuant to R.S. 18:176 for conviction of a felony" to provide their registrar, in person, with "documentation from the

appropriate correction official showing that [they were] no longer under an order of imprisonment." ECF 256-5 at 11. This is colloquially known as the Paperwork Requirement. *See* Ex. 2 ¶ 11, Henderson Decl. The Paperwork Requirement was amended in 1999, 1999 La. Sess. Law Act 1381 (S.B. 854), and 2012, 2012 La. Sess. Law Act 138 (H.B. 852), to exempt people with disabilities from complying with the in-person requirement.

6.  Prior to March 1, 2019, no person under an order of imprisonment for conviction of a felony was permitted to register, vote, or reinstate a suspended voter registration until completion of his entire sentence of incarceration, including probation and parole. Ex. C, Act 636 of 2021.

**Response:** Admitted.

7.  Act 636 of the 2018 Legislative Session, effective March 1, 2019, amended La. R.S. 18:102(A) and La. R.S. 18:177(A)(1) to substantially reduce the time a felon was ineligible to register or vote. Act 636 permitted an individual under an order of imprisonment for conviction of a felony, who had not been incarcerated pursuant to the order within the last five years, to register to vote or to be reinstated if he submitted documentation to the registrar of voters from the appropriate correction official showing that he has not been incarcerated pursuant to the order within the last five years.  Ex. C, Act 636 of 2021.

**Response:** Qualified. Act 636 allowed those who were still under parole to vote if they had not been actually incarcerated pursuant to the order in the last five years. ECF 256-7. However, this change only applied to those individuals who were on parole for more than five years after incarceration, but had no effect for many individuals with felony convictions. La. R.S. 18:102. For example, after Act 636, the State of Louisiana still took the position that people who were convicted of a felony but not sentenced to actual confinement were not permitted to register until the completion of their sentence. *See* Ex. 1, Hadskey Dep. at 195:01-10.

8. Act 127 of the 2021 Legislative Session, effective February 1, 2022, removed the requirement that felons seeking to register for the first time submit documentation showing that they had not been incarcerated pursuant to the felony order of confinement within the last five years; and required the Department Public Safety and Corrections (DOC) to report quarterly to the Secretary of State (SOS) the names of suspended felons ineligible to vote. Ex. D, Act 127 of 2021.

**Response:** Qualified. Act 127, ECF 256-8, removes the Paperwork Requirement from La. R.S. 18:102, and went into effect February 1, 2022. ECF 256-8 § 2. Denied to the extent that Defendant asserts that her characterization of Act 127 encompasses the entirety of what Act 127 did. ECF 256-8. Moreover, first-time registrants are still required to provide additional documentation in many circumstances. *E.g.*, Ex. 16 ¶¶ 7, 15, Declaration of Lawrence Pittman.

9. La. R.S. 18:177(A) was not amended by Act 127. Ex. D, Act 127 of 2021.

**Response**: Admitted.

10. The voter registration process in Louisiana is contained within La. R.S. 18:101.1. Upon verification that the registration information provided by the applicant (i.e. Louisiana driver's license number, Louisiana special identification card number, or the last four digits of the social security number) matches the information maintained by the Louisiana Department of Public Safety and Corrections or the Social Security Administration, the applicant will be added to the official list of voters and the registrar will send a notice of registration to the applicant. Ex. E, Declaration of Sherri Hadskey, ¶ 12.

**Response:** Qualified. A portion of Louisiana's voter registration process is contained in La. R.S. 18:101.1, and that operates as described by Defendant. However, other relevant processes exist elsewhere in La. R.S. 18:101.1 and the Election Code. *See* R.S. 18:101 *et seq.* Not all first-time registrants or probation-only registrants individuals with felony convictions have their

registrations processed in this way, as some are improperly required to provide documentation of their eligibility. *See,* e.g., ECF 259-8; ECF 259-9; ECF 259-4; ECF 259-4; ECF 259-11; ECF 257-14; ECF 259-21; ECF 259-22; ECF 259-10; ECF 257-14; Ex. 1, Hadskey Dep. at 309:5-311:23.

11. Voter registration is permanent in Louisiana. La. R.S. 18:191.

**Response:** Denied. Pursuant to the Louisiana Election Code, voter registration is only permanent "so long as the registration is not canceled for a cause and in the manner set forth in this Chapter." La. R.S. 18:191; ECF 215 at 73.

12. A person cannot register or vote in more than one place of residence at any one time. La. R.S. 18:101(B).

**Response:** Admitted.

13. The process of suspending the voter registration of a person convicted of a felony is contained within La. R.S. 18:176.

**Response:** Qualified. While La. R.S. 18:176 provides some instruction on the suspension process, it does not reflect the entire process, as further guidance is provided by the Secretary of State's office to the ROVs in written procedures, trainings, and other communications. *E.g.*, ECF 258-13. Moreover, other provisions of the Election Code inform the suspension process. *E.g.*, La. R.S. 18:171.

14. DOC provides the Department of State (SOS) with a report containing the information of individuals who are under an order of imprisonment for conviction of a felony and who have been incarcerated pursuant to the order within the last five years or who are under an order of imprisonment for conviction of a felony offense of election fraud or any other election offense pursuant to R.S. 18:1461.2. La R.S. 18:171(C)(1). Ex. E, Declaration of Sherri Hadskey, ¶ 13a.

**Response:** Admitted.

5

15. The report from DOC is commonly referred to as "The Ineligible List" and is provided by DOC to the Department of State once monthly. Ex. E, Declaration of Sherri Hadskey, ¶ 13a; Ex. L, Deposition of SOS, 43:12-44:7.

**Response:** Admitted.

16. Upon receipt from DOC, this information is provided to the registrars by the Department of State in what is referred to as the "Felon Report." La. R.S. 18:171(C)(4). Ex. E, Declaration of Sherri Hadskey, ¶ 13a; Ex. L, Deposition of SOS, 20:16-21:20.

**Response:** Qualified. Admitted to the extent that "this information" refers to the Ineligible List.

17. The Felon Report is a monthly report received by the registrars from ERIN, (Election and Registration Information Network), of individuals registered to vote in that parish who have been identified on The Ineligible List. Ex. E, Declaration of Sherri Hadskey, ¶ 13b.

**Response:** Admitted.

18. The Department of State receives from the United States Attorney information of individuals who are under order of imprisonment for felony conviction and are incarcerated pursuant to the order. Upon receipt, the Department of State provides this information to the registrars. La. R.S. 18:171.1(A)(1). Ex. E, Declaration of Sherri Hadskey, ¶ 13c; Ex. L, Deposition of SOS, 20:16-21:20.

**Response:** Qualified. Admitted that the Department of State receives the referenced information from the United States Attorney. Qualified as to "upon receipt," which implies that the Secretary of State provides this information to the registrars immediately upon receipt. That statement is not supported by the cited source. ECF 258-13 at 6.

19. Upon receipt of the Felon Report, a report of felony conviction from the United States Attorney, or other information causing the registrar to have a reason to believe a registrant is ineligible to vote, the registrar must take the following steps:

    a.    If the registrar determines that a name on the report matches a registered voter in his parish, he must challenge the voter by sending a letter to the voter which is referred to as a "21-day Challenge Letter," letting him know of the felony information received and giving him the opportunity to show why his registration should not be suspended.

    b.    If the individual does not appear in person in the registrar's office within twenty-one days to show proof as to why his voter registration should not be suspended, the voter's registration will be suspended.

    c.    If the registrant appears and shows cause within twenty-one days, his registration shall not be suspended.

Ex. E, Declaration of Sherri Hadskey, ¶ 13d.

**Response:** Denied. While this reflects the cited declaration, the cited source does not support the suggestion that this procedure occurs uniformly among the parishes. Further, this procedure is not contemplated by state or federal law and is a legal opinion to which a response is not required under Local Rules 56(a) and 56(f). Denied to the extent that this statement suggests that new registrants or "probation-only" residents are being appropriately required to provide documentation of their eligibility. *E.g.*, ECF 259-8; ECF 259-9; ECF 259-4; ECF 259-4; ECF 259-11; ECF 257-14; ECF 259-21; ECF 259-22; ECF 259-10; ECF 257-14; Ex. 1, Hadskey Dep. at 309:05-311:23.

20. When a voter's registration to vote is suspended in ERIN due to felony conviction, the voter's status will show as "cancelled." This does not mean the voter registration is cancelled; it means the registration is suspended until it is reinstated through the process outlined in La. R.S. 18:177. Ex. E, Declaration of Sherri Hadskey, ¶ 14.

7

**Response:** Denied. When a voter's registration is nominally suspended due to a felony conviction, it is recorded as "cancelled" in ERIN. While Defendant states that this does not mean that a voter's registration is cancelled, a voter who moves to another parish will necessarily have their registration cancelled in their old parish. *See* Ex. 1, Hadskey Dep. at 122:19-25; La. R.S. 18:108.

21. If a voter's registration is suspended for conviction of a felony, the voter shall be reinstated by appearing in person at the office of the registrar with documentation from the appropriate corrections official showing that he is either no longer under an order of imprisonment, or if he is still under such an order, that he has not been incarcerated pursuant to that order within the last five years and he is not under an order of imprisonment for felony conviction of election fraud or any other election offense pursuant to La. R.S. 18:1461.2. La. R.S. 18:177(A)(1). Ex. E, Declaration of Sherri Hadskey, ¶ 13e.

**Response:** Qualified. Admitted that La. R.S. 177(A) has an in-person appearance requirement for providing the appropriate documentation proving eligibility in the event of a suspension under La. R.S. 18:176. Unfortunately, these same requirements are applied to voter registration applicants who were not appropriately suspended under La. R.S 18:176. *See infra*, Statement of Additional Facts ¶¶ 239-241; *e.g.*, ECF 259-8; ECF 259-9; ECF 259-4; ECF 259-4; ECF 259-11; ECF 257-14; ECF 259-21; ECF 259-22; ECF 259-10; ECF 257-14; Ex. 1, Hadskey Dep. at 309:05-311:23.

22. The Department of State provides direction and assistance to registrars in the administration of the Election Code relating to felon voter registration. La. R.S. 18:18(A)(2). Ex. E, Declaration of Sherri Hadskey, ¶ 16.

8

**Response:** Qualified. While Defendant does provide some direction and assistance to parish registrars, it is inadequate as it has not allayed confusion or resulted in the appropriate administration of voter registration for people with felony convictions. *See, e.g.*, ECF 259-10; ECF 259-9 (registrars erroneously requiring individuals convicted after 2022 to comply with the Paperwork Requirement).

23. The Department of State provides training annually to all registrars and issues written guidance from time to time to the registrars. Ex. E, Declaration of Sherri Hadskey, ¶ 17.

**Response:** Qualified. While Defendant does provide some annual training and issue some written guidance, it is inadequate as it has not allayed confusion or resulted in the appropriate administration of voter registration for people with felony convictions. *See, e.g.*, ECF 259-10; ECF 259-9 (registrars erroneously requiring individuals convicted after 2022 to comply with the Paperwork Requirement).

24. The annual training and written guidance comport with the Election Code and provide practical steps for compliance therewith. Ex. E, Declaration of Sherri Hadskey, ¶ 18.

**Response:** Denied. Registrars often have questions about the processing registration applications from people with convictions. Ex. 1, Hadskey Dep. at 37:03-43:04; Ex. 1, Hadskey Dep. Exs. 26 & 27. Furthermore, it is unclear whether the Defendant provides any guidance to public agencies, Ex. 1, Hadskey Dep. at 68:05-16, and Defendant does not provide any policies or guidance to the DPSC, Ex. 1, Hadskey Dep. at 69:22-70:03. Furthermore, it is unclear whether the Defendant "consider[ed] any implications for Federal law" in drafting written guidance following the passage of Act 127, and this guidance also has changed in content over time. Ex. 1, Hadskey Dep. at 127:01-16.

25. Since 2019, the Department of State has issued written guidance to the registrars on the following dates: February 18, 2019, September 21, 2022, May 12, 2023, August 4, 2024, December 18, 2024, and February 23, 2026. Ex. E, Declaration of Sherri Hadskey, ¶ 19, Exhibits 1-6 of Declaration.

**Response:** Admitted.

26. Registrars of voters were recently trained on the Direction and Assistance for Felon Procedures issued February 23, 2026, at a conference in Bossier the week of February 13, 2026. Ex. L, Deposition of SOS, 86:22 - 90:5.

**Response:** Qualified. While Defendant stated that "the Registrar of Voters had a conference recently and [SOS staff] spoke at the conference to go over [recent guidance] with them . . . [t]he week of February 23 . . . [in] Bossier," Ex. 1, Hadksey Dep. at 87:08-88:14, the cited source does not support Defendant's assertion that the registrars were "trained."

27. Forty-six registrars of voters were present at the February, 2026 conference and signed an acknowledgement of receipt of the February 23, 2026 Direction and Assistance for Felony Procedures. All registrars of voters not present at the conference also signed an acknowledgement of receipt of the February 23, 2026 Direction and Assistance for Felony Procedures. Ex. L, Deposition of SOS, 86:22 - 91:6.

**Response:** Qualified. Admitted to the extent that Defendant represented that forty-six registrars were present at the February 2026 conference and signed an acknowledgment of receipt, and that Defendant represented that all other registrars not present also signed an acknowledgment. Denied for the truth of the matter asserted, which is unsupported by Defendant's representation alone. *See, e.g.*, ECF 258-13.

10

28. Plaintiff, League of Women Voters of Louisiana ("LWVLA"), is a 501(c)(4) organization formed in 1967. Ex. F, Deposition of LWVLA, p. 12-13; 44:14-17; Exhibit 3 to Deposition of LWVLA.

**Response:** Qualified. Plaintiff League of Women Voters of Louisiana is also a 501(c)(3) organization. *See* ECF 120 at 126:08-13 (testifying that she was an organizational representative for "the League of Women Voters of Louisiana" or "the League," which is comprised of both a 501(c)(3) and a 501(c)(4) organization); Ex. 13, Deposition of M. Christian Green (LWVLA) at 12:15-20 ("Well, normally, we refer to both [the 501(c)(3) and 501(c)(4)] together in litigation."); Ex. 5, ¶¶ 2-3, Declaration of M. Christian Green (LWVLA). Both "[t]he 501(c)(3) and 501(c)(4) work together to further the League's mission"; *see also* Ex. 13, Green Dep. at 12:15-20 (the two entities "work in synergy").

29. LWVLA is a membership organization consisting of 24 at-large members and approximately 280 members of the six local chapters, which are separate autonomous corporations with their own funding and budgets. Ex. F, Deposition of LWVLA, 12:10; 14:25- 15:14; 18:14-24.

**Response:** Qualified. The League has approximately 250 members statewide, including 22 members-at-large (who are not members of League's local chapters, or "Local Leagues") and the members of its six Local Leagues. Ex. 5 ¶ 3, Green Decl. All Local League members are also members of the State League's 501(c)(4). *See* Ex. 13, Green Dep. at 12:15-20, 16:8-11; Ex. 5 ¶ 3, Green Decl. Many of the Local Leagues receive disbursements of funding from the state League's 501(c)(3), which must be used for 501(c)(3) voter education purposes, and therefore do not have "their own funding" separate and apart from the state League's funding. Ex. 13, Green Dep. at 53:06-54:18.

30. Since 2019, LWVLA has not diverted any resources from other activities related to its core mission to assist its constituents and other community members with the voting rights restoration process for Louisianans with past felony convictions. Ex. F, Deposition of LWVLA, 85:21-86:21.

**Response:** Denied. The League is comprised of both a 501(c)(3) organization and a 501(c)(4) organization. *See* ECF 120 at 126:08-13; Ex. 5 ¶¶ 2-3, Green Decl. The League has diverted significant resources—member time and money—from other activities related to its mission to assist people educate and register voters with past felony convictions. Ex. 13, Green Dep. at 16:22-17:17, 81:20-82:22; ECF 120 at 145:15-146:25, 152:17-153:01; Ex. 5 ¶¶ 6-11, Green Decl.; Ex. 12 ¶¶ 5-13, Declaration of Charleen Markle; Ex. S-1. The League is an all-volunteer organization, so "one of [its] greatest and most limited resources is [its] members' time." Ex. 5 ¶ 6, Green Decl. Members of Local Leagues are also members of the State League's 501(c)(4). Ex. 13, Green Dep. at 12:15-20, 16:08-11; Ex. 5 ¶ 3, Green Decl. Members of the LWV of Iberia visited the New Iberia Probation and Parole Office monthly from December 2024 to February 2026 to "assist returning citizens with voter registration and voter education," including educating them on "their path to rights registration, including the Paperwork Requirement." Ex. 12 ¶¶ 7-8, Markle Decl. Because of the Paperwork Requirement, League members must dedicate extra "time to assisting voters with past felony convictions," including "more time per interaction." Ex. 12 ¶ 6, Markle Decl. They also must spend more time at locations where they "can reach these impacted voters," such as probation and parole offices, because voters with felony convictions "face greater barriers to registration than other voters." Ex. 12 ¶¶ 5-6, Markle Decl. This additional time and resources spent on helping voters with felony convictions means that League members are able to reach fewer potential voters and focus on fewer other priorities. Ex. 12 ¶ 6, Markle Decl. Importantly:

12

> If the paperwork was no longer required for any voters, or if it were required of fewer voters, we would not have to spend our time assisting voters with past felony convictions in understanding and overcoming this barrier to registration. We could assist voters with felony convictions in registering to vote more quickly, resulting in more voters registered, and we could focus on our other priorities, such as voter education on upcoming elections, closed party primaries, and checking voter status.

Ex. 12 ¶ 13, Markle Decl.

31. LWVLA does not "help voters navigate the process of complying with the documentation requirement[]" of La. R.S. 18:177." Ex. F, Deposition of LWVLA, 86:22-87:16.

**Response:** Denied. The League is comprised of both a 501(c)(3) organization and a 501(c)(4) organization. *See* ECF 120 at 126:08-13; Ex. 5 ¶¶ 2-3, Green Decl. The League has educated impacted voters and helped them navigate the process for complying with the Paperwork Requirement. Ex. 5 ¶¶ 6-8, Green Decl.; Ex. 12 ¶¶ 6-8, Markle Decl. This includes informing voters about the Paperwork Requirement and assisting individuals with "obtaining the required paperwork so they could register to vote." Ex. 12 ¶ 8, Markle Decl.

32. LWVLA "has not been involved in voter education directly" since 2019. Ex. F, Deposition of LWVLA, 88:16-89:8; 54:21-55:6.

**Response:** Denied. The League is comprised of both a 501(c)(3) organization and a 501(c)(4) organization. *See* ECF 120 at 126:08-13; Ex. 5 ¶¶ 2-3, Green Decl. The League's core activities are "voter registration and education" and "non-partisan issue advocacy," and both organizations "work together to further the League's mission" of "encourag[ing] informed and active participation in government, increase[ing] voter understanding of major public policy issues, and influenc[ing] public policy through education and advocacy." Ex. 5 ¶¶ 3, 5, Green Decl. The LWV of Iberia spent months educating "numerous people about their path to rights restoration, including the Paperwork Requirement" at regular visits to the local probation and parole office. Ex. 12 ¶ 8, Markle Decl.

13

33. Between April 1, 2019 and March 31, 2025, LWVLA did not spend any money related to felony voting rights. Ex. F, Deposition of LWVLA, Exhibits 10, 11, and 12 attached thereto.

**Response:** Denied. The League is comprised of both a 501(c)(3) organization and a 501(c)(4) organization. *See* ECF 120 at 126:08-13; Ex. 5 ¶¶ 2-3, Green Decl. The League's 501(c)(3) organization has spent money related to voting rights restoration for voters with felony convictions between April 1, 2019 and March 31, 2025. ECF 120 at 145:15-146:25; Ex. 5 ¶ 9, Green Decl.

34. Plaintiff, Power Coalition for Equity and Justice ("PCEJ"), runs an 11-touch program targeting infrequent voters. Ex. R, Deposition of PCEJ,15:24-16:25.

**Response:** Qualified. PCEJ does run an 11-touch program that targets infrequent voters, Ex. 8 ¶¶ 12-13, Declaration of Ashley Shelton (PCEJ), but this is not PCEJ's only program for reaching out to voters, as the organization has significant other activities to contact voters, including dozens of community events every year, and GOTV trainings for organizers and others who do voter registration and education. Ex. 9, Deposition of Ashley Shelton (PCEJ) at 35:08-23, 58:21-59:22. There is "some element of voter participation or voter education, including voter registration," at "all events that Power Coalition is involved in." Ex. 9, Shelton Dep. at 78:11-17.

35. The voters contacted as part of its "11-touch program" derive from a Voter Access Network (VAN) which is ultimately sourced from the SOS and comprises chronic (votes in most elections) and infrequent voters. Ex. R, Deposition of PCEJ, 78:18-81:17; 60:19 – 62:2; 90:3-6. See Exhibit S, PCEJ's responses to First Set of Interrogatories, Int. 10

**Response:** Qualified. VAN is sourced from Defendant as it retrieves its data from the voter file maintained and made public by Defendant. Ex. 9, Shelton Dep. at 78:24-82:17. But VAN is not the only source from which PCEJ derives voter information to undertake its 11-touch program.

14

In addition to VAN, PCEJ obtains contact information from "other programming." Ex. 8 ¶ 13, Shelton Decl. This includes dozens of events every year and other community involvement, to build the universe of voters it plans to target. ECF 257-9. Admitted insofar that the data that PCEJ obtains from VAN includes chronic and infrequent voters. Denied insofar that VAN only includes this information, which is unsupported by the cited source. *But see* Ex. 8 ¶ 13, Shelton Decl.

36. Because the SOS does not include suspended voters in any list provided to the public, suspended voters are not included on the lists utilized by PCEJ for its 11-touch program. *See* Ex, E, Declaration of Sherri Hadskey, ¶15.

**Response:** Denied. PCEJ may meet suspended individuals in the community who are included in the 11-touch program even if they are not currently in the voter file. Ex. 8 ¶ 13, Shelton Decl. This is because, in addition to VAN, PCEJ also uses data from its other programming, including dozens of events every year and other community involvement, to build the universe of voters it plans to target. ECF 257-9; Ex. 8 ¶ 13, Shelton Decl. Furthermore, the VAN is not updated in real time with the Louisiana state voter file, and PCEJ does not request data after "every election" because of the time it takes to request and receive the data. Ex. 9, Shelton Dep. at 62:01-63:09. Finally, the active voter file necessarily contains previously suspended voters whose registrations were reinstated. *E.g.*, Ex. 1, Hadskey Dep. at 148:16-24.

37. PCEJ does not specifically track whether the voters they contact as part of its 11-touch program have been suspended for a felony conviction. See Exhibit S, PCEJ's responses to First Set of Interrogatories, Int. 12, 14, 15, 16, 18, 20; RFP 15, 16 and Exhibit T, PCEJ's Supplemental responses.

**Response:** Qualified. The 11-touch program does not represent the entirety of PCEJ's voter engagement work, which also includes community events and GOTV trainings for organizers and

15

others who do voter registration and education. Ex. 9, Shelton Dep. at 35:08-23; 58:21-59:22. While PCEJ does not specifically track which of the individuals they contact have been suspended for a felony conviction, PCEJ does encounter such voters. Ex. 8 ¶ 19, Shelton Decl.; Ex. 9, Shelton Dep. at 37:01-38:07, 23:11-24:25.

38. PCEJ does not document specific interactions with voters who ask questions about the reinstatement process, nor does it document the length of time of such interactions. *See* Exhibits S and T, RFP 7, 10, 15, 16; Ex. R, Deposition of PCEJ, 37:1-38:7.

**Response:** Qualified. PCEJ does not track how many minutes it spends with any given voter in a single interaction or the questions asked by the voter in the normal course of business. Ex. 9, Shelton Dep. at 37:01-38:07, 110:09-114:09. However, PCEJ is aware that conversations with individuals with felony convictions take longer based on experience. Ex. 11 ¶¶ 19-21, Declaration of Billy Anderson; Ex. 9, Shelton Dep. at 104:04-105:19.

39. PCEJ has no documentation showing that canvassers and/or phone bankers contact or engage with fewer individuals per shift when they encounter individual(s) during that shift whose voter registrations have been suspended for conviction of a felony. See Exhibit S, PCEJ responses to First Set of Interrogatories and RFPs, RFP 7.

**Response:** Denied.  PCEJ tracks progress of its 11-touch program, and the additional time it takes to speak with voters with felony convictions is often reflected when GOTV efforts are behind progress. Ex. 9, Shelton Dep. at 93:01-96:25; Att. A, Shelton Decl.

40. PCEJ's script for organizers and volunteers does not contain any information about the reinstatement process or providing documentation such as the VRC. Ex. R, Deposition of PCEJ, 43:1-45:8 and 47:13-16; Exhibit W, PL4444-4446.

16

**Response:** Denied. PCEJ's scripts to voters do not contain information about voting with a felony conviction because the explanation would exceed PCEJ's goal of keeping the interactions no longer than 3 minutes. Ex. 9, Shelton Dep. at 45:06-47:12. Organizers know, however, to provide additional assistance to people when they indicate that they have a felony conviction. Ex. 9, Shelton Dep. at 45:06-47:12. This is, in part, because PCEJ organizers do trainings with VOTE staff. Ex. 9, Shelton Dep. at 51:02-56:06. Moreover, PCEJ's trainings to organizers and volunteers provide additional information about guiding voters with prior felony convictions through the registration process. Ex. 9, Shelton Dep. at 45:06-47:12, 51:02-56:06.

41. PCEJ does not assist people with past felony convictions with voter registration or reinstatement but refers them to VOTE to provide such assistance. Ex. R, Deposition of PCEJ, 143:17-144:10.

**Response:** Denied. PCEJ assists individuals by providing voter information, answering voters' questions, and registering individuals with past felony convictions to vote. Ex. 8 ¶¶ 6, 11, 19, Shelton Decl.; Atts. C & B, Ex. 11, Anderson Decl. PCEJ often refers individuals to VOTE for assistance with reinstatement, but PCEJ also provides direct assistance. Ex. 11 ¶¶ 8, 10, 12-14, 17, 19-21, Anderson Decl.; Ex. 8 ¶ 16, Shelton Decl.

42. Plaintiff, Voice of the Experienced ("VOTE") was originally incorporated in 2004 as Voice of the Ex-Offender; the name later changed to Voice of the Experienced.  Ex. H, Deposition of VOTE, 45:1-20.

**Response:** Admitted.

43. The Articles of Incorporation (Ex. P) for Voice of the Ex-Offender apply to the plaintiff, Voice of the Experienced. Ex. H, VOTE depo., 45:18-20.

**Response:** Admitted.

44. VOTE refers to Louisiana's felon disenfranchisement laws as "criminal (in)justice system." Ex. G, White Paper, p. 27.

**Response:** Admitted.

45. "Louisiana should not and cannot stop until every eligible but unregistered voter is registered to vote and voting, including voters with convictions. This requires adopting the recommendations above and fully implementing Acts 636 and 127. Full and robust implementation of those hard-fought laws are part of an overall movement led by VOTE to restore full human and civil rights of those most impacted by the criminal (in) justice system and wholeness to individuals and communities of color across Louisiana." Ex. G, White paper, p. 27.

**Response:** Admitted.

46. "Throughout the 1990's, the Angola Special Civics Project (ASCP) worked through personal networks to educate formerly incarcerated people and their family members about their voting rights." Ex. G, White Paper, p. 12.

**Response:** Admitted.

47. "In 2003, the ASCP began its transformation into what is now VOTE, and a movement to overturn Louisiana's felony disenfranchisement laws was born." (emphasis added) Ex. G, White Paper, p. 12.

**Response:** Admitted.

48. "[T]he primary mission of VOTE [has] always been to get … the Louisiana law changed about felon disenfranchisement." Ex. H, Deposition of VOTE, 49:19-23.

**Response:** Qualified. Defendant accurately quotes the cited source, and while reducing barriers to voting rights for Louisianans with convictions is a "key" part of VOTE's mission, it is not the only part of VOTE's mission, which also includes civic engagement for Louisianans with

18

convictions and advocating for the rights of such individuals in the areas of voting rights, medical rights, employment rights, housing rights, and policy reform. Ex. 7, Deposition of Norris Henderson (VOTE) at 44:12-18; Ex. 2 ¶¶ 3, 7, Henderson Decl.

49. In 2012, VOTE's "campaign to overturn Louisiana's disenfranchisement laws gained momentum with a bill filed by Rep. Patricia 'Pat' Smith from Baton Rouge." Ex. G, White Paper, p. 12.

**Response:** Admitted.

50. See House Bill 175 of 2013 by Rep. Smith (Ex. I); and a picture of VOTE members testifying on HB 175. Ex. G, White Paper, p. 13.

**Response:** Qualified. While Ex. I, now ECF 256-12, does contain a copy of H.B. 175 and Ex. G, Defendant does not assert a statement of material fact as required by Local Rules 56(a) and 56(f).

51. On July 1, 2016, "VOTE sued the State over the meaning of 'under order of imprisonment.'" La. R.S. 18:177 was held to be constitutional. Ex. G, White Paper, p. 13; *Voice of the Ex-Offender v. State of Louisiana*, 2017CA1141 (La. App. 1 Cir. 4/13/2018), 249 So.3d 857, *writ denied*, 2018 0945 (La. 10/29/2018), 255 So.3d 375.

**Response:** Denied. While VOTE initiated *Voice of the Ex-Offender v. State of Louisiana*, 2017-CA-1141 (La. App. 1 Cir. 4/13/2018), 249 So. 3d 857, on July 1, 2016, the constitutionality of La. R.S. 18:177 was not at issue in that case. Rather, that case concerned the "implementation of La. R.S. 18:102(A)(1) and La. R.S. 18:2(8)" and whether the Louisiana constitution disenfranchised individuals who were on parole. *See Voice of the Ex-Offender v. State of Louisiana*, 2017CA1141, p. 4 (La. App. 1 Cir. 4/13/2018).

52. In the 2020 Regular Session, VOTE supported HB 454 by Rep. Jenkins, providing relative to registration and voting by a person convicted of a felony, intended to clarify "that probationers who have never spent a day in prison retain their eligibility to vote." Ex. L, Deposition of SOS, Ex. 19 attached thereto.; and Ex. KK, HB 454.)

**Response:** Qualified. Admitted to the extent that VOTE supported HB 454 by Rep. Jenkins. Denied to the extent that Defendant represents the full scope of the bill's purpose or impact, which includes reducing the documentation barriers to voter registration. *See* Att. R, Henderson Decl. Denied to the extent that "Ex. KK" supports the asserted fact, as "Ex. KK" does not appear to exist.

53. HB 454 did not pass. Ex. LL (HB 454)); https://www.legis.la.gov/Legis/BillInfo.aspx?s=20RS&b=HB454+sbi=y).

**Response:** Admitted.

54. HB 396 of 2023 Regular Session by Reps. Jenkins and Wilford Carter was supported by VOTE. Ex. G, White Paper, p. 23, para. 1; Ex. K, HB 396 of 2023

**Response:** Admitted.

55. HB 396 proposed to amend and reenact La. R.S. 18:177 to remove the in person paperwork requirement for reinstatement of a registration suspended for conviction of a felony. Ex. K, HB 396.

**Response:** Qualified. While H.B. 396 proposed to remove the in-person paperwork for those who the state had information regarding their eligibility, that does not reflect the full scope of H.B. 396, which included new procedures for reinstatement and registration to mitigate the ongoing violation of federal law. ECF 257-1.

20

56. HB 396 of 2023 failed to pass the Legislature. Ex. M, (HB 396, https://www.legis.la.gov/Legis/BillInfo.aspx?s=23RS&b=HB396&sbi=y ).

**Response:** Admitted.

57. While HB 396 was pending, VOTE filed the instant suit on May 1, 2023. (Doc 1).

**Response:** Admitted.

58. By Ruling and Order (Doc 155) of May 13, 2024, the Court noted that "in the 2023 legislative session, the Legislature had the opportunity to amend La. R.S. § 18:177(A) so that the burden of submitting paperwork was taken off the individual but chose not to do so.  See H.B. 39, Reg. Sess. (La. 2023) (unenacted)."  Doc 155, p. 70, fn. 9.

**Response:** Qualified. Defendant accurately quotes this Court's Ruling and Order on Defendant's Motion to Dismiss Plaintiffs' Complaint at the cited page, but Defendant improperly cites to a legal opinion rather than a record citation as required by Local Rules 56(a) and 56(f).

59. HB 361 of 2026, like HB 396 of 2023, proposed to amend and reenact La. R.S. 18:177(A) to, among other things, remove the in person paperwork requirement for reinstatement of the voter registration for those whose registration is suspended for conviction of a felony.  Ex. N.

**Response:** Qualified. While H.B. 361 proposed to remove the in-person paperwork for those who the state had information regarding their eligibility, that does not reflect the full scope of H.B. 361, which would have amended the reinstatement and registration procedures to mitigate the ongoing violation of federal law. ECF 257-4.

60. HB 361 of 2026 failed to pass the Legislature.   (Ex. O, HB 361, https://www.legis.la.gov/Legis/BillInfo.aspx?s=26RS&b=HB361&sbi=y.)

**Response:** Admitted.

21

61. VOTE claims responsibility for the enactment of Act 636 of 2018, considering it "one of its achievements," "a victory," and "all our work." Ex. H, Deposition of VOTE, 50:12-16.

> **Response:** Admitted.

62. VOTE claims responsibility for the enactment of Act 127 of 2021.  Ex. G, White Paper, p. 16; Ex. H, Deposition of VOTE, 58:12 through 59:1.

> **Response:** Admitted.

63. VOTE was founded on the principle of voting rights and "trying to restore the right to vote to formerly incarcerated people."  Ex. H, Deposition of VOTE, 46:11-22.

> **Response:** Admitted.

64. Voting rights are VOTE's "main priority" and what it does "all day every day."  Ex. H, Deposition of VOTE, 31:2-12; 34:2-9; 46:11-22.

> **Response:** Qualified. While voting rights are a "main priority" for VOTE, voting rights are not the entirety of VOTE's work. "[V]oting rights is key to all of it," because VOTE believes that "these are all the collateral damages that people face because they're formerly incarcerated" and cannot meaningfully participate in other parts of civic life for which VOTE prioritizes, such as housing and employment. Ex. 7, Henderson Dep. at 43:18-44:01.

65. 75% of VOTE's time is dedicated to voting rights of felons. Ex. H, Deposition of VOTE, 43:12-21; 171:18-172:7.

> **Response:** Denied. This is only a "guesstimation" of the breakdown of VOTE's resources and is "not a hard number." *See* Ex. 7, Henderson Dep. at 192:06-16.

66. Since its existence, 75% of VOTE's expenses go towards voting rights. Ex. H, Deposition of VOTE, 146:20-147:8.

**Response:** Denied. This is only a "guesstimation" of the breakdown of VOTE's resources and is "not a hard number." *See* Ex. 7, Henderson Dep. at 192:06-16.

67. VOTE educates voters with felony convictions about Act 636 and Act 127 "and the things connected to it." Ex. H, Deposition of VOTE, 33:5-9.

**Response:** Admitted.

68. The only diversion of resources VOTE was able to identify was as follows: "Staff have to spend more time inside these facilities, trying to do everything.  Sometimes it takes a revisit to the facility, so its kind of like as opposed to a one-time and it's done, its kind of like several times seeing the process through."  Ex. H, Deposition of VOTE, 172:11-19.

**Response:** Denied. VOTE "would not have to engage in this additional education and outreach [for individuals with felony convictions] but for the documentary proof of eligibility requirement." *See* Ex. 2 ¶ 26, Henderson Decl. VOTE estimates that the Paperwork Requirement "at least triple[s]" the work of registering a single voter. *See* Ex. 2 ¶ 32, Henderson Decl. The Paperwork Requirement itself, coupled with Defendant's haphazard implementation, has also impaired VOTE's ability to effectively register its members and properly educate them on registration requirements. *See* Ex. 2 ¶¶ 26, 33, 37, Henderson Decl.; ECF 120 at 43:19-23 ("And a lot of people just get discouraged from wanting to participate in the process because this other hurdle had been put in front of them."). VOTE is also injured by the Paperwork Requirement because it prevents jail-based individuals from registering, thereby hindering their membership participation. Ex. 7, Henderson Dep. at 128:12-23 ("[A] lot of these folks wasn't gonna be able to vote because they wasn't gonna be able to get the documentation."). VOTE regularly conducts voter registration drives in Louisiana jails as a means to educate eligible voter registrants. *See* Ex. 2 ¶ 29, Henderson Decl. Jail-based registration is also a means to recruit members and educate

23

prospective members about VOTE's work. *See* Ex. 2 ¶ 31, Henderson Decl. To be a VOTE member, one requirement is to register to vote if eligible. Ex. 2 ¶ 9, Henderson Decl.; Voice of the Experienced, Our Members, https://www.voiceoftheexperienced.org/members (last visited July 14, 2026). The Paperwork Requirement categorically bars individuals who must present additional documentation like the VRC from registering to vote or seeking reinstatement. Ex. 1, Hadskey Dep. at 314:19-314:22.

69. Most of the people VOTE assists were people registering to vote for the first time. Ex. H, Deposition of VOTE, 102:18-21; and 59:20 - 60:3.

**Response:** Denied. VOTE relies on the information provided to it by the individuals it is registering to vote, many of whom are or believe they are first time registrants. Ex. 2, ¶ 24, Henderson Decl. VOTE has assisted individuals who had various registration statuses. *See infra* Additional Statement at ¶ ¶ 34-57.

70. VOTE does not participate in the outreach attempts of PCEJ in its Eleven Touch Program. Ex. H, Deposition of VOTE, 185:23-25.

**Response:** Qualified. The 11-touch program is a program of PCEJ, but VOTE trains PCEJ organizers conducting the 11-touch program in engaging voter registrants with prior felony convictions. Ex. 9, Shelton Dep. at 52:12-18. VOTE also receives referrals from PCEJ organizers who encounter voters with felony convictions during the 11-touch program. Ex. 9, Shelton Dep. at 49:02-17.

71. This Court previously held that the "accept and use" provisions of the NVRA apply to voter registration. Doc. 215, pg. 75.

**Response:** Qualified. Defendant accurately quotes this Court's Ruling and Order on Defendant's Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint at the

cited page, but Defendant improperly cites to a legal opinion rather than a record citation as required by Local Rules 56(a) and 56(f)

**72.** Plaintiffs failed to identify a single new registrant who was required to provide additional paperwork beyond that required by the Federal Form to register to vote. All registrants Plaintiffs provided to Defendant to support Plaintiffs' Count 3 allegations were registered voters, having already completed the voter registration process. *See* Ex. E, Declaration of Sherri Hadskey.

**Response:** Denied. Plaintiff identified at least two first-time registrants who were required to provide additional documentation of eligibility. *See, e.g.*, Ex. 4 ¶ 13, Declaration of Charles Amos; Ex. 16 ¶¶ 7, 15, Pittman Decl. Mr. Amos first attempted to register after he was released from prison. Ex. 4 ¶¶ 13-16, Amos Decl. Despite being released without community supervision and being a first-time registrant, Mr. Amos was improperly required to provide a VRC in order to register. Ex. 4 ¶¶ 17-22, Amos Decl. Mr. Pittman was similarly told, repeatedly, that he needed a VRC despite registering for the first time upon completing his sentence of incarceration. Ex. 16 ¶¶ 4-7, 15-21, 37, Pittman Decl.

73. This Court previously determined that since "those subject to [the reinstatement process] have suspended rather than cancelled registrations," "re-registering would create duplicate registrations" for voters whose registrations were suspended for a felony conviction. Doc. 155, p. 69.

**Response:** Qualified. Defendant accurately quotes this Court's Ruling and Order on Defendant's Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint at the cited page, but Defendant improperly cites to a legal opinion rather than a record citation as required by Local Rules 56(a) and 56(f).

25

74. Documentation from an appropriate corrections official establishes that the suspended voter seeking reinstatement is eligible to be reinstated. Ex. L, Deposition of SOS, 182:11-20; 176:10-21.

**Response:** Denied. No documentation "establishes" the individual's eligibility. The VRC is merely one of many sources, including the Ineligible List, which is already available to the registrars, that indicates the individual's eligibility. Ex. 24, Reed and Peek Dep. at 78:03-19. There is "no other information that [the ROV] gleans from the VRC that is not otherwise evident from the ineligible list." Ex. 24, Reed and Peek Dep. at 103:02-09. Registrars can seek additional information from the sheriff and district attorney regarding an individual's conviction or eligibility status, if they have questions. *See* La. R.S. 18:171(B)(1), the Secretary of the Department of Public Safety and Corrections, *see* La. R.S. 18:171(B)(2), or the United States Attorneys, see La. R.S. 18:171.1(C). Further, to the extent Defendant is referring to other documentation indicating eligibility, such as discharge paperwork, discovery demonstrated that it is not always accepted by the registrar. *See* Ex. 16 ¶¶ 20-21, Pittman Decl.

75. Appearing in-person at the registrar's office with the documentation allows the registrar to confirm the identity of the suspended voter seeking reinstatement and to update his voter registration information. Ex. L, Deposition of SOS, 184:17-23.

**Response:** Denied. Defendant's statement is unsupported by the cited source. Defendant does not explain how the VRC identifies the voter. Ex. 1, Hadskey Dep. at 184:17-23. Defendant does not explain how other documentation, which does not contain the same information as the VRC, identifies the voter. *See* ECF 258-13. Indeed, an additional form of identification is required beyond the paperwork. Ex. 24, Reed and Peek Dep. at 103:02-09, 116:16-117:24. Defendant does not explain why individuals who previously voted in another parish need to identify themselves.

*But see* La. R.S. 18:115 (exempting "[a] person who was registered to vote in another parish and previously voted in the other parish" from the in-person appearance requirement for mail registration).

76. Since 2019, all individuals under the custody or supervision of DOC are issued a Voting Rights Certification ("VRC") upon case closure. Ex. MM, Deposition of DOC, 54:2 – 24; 57:11-14.

**Response:** Qualified. While current Department of Public Safety and Corrections ("DPSC") policy is to provide a VRC upon case closure, Ex. 3, Deposition of Renee Delouche (DPSC) Ex. 3, the cited source provides no support for the assertion that "all" individuals under DPSC supervision since 2019 have received a VRC upon case closure. Charles Amos, for example, did not receive a VRC upon release in 2022. Ex. 4 ¶ 14, Amos Decl. Denied that "Ex. MM" supports the asserted fact, as "Ex. MM" does not appear to exist.

77. An individual can also request a VRC by going to any district office of Probation and Parole, by calling any district office of Probation and Parole, by calling his supervising agent, or by "by [*sic*] email, text message, Google chat…any mechanism that's out there that you can communicate with somebody, they could express that they wanted [a VRC]." Ex. MM, Deposition of DOC, 44:18 – 45:3; 28:14-29:2; 30:10-31:8; 44:5-20; 53:13-54:5; 29:9-30:5.

**Response:** Qualified. While this representation was made by a DPSC representative, the witness also testified that "unless they can verify who they are," individuals seeking the VRC have to "go in person to the district office." Ex. 3, Delouche Dep. at 28:04-16 (Individuals "can't just go by [someone] calling and saying that she needs her letter . . . And so they can go to any district office. And that's what I would tell [someone]."). And in Plaintiff VOTE's experience, individuals

27

must go to the parole and probation office in person to receive a VRC. Ex. 4 ¶ 7, Amos Decl. Denied that "Ex. MM" supports the asserted fact, as "Ex. MM" does not appear to exist.

78. A "district manager, the supervising agent, a supervisor, [or] any officer inside the district offices can sign off on" a VRC. Ex. MM, Deposition of DOC, 66:8-17.

**Response:** Qualified. While DPSC testified that these individuals can sign off on a VRC, it did not testify that these individuals necessarily *will* issue a VRC. In fact, individuals often face trouble getting an agent to issue a VRC. *See, e.g.*, Ex. 4 ¶ 10, Amos Decl.

79. A VRC is typically issued to an eligible individual the same day it is requested and can also be "mail[ed] to them or fax[ed]." Ex. MM, Deposition of DOC, 50:2-15.

**Response:** Qualified. When a VRC is requested in person it can be issued the same day, but it is not uncommon for it to take more than one day to be issued. *See* ECF 121 at 61:19-21 (testifying that it can take "two or three days" to get a VRC); Ex. 4 ¶ 10, Amos Decl. Additionally, VRCs will be denied if they do not have a raised seal, Ex. 24, Reed and Peek Dep. at 107:12-20, and only certain individuals are authorized to sign and seal the VRC. Ex. 27, Deposition of Wendy Dalton (Amite Parish DPSC) at 46:13-18.

80. Probation and Parole will also "email it or fax [a VRC] to the Voter Registrar's office." Ex. MM, Deposition of DOC, 30:7-9.

**Response:** Denied. There is no evidence that a probation or parole officer has ever emailed or faxed a VRC to a registrar on behalf of a voter; indeed, in VOTE's experience, the registrar will only provide the VRC to the voter, in-person. Ex. 2 ¶ 23, Henderson Decl. Moreover, Defendant's own Felony Procedures indicate that an emailed or faxed VRC will not suffice, because the individual needs to provide the original copy of the VRC, in-person. Ex. 1, Hadskey Dep. 159:13-26. Further denied that "Ex. MM" supports the asserted fact, as "Ex. MM" does not appear to exist.

28

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56(c), Plaintiffs submit the following Opposing Statement of Material Facts and Statement of Additional Facts.

**I.      Background**

1.      The Louisiana Constitution provides that "[e]very person who is both a citizen of the state and of the United States, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended for a person . . . who is under an order of imprisonment for conviction of a felony." La. Const. art. I, § 10(A).

2.      Prior to the Civil War, Louisiana only disenfranchised individuals for criminal convictions if they were convicted for one of four election-related felonies. *See* La. Const. art VI, § 4 (1812).

3.      After Reconstruction and the passage of the Fifteen Amendment, which extended voting rights to Black men, Louisiana expanded its disenfranchisement of those with criminal convictions. Louisiana's 1898 Constitution permanently disenfranchised any individual convicted of any felony. *See* La. Const. art. 202 (1898) ("The following persons shall not be permitted to register, vote, or hold any office . . . : [t]hose who have been convicted of any crime punishable by imprisonment in the penitentiary[.]").

4.      When Louisiana amended its Constitution in 1974, it again changed its felony disenfranchisement law. *See* La. Const. art. I, § 10(A). All citizens are presumed eligible unless the Legislature exercises its limited, discretionary power to temporarily disenfranchise individuals who are "under an order of imprisonment for a conviction of a felony." *See* La. Const. art. I, § 10(A).

29

5.      Following the ratification of its new Constitution, Louisiana's Legislature passed a law in 1976 that temporarily suspended the right to register or vote from all persons "under an order of imprisonment for conviction of a felony." *See* Acts 1976, No. 697, § 102.

6.      The 1976 bill defined "under an order of imprisonment" broadly to mean "a sentence of confinement, whether or not suspended, whether or not the subject of the order has been placed on probation, with or without supervision, and whether or not the subject of the order has been paroled." Acts 1976, No. 697, § 2(2). In other words, the Legislature temporarily disenfranchised all persons serving a felony sentence, whether in prison or those serving community supervision, including parole or probation in place of incarceration. *Id.*

7.   In 1997, Louisiana passed La. R.S. 18:177, initially requiring "a person whose registration has been suspended by the registrar of voters pursuant to R.S. 18:176 for conviction of a felony" to provide their registrar, in person, with "documentation from the appropriate correction official showing that [they were] no longer under an order of imprisonment." ECF 256-5. The documentation required under La. R.S. 18:177 is colloquially known as the Paperwork Requirement. *See* Ex. 2 ¶ 11, Henderson Decl.

8.   The Paperwork Requirement was amended in 1999, ECF 256-6, and 2012, 2012 La. Sess. Law Act 138 (H.B. 852), to exempt people with disabilities from complying with the in-person requirement.

9.   In 2019, Louisiana enacted Act 636, which provided, in part, that:

> [A] person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order if the person submits documentation to the registrar of voters from the appropriate correction official showing the person has not been incarcerated pursuant to the order within the last five years.

ECF 256-7 § 1 (codified at La. R.S. 18:102(A)(1)(b) (2019)).

30

10. Act 636 also amended the Paperwork Requirement such that the certification must show that "if the applicant is under [an order of imprisonment], that the applicant has not been incarcerated pursuant to the order within the last five years and he is not under an order of imprisonment related to a felony conviction pursuant to election fraud or any other election offense pursuant to R.S. 18:1461.2." ECF 256-7 at 4.

11. At the time, Louisiana only re-enfranchised people with felony convictions whose sentences were completely discharged, including all probation or parole. ECF 256-5; La. R.S. 18:102 (1997); La. R.S. 18:177 (1997).

12. Act 636 meant that individuals serving probation or parole but who had not been incarcerated pursuant to that order in the preceding five years were eligible to vote. *See* ECF 256-07; *see also* La. R.S. 18:102(A)(1)(c).

13. Act 636 opened the door to voters who were on probation or parole, re-enfranchising tens of thousands of Louisianans. *See* Ex. 7, Henderson Dep. at 131:05-10.

14. There were significant problems with the implementation of Act 636, including suspension of those who were not sentenced to actual confinement, requiring documentation of those who registered using the Federal Form, and registrars providing confusing information about registration requirements. *See* Ex. 2 ¶ 39, Henderson Decl.

15. VOTE attempted to negotiate with the Defendant in an effort to address the implementation problems of Act 636. Ex. 1, Hadskey Dep. Ex. 23; *See* Ex. 2 ¶¶ 37-42, Henderson Decl.

16. VOTE turned to legislative advocacy in an attempt to resolve these issues. ECF 120 at 36:07-12 (Norris Henderson testifying as to these legislative efforts).

16.    In 2021, Louisiana enacted Act 127, clarifying that voters who were never incarcerated pursuant to their felony conviction do not lose the right to vote. *See* ECF 256-8, Act

31

127, § 1 (amending La. R.S. 18:176 to clarify that the "suspension" process only occurs for individuals who are ineligible to vote, as opposed to all persons who receive a felony conviction). This includes those with probation-only sentences and suspended sentences. *See* ECF 258-13 at 7-8 ("How to Determine if a Challenge is Required.").

17.    Act 127 clarified that if an individual is not incarcerated pursuant to their order of imprisonment, the suspension and paperwork requirements are not triggered. *See* ECF 256-8, Act 127; *see also* La. R.S. 18:176.

18.    Act 127 also clarified that the Paperwork Requirement does not apply to persons with felony convictions who are new registrants. *See* ECF 256-8, Act 127, § 1 (removing from La. R.S. 18:102(A), the substantive eligibility criteria to register any mention of the paperwork requirement); *see also* La. R.S. 18:101(A)(1) ("Every citizen of Louisiana who . . . is not disenfranchised, and who complies with the provisions of this Chapter shall be eligible to register to vote.").

19.    Act 127 also required DPSC to provide the Secretary of State a list of all presently ineligible persons under their custody or supervision. *See* ECF 256-8, Act 127, § 1 (amending La. R.S. 18:177(C) to ensure that DPSC's list contains only persons ineligible to register); *see also* Ex. 1, Hadskey Dep. at 152:02-17.

## II.    Parties

### A.    VOTE

20.    Voice of the Experienced ("VOTE") is a nonpartisan, grassroots non-profit organization founded and operated by formerly incarcerated people. *See* Ex. 2 ¶ 3, Henderson Decl.

21.    VOTE began as the Angola Special Civics Project inside the Louisiana State Penitentiary at Angola in 1987. *See* Ex. 2 ¶ 4, Henderson Decl.

22.    Its mission was to advocate in support of prisoners' rights and provide services to individuals while they were incarcerated. *See* Ex. 7, Henderson Dep. at 49:04-15.

23.    In 2004, VOTE became a standalone organization, focusing its mission not just on people who are incarcerated, but also supporting people with felony convictions upon release. Ex. 7, Henderson Dep. at 48:25-49:3.

24.    VOTE was "[b]orn inside Angola and built by people who survived the system," Att. A, Henderson Decl., to "speak out on the necessity of fair and equal access for housing for [] formerly incarcerated persons, and their loved ones;" to "educate folks around the collateral consequences that formerly incarcerated people face trying to get employed," Ex. 7, Henderson Dep. at 40:25-41:03, 38:12-14.

25.    But VOTE believes that "voting rights is key to all of it," because "these are all the collateral damages that people face because they're formerly incarcerated" and cannot participate in the political process. Ex. 7, Henderson Dep. at 43:18-44:01.

26.    VOTE believes that their voter registration work is foundational to their work advocating on behalf of people with felony convictions. *See* Ex. 7, Henderson Dep. at 40:25-41:03, 38:12-14, 43:18-44:01.

27.    VOTE works across the entire state. *See* Ex. 2 ¶ 3, Henderson Decl.

28.    VOTE has three chapters, in New Orleans, Baton Rouge, and Lafayette. *See* Ex. 2 ¶ 3, Henderson Decl.

29.    VOTE advocates for the rights of currently and formerly incarcerated people in voting rights, medical rights, housing rights, and employment rights. *See* Ex. 2 ¶ 3, Henderson

Decl.; Ex. 7, Henderson Dep. at 40:25-41:03, 38:12-14, 43:18-44:01.  However, voting rights is the primary focus of the organization and the reason for its founding. Ex. 7, Henderson Dep. at 46:15-22.

30.    VOTE is a membership organization. *See* Ex. 2 ¶ 3, Henderson Decl.

31.    To be a VOTE member, one requirement is to register to vote if eligible. Ex. 2 ¶ 9, Henderson    Decl.;    Voice    of    the    Experienced,    Our    Members, https://www.voiceoftheexperienced.org/members (last visited July 14, 2026).

32.    VOTE's membership is comprised of formerly incarcerated people and their family members, as well as community members. *See* Ex. 2 ¶ 6, Henderson Decl.; ECF 120 at 35:12-16.

33.    VOTE engages its membership through direct organizing, voter education, registration drives, and know-your-rights workshops. *See* Ex. 2 ¶ 6, Henderson Decl.

34.    VOTE regularly conducts voter registration drives, including at community events, criminal court, probation and parole offices, and in parish prisons. *See* Ex. 2 ¶ 7, Henderson Decl.; ECF 120 at 37:15-23.

35.    VOTE works to assist eligible Louisianans with felony convictions, including their members, to navigate the Paperwork Requirement so they may fully participate in civic life. Ex. 2 ¶ 7, Henderson Decl.

36.    As a part of their voting rights mission, VOTE advocated for the passage of Act 636. ECF 120 at 36:06-15. VOTE member and organizer Nziki Wiltz described, "This [paperwork] requirement was a significant burden on the individuals who had a felony conviction and wanted to register." ECF 21-4 ¶ 12.

34

37.     The Paperwork Requirement is the "greatest impediment" to VOTE's efforts to help people register and is the "most common reason" why the individuals they try to help register do not have their registrations accepted. ECF 120 at 43:06-09.

38.     The Paperwork Requirement places a heavy burden on VOTE's staff and its members and hinders them from furthering other activities related to its core mission. *See* Ex. 7, Henderson Dep. at 171:17-172:21; Ex. 2 ¶ 36, Henderson Decl. VOTE "would not have to engage in this additional education and outreach [for individuals with felony convictions] but for the documentary proof of eligibility requirement." *See* Ex. 2 ¶ 26, Henderson Decl. VOTE estimates that the Paperwork Requirement "at least triples" the work of registering a single voter. *See* Ex. 2 ¶ 32, Henderson Decl.

39.     VOTE regularly conducts voter registration drives in Louisiana jails as a means to educate eligible voter registrants, recruit members, and educate prospective members about VOTE's work. *See* Ex. 2 ¶¶ 28-31, Henderson Decl. VOTE also regularly assists voter registrants who are incarcerated in parish jails. Ex. 2 ¶¶ 28-31, Henderson Decl.; Ex. 7, Henderson Dep. at 128:07-129:06; Atts. C & D, Henderson Decl.

40.     VOTE contacts individuals to make sure they are registered. *See* Ex. 2, Henderson Decl. ¶ 20; Att. E, Henderson Decl. When VOTE discovers that an individual is in jail but needs to comply with the Paperwork Requirement, VOTE attempts to advocate on their behalf. *See* Ex. 2 ¶ 30, Henderson Decl.; Atts. F & G, Henderson Decl.

41.     Darryl Jupiter's absentee ballot application was rejected for the November 2024 election because his registration needed to be reinstated after a prior felony conviction. Ex. 18 at SOS025982. He was incarcerated in the East Baton Parish Prison at the time. Ex. 18 at SOS025982. He did not vote in the November 2024 election. Ex. 18 at SOS025973.

42.    Zantheus Quiett's absentee ballot application was rejected for the November 2024 election because his registration needed to be reinstated after a prior felony conviction. Ex. 19 at SOS025816. He was incarcerated in the East Baton Parish Prison at the time. Ex. 19 at SOS025817. He did not vote in the November 2024 election. Ex. 19 at SOS025813.

43.    VOTE is aware of several voters in Orleans Parish whose registrations were rejected in 2024 and 2025, seemingly for failure to submit the required documentation proving their eligibility to vote because of their incarceration in Orleans Justice Center. *See* Att. H, Henderson Decl.; Ex. 21.

44.    Any of those eligible but suspended individuals who remain confined would have missed all subsequent state and federal elections. *See* Ex. 1, Hadskey Dep. at 315:07-14.

45.    VOTE is also aware of several eligible voter registrants who were confined in Caddo Correctional Center in March 2024 whom VOTE believes were required to provide a voter eligibility certificate to register to vote. *See* Att. G, Henderson Decl.

46.    Based on its experiences, VOTE advocated for legislation to remove the Paperwork Requirement and streamline the process for verifying the eligibility of voters. Ex. 1, Hadskey Dep. Ex. 23; Ex. 7, Henderson Dep. at 58:2-18. These efforts led to the passage of Act 127. *See* Ex. 2 ¶ 8, Henderson Decl.; Ex. 7, Henderson Dep. at 58:12-18.

47.    VOTE will often drive individuals without cars to their local probation and parole office and registrar's office to ensure that the individual complies with the in-person appearance requirement. *See* Ex. 2 ¶ 26, Henderson Decl.; ECF 121 at 63:18-64:08.

48.    VOTE members, including A.D., M.S., C.Y., Gregory Finney, Lawrence Pittman, and Bruce Reilly, were required to provide additional documentation to register to vote or seek

36

reinstatement. Ex. S-2; Ex. S-4; ECF 70-6; ECF 260-6; ECF 70-13; ECF 70-11; ECF 21-5; ECF 70-12; Ex. 16 ¶¶ 3-10, 21, Pittman Decl.; Ex. 4 ¶¶ 13-22, Amos Decl.

49.    VOTE staff members and others who need to comply with the Paperwork Requirement have to take off work to obtain the VRC and hand-deliver to the registrar. *See* Ex. 2 ¶¶ 25, 27, Henderson Decl.; Ex. 7, Henderson Dep. at 96:07-11 ("[M]ost of the time folks would get off from work, P&P would be closed.").

50.    VOTE has not identified a consistent pattern for when the VRC is required. *See* Ex. 2 ¶ 18, Henderson Decl. Sometimes, a parish official will simply accept the voter registration application, other times they will not. *See* Ex. 2 ¶ 18, Henderson Decl.

51.    VOTE encounters individuals who are confused and intimidated when they receive the 21-day challenge letter, and sometimes accompanies those individuals to obtain the appropriate documentation. ECF 21-4 ¶ 14.

52.    When individuals have experience with the criminal legal system, they are often hesitant to get in trouble, and the challenge letter can makes them feel like they are doing something wrong. *See* Ex. 2 ¶ 25, Henderson Decl.; Ex. 4 ¶ 6, Amos Decl.

53.    VOTE is well-known in the community, and individuals and other organizations will often reach out for guidance in navigating the voter registration process for people with prior felony convictions. *See* Ex. 2 ¶ 10, Henderson Decl.

54.    PCEJ often reaches out for guidance in navigating the voter registration process for people with prior felony convictions. *See* Ex. 2 ¶ 28, Henderson Decl.; Ex. 8 ¶ 16, Shelton Decl.; Ex. 9, Shelton Dep. at 46:18-47:25.

55.    Individuals who are familiar with VOTE's work but have never had contact with the criminal legal system, such as David Smith, nonetheless required VOTE's assistance to navigate the Paperwork Requirement. *See* Ex. 10 ¶¶ 11-13, Declaration of David Smith.

56.    VOTE estimates that the Paperwork Requirement triples the work required to register one person. *See* Ex. 2 ¶ 32, Henderson Decl.; *see also* ECF 120 at 64:13-19 (comparing the resources needed to help someone who does need the paperwork and someone who doesn't is like "night and day").

57.    VOTE attempts to follow up with nearly every individual to confirm whether their registration application was accepted or not due to the Paperwork Requirement, diminishing the overall number of individuals VOTE can assist. *See* Ex. 4 ¶¶ 5, 26-28, Amos Decl.

58.    VOTE could otherwise put these resources "to registering more voters and other activities within its mission." Ex. 2 ¶ 36, Henderson Decl.; *see also* Ex. 4 ¶¶ 26-28, Amos Decl.; ECF 120 at 64:20-66:04.

59.    Without having to assist individuals navigating the Paperwork Requirement, VOTE could expand its outreach in other areas, such as housing and employment. *See* Ex. 2 ¶¶ 3, 27, Henderson Decl.; *see also* ECF 120 at 64:20-66:04.

60.    Because of the Paperwork Requirement, some individuals that VOTE tries to help register may give up. *See* Ex. 2 ¶¶ 25, 33, Henderson Decl.; Ex. 4 ¶ 6, Amos Decl.

61.    The Paperwork Requirement also hinders VOTE's ability to recruit members, since voter registration when eligible is a requirement of membership. *See* Ex. 2 ¶¶ 9, 34, Henderson Decl.

**B.    PCEJ**

62.    Power Coalition for Equity and Justice ("PCEJ") is a nonpartisan, nonprofit statewide civic engagement table in Louisiana. Ex. 8 ¶ 3, Shelton Decl.

63.    PCEJ works to build grassroots power, advocate for community-centered policies, and increase voter participation. Ex. 8 ¶ 3, Shelton Decl.

64.    PCEJ's work regarding its mission is centered on educating and assisting voters to more fully engage in the voting process and make sure Louisiana's laws support the people's engagement at the voting booth. *See* Ex. 9, Shelton Dep. at 16:01-17; Ex. 8 ¶ 5, Shelton Decl.

65.    PCEJ provides voter registration services on behalf of people with felony convictions as part of their mission to support community-driven activism and grassroots leadership development to empower citizens to address classism, racism, and other marginalization in their own lives and communities. Ex. 8 ¶ 4, Shelton Decl.; Ex. 9, Shelton Dep. at 14:14-19.

66.    Because voters with felony convictions in Louisiana are predominantly people of color, ensuring that they register is key to fulfilling PCEJ's mission. Ex. 8 ¶ 7, Shelton Decl.

67.    PCEJ primarily focuses on Louisiana's most marginalized voters, and registering voters with felony convictions is a priority for the organization. Ex. 8 ¶ 7, Shelton Decl.; Ex. 9, Shelton Dep. at 15:01-19, 113:25-114:03.

68.    PCEJ advances its mission with the support of a small full- and part-time staff, community volunteers, and a membership of nonprofit and advocacy organizations. Ex. 8 ¶ 5, Shelton Decl.

69.    PCEJ provides information on elections and voter education to hundreds of thousands of voters and eligible individuals across the state. Ex. 8 ¶ 6, Shelton Decl.; Ex. 9, Shelton Dep. at 159:11-15.

39

70. In the first three months of 2026, PCEJ hosted at least 40 events on voter education. *See* Ex. 9, Shelton Dep. at 35:08-23.

71. There is no event that PCEJ hosts that does not include voter education. *See* Ex. 9, Shelton Dep. at 78:07-17.

72. PCEJ must divert significant resources when assisting voters with felony convictions with registering to vote. Ex. 8 ¶ 10, Shelton Decl.; Ex. 9, Shelton Dep. at 104:07-105:19.

73. Because the process for registering, including getting reinstated, is more complicated for voters with convictions, PCEJ staff and volunteers must spend additional time with such voters. Ex. 8 ¶ 11, Shelton Decl.; Ex. 11 ¶¶ 19-21, Anderson Decl.; Ex. 9, Shelton Dep. at 110:09-112:18.

74. It can take two to three times as much time to assist a voter with a felony conviction with registration as a voter without. Ex. 11 ¶ 19, Anderson Decl.; Ex. 9, Shelton Dep. at 110:09-112:18.

75. PCEJ often must work with its partners at member organization VOTE to help with assisting voters who need the paperwork. Ex. 8 ¶ 16, Shelton Decl. This takes additional time and staff resources because PCEJ must reach out to VOTE to hand off the voter and make sure the VOTE team has the information they need to help the individual. Ex. 8 ¶ 17, Shelton Decl.

76. One way that PCEJ pursues its priority of registering voters with felony convictions is that they go to probation and parole offices to conduct voter registration drives. *Id.* ¶ 18.

77.    PCEJ also specifically conducts registration drives in the parishes with highest rates of felony convictions, and conduct civic engagement clinics to assist individuals in getting registered after a conviction. Ex. 8 ¶ 1, Shelton Decl.

78.    PCEJ also conducts significant outreach to voters statewide through its 11-touch program, which is one of their primary methods for registering voters. ECF 120 at 163:18-25.

79.    Through its 11-touch program, PCEJ aims to contact a universe of about 600,000 voters statewide 11 times each, through a combination of door knocking, phone calls, text messages, and more. *Id.* at 163:18-25; Ex. 8 ¶ 12, Shelton Decl.

80.    PCEJ also tables at a variety of events to engage with voters, which includes providing general voter education and specific education for folks that are formerly incarcerated. *See* Ex. 9, Shelton Dep. at 31:15-33:19, 91:15-92:25; Ex. 8 ¶ 13, Shelton Decl.

81.    This outreach is conducted by PCEJ organizers, community volunteers and paid canvassers. ECF 120 at 165:04-10; Ex. 8 ¶ 11, Shelton Decl.

82.    It is very common that those doing this outreach encounter individuals with felony convictions when making phone calls, knocking doors, etc. ECF 120 at 170:16-171:16; Ex. 11 ¶ 8, Anderson Decl.; Ex. 9, Shelton Dep. at 32:21-33:19, 23:11-24:25. Sometimes a canvasser knocks on the door of an infrequent voter, but the door is answered by someone else in their household and that individual has a felony conviction. Ex. 11 ¶ 9, Anderson Decl. other times a volunteer calls an infrequent voter, and that individual asks the volunteer about how their friend who has a felony conviction can get registered. Ex. 11 ¶ 9, Anderson Decl.

83.    Former PCEJ organizer Billy Anderson worked with individuals with felony convictions. Ex. 11 ¶¶ 3, 5, 7-13, Anderson Decl.

41

84. Mr. Anderson encountered voters who are confused about the process and spent time answering questions about obtaining the VRC and complying with the Paperwork Requirement. Ex. 11 ¶¶ 15, 19-22, Anderson Decl.

85. Eligible registrants with felony convictions that PCEJ encounters are required to provide additional documentation to prove their eligibility, including first-time registrants. *See* Ex. 11 ¶¶ 10, 16-17, Anderson Decl.

86. PCEJ organizers have observed no consistency across parishes as to whom the Paperwork Requirement is applied. Ex. 11 ¶ 17, Anderson Decl.

87. PCEJ has observed eligible voters, whose registration has not been suspended, be required to provide documentary proof of eligibility. *See* Ex. 9, Shelton Dep. at 133:04-137:06; *see also* Ex. 11 ¶ 17, Anderson Decl.

88. The inconsistent application affects all voters, regardless of whether they are being registered or reinstated. Consequently, voters are unable to distinguish between registration and reinstatement; they just know they are required to provide paperwork and seek PCEJ's help accordingly. *See* Ex. 9, Shelton Dep. at 161:25-162:22.

89. The time Mr. Anderson spent with those voters was time taken away from PCEJ's other priorities, including work with other potential voter registration applicants. Ex. 11 ¶ 25, Anderson Decl.

90. Because of the additional time it takes to talk to each voter with convictions, PCEJ speaks with fewer voters and registers fewer people at these events and while canvassing than they would if they did not have to explain the Paperwork Requirement. Ex. 8 ¶ 20, Shelton Decl.; Ex. 9, Shelton Dep. at 110:09-112:18; ECF 120 at 171:18-172:9.

91.    The additional time requirement is exacerbated by Defendant's haphazard implementation of the Paperwork Requirement, especially where non-suspended voters are nevertheless told they must comply. *See* Ex. 9, Shelton Dep. at 28:25-29:21, 130:02-135:12.

92.    Absent the Paperwork Requirement, PCEJ would be able to maximize its outreach and work with more voters, including through their 11-touch program, in furtherance of its mission. *See* Ex. 9, Shelton Dep. at 93:16-96:25; Ex. 8 ¶ 25, Shelton Decl.

93.    As a trusted resource in the community, PCEJ organizers often get questions from voter registrants with felony convictions. Ex. 11 ¶ 8, Anderson Decl.

94.    PCEJ is comprised of a small staff, refers individuals to VOTE, their close partner, for additional assistance. Ex. 9, Shelton Dep. at 46:18-47:25, 109:03-04.

95.    Even in those instances when PCEJ ultimately refers an individual to VOTE takes time to call VOTE, which is time taken away from PCEJ's other efforts and finite resources. Ex. 8 ¶¶ 16-17, Shelton Decl.

96.    PCEJ's GOTV budget and canvassing report indicate that some of the lowest canvassed rates in the parishes with the highest number of imprisoned people: Caddo, Orleans, and East Baton Rouge, reflecting the time PCEJ takes working with voters with felony convictions. Att. A, Shelton Decl.

### C.    The League of Women Voters of Louisiana

97.    The League of Women Voters of Louisiana ("The League") is comprised of two organizations, a 501(c)(3) which focuses on voter registration and education, and a 501(c)(4) which focuses on non-partisan issue advocacy. *See* ECF 120 at 126:08-13; Ex. 5 ¶¶ 2-3, Green Decl.

98.    The 501(c)(4) is also the statewide membership organization. This means that every League member, including those who are also members of parish-level League chapters or "Local Leagues," is a member of the League's 501(c)(4). The 501(c)(3) and 501(c)(4) work together to further the League's mission. *See* Ex. 13, Green Dep. at 12:15-20, 16:08-11; Ex. 5 ¶ 3, Green Decl.

99.    The League's mission is to "encourage informed and active participation in government, increase voter understanding of major public policy issues, and influence public policy through education and advocacy." Ex. 5 ¶ 5, Green Decl.

100.    The two entities "work in synergy," Ex. 13, Green Dep. at 12:19-20, to further the League's mission of registering and educating Louisiana voters. Ex. 5 ¶¶ 3, 5, Green Decl.

101.    The public views the League as one organization who performs both 501(c)(3) and 501(c)(4) work. See Ex. 5 ¶ 4, Green Decl.

102.    The League has six chapters across the state, including Caddo-Bossier, Iberia, Lafayette, New Orleans, St. Tammany, and Tangipahoa. Ex. 13, Green Dep. at 18:22-19:04.

103.    The League has about 250 members statewide. Ex. 5 ¶ 3, Green Decl. This includes all of the members of Local Leagues, who are also members of the state League's 501(c)(4), and 22 members-at-large who are part of the state League but not members of a Local League. *Id.*

104.    All Local League members are also members of the State League's 501(c)(4). *See* Ex. 13, Green Dep. at 12:15-20, 16:08-11; Ex. 5 ¶ 3 Green Decl.

105.    The League ensures that all eligible individuals have the information needed to vote, with a particular focus on traditionally underrepresented and underserved communities. Ex. 5 ¶ 5, Green Decl.

106.    The League's focus on traditionally underrepresented and underserved communities includes voters impacted by the criminal legal system, people of color, and new

44

registrants. Ex. 5 ¶ 5, Green Decl.; s*ee also* Ex. 13, Green Dep. at 29:16-25 (stating that the League's core mission is voter registration and education, including the registration and education of voters with felony convictions).

107.    The League's voter registration and education services, including for people with felony convictions, are a core part of their mission. Ex. 5 ¶ 5, Green Decl.

108.    Removing technical barriers to voting for people with felony convictions is a core part of the League's mission. Ex. 5 ¶ 5, Green Decl. That is why the League supported Act 636 and Act 127. *See* ECF 120 at 127:23-128:24; *see also* Att. A, Green Decl.

109.    League members regularly engage in voter registration work for voters with felony convictions. Ex. 5 ¶¶ 6-8, Green Decl.; Ex 12 ¶¶ 5-6, Markle Decl.; Ex. S-1; Ex. 13, Green Dep. at 16:22-17:17.

110.    In Iberia Parish, League members have worked with the local probation and parole office to register voters with felony convictions. Ex. 12 ¶¶ 7-9, Markle Decl.

111.    The League also provides voter education specific to voters with felony convictions. Ex. 5 ¶ 9, Green Decl.; Ex. 12 ¶¶ 5-9, 13, Markle Decl.; Att. D, Green Decl.

112.    In the League's experience, confusion about the Paperwork Requirement creates a barrier to voter education and registration, so people with felony convictions will turn to the League for assistance. Ex. 5 ¶¶ 6-11, Green Decl.; Ex. 12 ¶¶ 5-6, Markle Decl.

113.    The League, often working with VOTE, will guide individuals in complying with the Paperwork Requirement. Ex. 5 ¶¶ 6-8, Green Decl.; Ex. 12 ¶¶ 6-8, Markle Decl.; Ex. 13, Green Dep. at 56:01-13.

114.    The League is an entirely volunteer-run organization, and it has limited resources to spend on its voter engagement work. Ex. 5 ¶ 6, Green Decl.

45

115. Educating individuals with felony convictions on the paperwork requirement and assisting them obtain the paperwork and register to vote requires the League to spend time and resources that might otherwise be spent on registering and engaging more voters. Ex. 5 ¶¶ 6-11, Green Decl.; Ex. 12 ¶¶ 5-13, Markle Decl.; Ex. S-1.

116. The Paperwork Requirement hinders the League's ability to fulfill their mission because assisting voters with complying with this unlawful requirement requires substantial member time, money, and other resources, reducing the overall number of eligible voters they can assist and diverting resources from their other voter education and engagement work. Ex. 5 ¶¶ 6-11, Green Decl.; Ex. 12 ¶¶ 6, 9-10, 13, Markle Decl.; Ex. 13, Green Dep. at 16:22-17:17; 81:20-82:22.

### D.    Defendant Landry

117. Secretary of State Landry is the Chief Elections Official and is responsible for ensuring uniform application of the Election Code and federal law, including the NVRA. ECF 215 at 77 (citing La. R.S. 18:18(A)(1)-(6)).

118. The Secretary of State provides guidance to registrars on how to implement the suspension and reinstatement statutes. *See* Ex. 1, Hadskey Dep. Ex. 2 ("The Secretary of State is again providing direction and assistance on the procedures for felon registration, suspension, and reinstatement."); Ex. 1, Hadskey Dep. at 36:22-25 ("Q: And does your role include providing guidance to the Registrars of Voters? A: Yes."); ECF 258-7 ¶ 16.

119. This includes promulgating the Felony Procedures which instruct registrars on how to suspend and reinstate voters. *See* Ex. 1, Hadskey Dep. Ex. 2; Ex. 1, Hadskey Dep. at 36:22-37:14 ("Q: Does that include written guidance such as the felony procedures? A: Yes."); ECF 258-7 ¶ 19.

120. Defendant provides an annual training to the registrars. ECF 258-7 ¶ 17.

121. Registrars are simply "ministerial," and follow the direction of the Secretary of State. Ex. 26, DiMarco Dep. at 19:05-08 ("[ROV offices] are ministerial. We follow the direction of the Secretary of State and the Commission of Elections.").

## III.    Plaintiffs' NVRA Notice Efforts

122. On October 22, 2020, through counsel, Plaintiff VOTE provided the Secretary of State with written notice regarding the NVRA violations created by requiring additional documentation of suspended, eligible voters. *See* Att. O, Henderson Decl.

123. The October 22, 2020 Notice Letter specifically notified the Secretary of State that the Paperwork Requirement violated the NVRA's prohibition on additional documentation, and that multiple aspects of its implementation violated the NVRA's mandate that election programs and activities be "uniform" and "nondiscriminatory." *Id.*

124. The October 22, 2020 letter resulted in conversations between VOTE and Defendant that were never resolved, Ex. 1, Hadskey Dep. Ex. 23, as well as Act 127. Ex. 2 ¶ 40, Henderson Decl.

125. Plaintiffs PCEJ and the League sent a sent a letter on August 26, 2022 to the Secretary of State, notifying that the documentary proof of eligibility requirement for "reinstatement" of registration for people with felony convictions violates the NVRA. *See* Att. B, Green Decl.

126. On September 22, 2022, the Secretary of State sent Plaintiff a letter in response to their August 26, 2022 Notice Letter. Atts. B & C, Green Decl.

127. On October 28, 2022, Plaintiffs Power Coalition and the League sent the Secretary of State another notice letter. Att. C, Green Decl.

47

128.    On March 8, 2023, the Secretary of State, through counsel, sent an additional letter to Plaintiffs requesting certain follow up information about affected voters and clarifying the contents of Plaintiffs' October 28, 2022 Notice Letter. Ex. 14.

129.    On March 31, 2023, Plaintiffs VOTE, Power Coalition, and the League sent a response to the Secretary of State's March 8, 2023 follow up letter. Ex. 15.

130.    On May 31, 2024, VOTE, PCEJ, and LWVLA sent a notice letter to Louisiana Secretary of State Landry alleging violations of the NVRA under "52 U.S.C. §§ 20505(a)(1), (2); 20507(a)(1), (5), 20507(b)(1); and 20508(b)(1), (2)(A), (b)(3)." Att. P, Henderson Decl.

131.    On August 30, 2024, the Secretary of State (through counsel) responded to VOTE, PCEJ, and LWVLA's May 31st notice letter. Att. P, Henderson Decl.

132.    Defendants did not take action to address the alleged NVRA violations. ECF 215 at 56 ("Defendant had the opportunity to correct any violations during the 98 days between the notice and amended FAC and did not do so.").

133.    On September 6, 2024, VOTE, PCEJ, and LWVLA filed their First Amended Complaint in the instant action. ECF 168 at 38-42.

**IV.    Louisiana's Registration Provisions and Procedures**

134.    An eligible individual may register to vote for the first time in Louisiana by mail, online, or in person at the office of a parish registrar of voters. La. R.S. 18:103; 115; 115.1.

135.    An individual is eligible to vote in Louisiana if they are 18 years of age; 2) a United States citizen; 3) a resident of Louisiana; and 4) if convicted of a felony, are not under an order of imprisonment or have not been incarcerated pursuant to the order within the last five years. La. R.S. 18:101; 102.

136.    Once registered, an individual remains on the active voter rolls unless their registration is cancelled for cause or suspended. *See* La. R.S. 18:176; 191.

137.    An individual seeking to register may use the National Voter Registration Form ("Federal Form"), R.S. 18:115(A), or the Louisiana Voter Registration Form ("State Form"), R.S. 18:104.

138.    All voter registration files are maintained in in the State's list maintenance system, the Election and Registration Information Network ("ERIN"). ECF 258-7 ¶ 13.

139.    A new registration may be initiated when an individual registers who (1) has never registered to vote in the State of Louisiana, La. R.S. 18:101; (2) has never registered before in the parish where they reside, La. R.S. 18:108; (3) changed their name due to marriage, La. R.S. 18:111(B); or (4) changed their contact information or party affiliation. Ex. 1, Hadskey Dep. at 119:18-24.

140.    The Election Code also requires a new registration if an individual's registration is cancelled. La. R.S. 18:199.

141.    An individual's registration is typically cancelled when they have failed to return an address confirmation notice and failed to vote in two federal elections. La. R.S. 18:191.1; 193; 198.

142.    An individual's registration may also be cancelled if they permanently move outside of the state, La. R.S. 18:193, or die. La. R.S. 18:173; 176. *See also* Ex. 1, Hadskey Dep. at 44:19-45:13. If the registration is cancelled because the individual moved out of state, they will be new registrants should they move back to Louisiana. La. R.S. 18:199.

143.    A registrant who moves parishes will have their registration in their previous parish cancelled upon registration in their new parish. La. R.S. 18:108; Ex. 1, Hadskey Dep. at 122:20-23.

144.    Very few individuals leave prison and do not have to update their contact information, especially individuals who have been in prison for long periods of time. Ex. 1, Hadskey Dep. at 120:01-04.

145.    Many individuals who leave prison will be new registrants. Ex. 1, Hadskey Dep. at 120:01-04; *See* Ex. 2 ¶¶ 14, 24, Henderson Decl.

146.    Many individuals move to a new parish after being released or within the first five years of their parole. *See* Ex. 2 ¶ 14, Henderson Decl. Others may be incarcerated out of state, then return to Louisiana upon release. *See* Ex. 23.

147.    Voter registrants who change their name by virtue of marriage may have to submit a new registration form in order to remain an active registrant. La. R.S. 18:111(B).

148.    Voter registrants who change their party affiliation may have to submit a new registration in order to vote as a member of that party. La. R.S. 18:107.

149.    When an individual gets convicted of a felony but has never registered before in Louisiana, the individual should be able to register to vote upon becoming eligible: that is, when they have been finally discharged from their sentence, or if five years have passed since their incarceration. Ex. 1, Hadskey Dep. at 100:24-101:05, La. R.S. 18:176; 177. That individual should only need to submit a new voter registration application like any other voter. Ex. 1, Hadskey Dep. at 79:19-24; ECF 258-13 at 2.

*First-Time Registrants*

150.    Under Louisiana law and according to Defendants' guidance, individuals with prior felony convictions are not required to provide documentation of their eligibility if they are

50

registering to vote for the first time. Ex. 1, Hadskey Dep. Ex. 2 at SOS025072; La. R.S. 18:102; ECF 258-13 at 2 ("Individuals who are registering to vote for the first time are not required to appear in person or to provide documentation regarding a felony conviction.").

151.     Multiple registrars of voters did not distinguish between suspended voters and new registrants, testifying that any voter with a felony conviction would be required to provide the paperwork or expressing confusion about this difference. Ex. 20, Sibley Dep. at 52:02-25 (testifying that first-time registrants who show up on the felon list are required to provide the documentation); Ex. 26, DiMarco Dep. at 81:09-82:11 ("Q: If they're registering for the first time? A. Yes. Yes. So anyone who is – has a felony conviction and is trying to register needs to provide that document? A: That's my understanding, yes."); Ex. 6, Wall Dep. at 54:03-09 ("Q: Do first-time registrants with past felony convictions get that 21-day letter? A: If they appear on this list, yes, they would. Q: And then they have to come into the office and provide that DPSC paperwork; is that right? A: That's correct."); Ex. 28, Deposition of Lauren Jones (St. Landry Registrar of Voters) at 24:12-20 ("We give [the first-time registrants] the same information as we would that had a prior conviction, was canceled . . . . Q: And so you treat those two type of voters the same. Is that right? A: Yes, if we're notified with a first-time that they were a felon.").

152.     Because the ineligible list only updates every 30 days, individuals who register within 30 days of becoming eligible after a felony conviction may still be marked as ineligible. *See* Ex. 1, Hadskey Dep. at 249:12-19. If such individuals attempt to register to vote within that time period, they will be improperly marked as needing to provide paperwork despite the fact that they are first-time registrants and their registration will be rejected. Ex. 16 ¶¶ 4-5, 7, 10, Pittman Decl.; Ex. 4 ¶¶ 13-22, Amos Decl.

153. Despite being first-time registrants, such individuals are marked as suspended and then are required to provide paperwork before their registration is accepted. ECF 258-13 at 7 (noting that registrars should "[c]hallenge all of your voters found on the Felon Report" without checking whether they are disqualified); Ex. 16 ¶¶ 3-10, Pittman Decl.; Ex. 4 ¶¶ 13-22, Amos Decl.

154. As such, some individuals who are first-time registrants are improperly required to provide documentation of their eligibility. Ex. 16 ¶ 21, Pittman Decl.; Ex. 4 ¶ 13, Amos Decl.

155. VOTE has at least two members who were first-time registrants who were improperly required to provide paperwork of their eligibility. Ex. 16 ¶¶ 7, 15, Pittman Decl.; Ex. 4 ¶ 13, Amos Decl.; ECF 260-3 at SOS025165.

156. VOTE's assistance to these individuals meant they became registered and did not miss elections. Ex. 16 ¶ 41, Pittman Decl.; Ex. 4 ¶¶ 19, 24, Amos Decl.

**Defendant's Felony Procedures**

157. Defendant memorializes its instructions to registrars for complying with their understanding of R.S. 18:177's Paperwork Requirement in Defendant's Felony Procedures, which have changed over time. *See* Ex. 1, Hadskey Dep. at 37:01-14.

158. The Felony Procedures were first promulgated to interpret Act 636, ECF 258-8, and not updated again until after the enactment of Act 127, upon inquiries from VOTE and other individuals. Ex. 1, Hadskey Dep. at 139:25-140:18; ECF 258-9; Atts. N & O, Henderson Decl.; Att. B, Green Decl.

159. The September 21, 2022 Felony Procedures did not explain how to process applications in ERIN, nor did it explain that people on probation only are not subject to suspension under R.S. 18:177. ECF 258-9.

52

160. The September 21, 2022 Felony Procedures specifically stated that "[n]o additional documents are required to register to vote for new registrants who may have had prior felony convictions." ECF 258-9 at 1.

161. Defendant promulgated an updated Felony Procedures document on May 12, 2023. ECF 258-10.

162. The May 12, 2023 Felony Procedures stated "[i]f the individual was not incarcerated pursuant to the order of imprisonment, you do not send a 21 day challenge. Make a note on the record that the sentence was not imposed or the sentence was suspended." *Id.* at 2.

163. The May 12, 2023 Felony Procedures also said to "[c]hallenge all convicted felons listed on the ineligible list" without any directive to further research to confirm whether an individual became eligible since the issuance of the monthly report, or any individual who was sentenced to probation only but still present on the Suspended List. *Id*.

164. The May 12, 2023 Felony Procedures discuss R.S. 18:177 implementation and refer to "individuals whose voting rights have been suspended in any parish for a felony procedure" without denoting whether the individual's registration is new or a reinstatement. *Id.*

165. On August 30, 2024, Defendant added a definition for first-time registrants: "an individual who has never been registered to vote in any parish in Louisiana." ECF 258-11; Ex. 1, Hadskey Dep. Ex. 4.

166. The Felony Procedures were updated again in December 2024, noting that not all individuals with felony convictions were ineligible. ECF 258-12; Ex. 1, Hadskey Dep. at 99:07-101:05.

167.    The most recent updates to the Felony Procedures maintain the same definition for first-time voter registration and include an instruction to "[p]rocess first-time registration applications as you would any other registration application."  ECF 258-13.

168.    The February 23, 2026 Procedures define the Paperwork Requirement as requiring the VRC or "[o]ther documentation that is signed by a corrections official, a judge, a court official or other appropriate government official and establishes that the individual" is eligible to vote. *Id*. at 4.

### Louisiana's Suspension Process

*i.    Initiating the Suspension Process: 21-Day Challenge Letters*

169.    There are at least two "sources for determining whether a registered voter should be challenged for a felony conviction": The "Felon Report" and the "Felon Notice." ECF 258-13 at 6. A voter is "challenged" for a felony conviction as part of initiating the suspension process. Ex. 24, Reed and Peek Dep. at 59:02-06.

170.    The "Felon Report" is developed using a "list of ineligible felons" from the DPSC. ECF 258-13 at 6. As part of the voter roll maintenance program operated by Defendant Landry, the Secretary's office works with the DPSC, other convicting authorities, and the registrars to maintain a comprehensive list of 1) those individuals who are ineligible to vote because of a felony conviction ("the Ineligible List"), and 2) those individuals whose voter registrations have been suspended because of a felony conviction ("the Suspended List"). *See* Ex. 1, Hadskey Dep. at 19:23-20:15, 22:17-23:5, 45:06-10.

171.    The List prepared by DPSC and shared with Defendant is known as the "Ineligible List." *See* ECF 258-13.

54

172.     This "Ineligible List" is a database of individuals that the state knows to be ineligible to vote because of a felony conviction. Ex. 1, Hadskey Dep. at 22:13-23:05; *See* Ex. 3, Delouche Dep. Ex. 3 at PL25206.

173.     Act 127 clarified that this list from the DPSC only contains people who are currently ineligible to vote. *See* 2021 La. Act No. 127 (H.B. 378).

174.     In August 2022, the DPSC issued a regulation requiring that it send information to the Secretary of State that identifies 1) individuals who are incarcerated, 2) individuals who have been on parole or probation for less than five years, and 3) individuals under an order of imprisonment for an election crime. Ex. 3, Delouche Dep. Ex. 4 at PL25205-06.

175.     Defendant uses the Ineligible List to produce the Felon Report, which is a monthly list of all ineligible individuals that Defendant uploads to ERIN for the parish registrars to access. Ex. 1, Hadskey Dep. at 20:16-21:14, 152:02-17.  Defendant Landry compiles these matches into a "Felon Report" for the parishes which contains a list of individuals within each parish that appear on the "Ineligible List." *See* ECF 258-13 at 9.

176.     The Felon Report notates whether an individual was sentenced to prison or supervision. *See, e.g.*, ECF 259-16 at 9 (notating that Rosanne Hayles Robinson was not sentenced to prison).

177.     The Felon Report has a one-month lag, such that individuals who become eligible in between the periods that the Felon Report is updated, will show as subject to the Paperwork Requirement. Ex. 1, Hadskey Dep. at 249:12-19.

178.     When a registrar receives a Felon Report, the registrar is instructed to verify that the individual listed is a registered voter within their parish (using available demographic information). ECF 258-13 at 7.

55

179.    According to Defendant, registrars should "work the list"—the Felon Report—to research whether an individual is actually ineligible to vote. Ex. 1, Hadskey Dep. at 47:19-48:11.

180.    If the registrar confirms they are the same person, they must issue a "21-day Challenge Letter" to the voter's address on file. ECF 258-13 at 7.

181.    Registrars are instructed to "[c]hallenge all of [their] voters found on the Felon Report." ECF 258-13 at 7.

182.    The "Felon Notice" is a source for determining when a registered voter should be challenged for a felony conviction. ECF 258-13.

183.    "Felon Notices" are notices of individuals under an order of imprisonment for conviction of a felony, and can be received by the registrars from U.S. Attorneys, federal or state courts, or clerks of court. ECF 258-13.

184.    Unlike voters on the "Felon Report," registrars are instructed to review the notice for information as to the individual's sentence in order to determine whether they should be suspended. ECF 258-13.

185.    ROVs are instructed to contact "the jurisdiction of conviction" or Defendant's office if they have any questions regarding a Felon Notice. ECF 258-13 at 8.

186.    If the ROV determines, based on the Felon Notice, that the individual is subject to challenge, then they will issue a 21-Day Challenge Letter. ECF 258-13.

187.    This "21-Day Challenge Letter" is a template developed by the Secretary of State. *See* Ex. 1, Hadskey Dep. at 23:22-24:16, 60:14-61:01. The most recent version was revised in July 2023. Ex. 29; Ex. 30.

188.    The letter does not explain who is an "appropriate corrections official." *See, e.g.*, ECF 260-2 at SOS025160 (merely stating recipient must appear "in person at the office of the registrar with a voting rights certification form from the appropriate corrections official").

189.    The letter states: "Dear Registrant: This office has received information that you have been convicted of a felony and are under an order of imprisonment. In order to register to vote in Louisiana, the law requires that you appear **IN PERSON** at the office of the registrar **within 21 days** after the date on which this notice was mailed to show proof why your voter registration should not be suspended. If your registration is suspended for conviction of a felony, you may be reinstated by appearing in person at the office of the registrar with a voting rights certification form from the appropriate corrections official showing that you are either no longer under an order of imprisonment, or if you are still under such an order, that you have not been incarcerated pursuant to that order within the last five years and you are not under an order of imprisonment for felony conviction of election fraud or any other election offense pursuant to R.S. 18:1461.2." *See* Ex. 30 at SOS004762.

190.    If an individual fails to appear in 21 days, they may receive a notice of suspended registration. ECF 258-13 at 8-9.

191.    The ROV must notify the individual whose registration is suspended "immediately" of the suspension and reasons for it. *See* ECF 258-13.

192.    If an individual receives a notice of suspension or other letter from a parish registrar indicating that they must appear in person to provide documentation to register or reinstate their registration, that individual's registration will remain suspended until they appear in person with the appropriate documentation. *See, e.g.*, ECF 259-19.

57

193. Although the voter is "suspended," parish registrars mark the individual's registration as "cancelled" in ERIN. *See* Ex. 1, Hadskey Dep. at 302:10-15.

194. It is the Defendant's position that this category of voters marked "cancelled" in the system are not cancelled but suspended voters. *Id.*

195. The most recent guidance to parish registrars states "[i]f an individual applies for registration, but that same individual's voter registration is currently suspended for conviction of a felony in any parish, that individual is actually applying for reinstatement not registration." ECF 258-13 at 2.

196. ERIN contains a record of every individual in Louisiana who is currently suspended because of a felony conviction. Ex. 1, Hadskey Dep. at 45:06-10. When downloaded, these records result in the Suspended List, which is accessible to both Defendant and parish registrars. *Id.* at 48:12-20.

ii. *Attempted Registrations of Already Suspended Voters*

197. Many individuals with felony convictions who try to register are suspended and do not know it, or do not understand what that means. *See* Ex. 2 ¶¶ 12, 33, Henderson Decl.

198. When these individuals submit registration forms, ROVs are instructed to "[c]ontact the individual in writing" that they are suspended and inform them of the reinstatement process. ECF 258-13 at 2-3. Defendant provides template "suggested" language to use in this correspondence. *Id.*

199. The "21-day Challenge" letter should not be sent to individuals seeking reinstatement. *Id.* at 8-9.

200. Even though Defendant instructs the ROVs to only use the "21-day Challenge" letter for challenging registered voters who appear on the Felon Report, *id.* at 6, registrars

58

sometimes use this letter for individuals who are already suspended and are trying to register, or be reinstated, to vote again. Ex. 18.

201.    This means that already suspended voters who submit registration forms oftentimes receive the 21-Day Challenge letter, which states the registrar "has received information that you have been convicted of a felony and are under an order of imprisonment," and asks recipients to "show proof why your voter registration should not be suspended." Ex. 30 at SOS004762. But this is not accurate as to a voter who is no longer under an order of imprisonment, not on parole anymore, or who is already suspended, and leads to confusion by the individual. *See* Ex. 4 ¶ 6, Amos Decl.

*ii. The Reinstatement Processes*

202.    To reinstate their existing registration, such an individual must appear in-person at the office of the registrar with a certified copy of the Voter Eligibility Certificate (otherwise known as the "Voting Rights Certificate," "VRC," or "VEC"), or other documentation demonstrating that the individual's felony conviction is not disqualifying. ECF 258-13 at 4 ("Acceptable Forms of Documentation for Reinstatement").

203.    While in suspended status, a person is not an "active" registrant. *See* Ex. 1, Hadskey Dep. at 77:03-07 ("Q: And then does a suspended voter show up on the active voter roles? . . . A: No, they do not."); *Id.* at 148:07-24.

204.    The registration will remain "suspended," even after the individual becomes eligible to vote again, until the person completes the "reinstatement" process. *See* La. R.S. 18:177(A)(1); *see* Ex. 1, Hadskey Dep. Ex. 2 at SOS025072 (noting that a suspended voter "will need to appear in person and provide proper documentation for the reinstatement to be processed").

59

205.    Once a previously registered voter is "suspended" due to a felony conviction, they must complete the "reinstatement" process to become an active voter again. *See* ECF 258-13 at 3.

206.    Suspended voters are no longer on the active voter rolls and cannot vote. Ex. 1, Hadskey Dep. at 78:03-07.

207.    In order to be reinstated, a suspended voter must appear in-person at the parish registrar's office and provide documentation from the appropriate corrections official showing they meet the eligibility criteria of La. R.S. 18:102(A). *See* La. R.S. 18:177(A)(1).

208.    Defendant requires that individuals seeking reinstatement must do so prior to Louisiana's in-person voter registration deadline in order to vote in the subsequent election (also known as "30-day close of books"). *See* ECF 258-13.

209.    If the individual appears and provides documentation after the 30-day close of books, they will not be able to vote in the next election and will not be added back to the voter rolls until after the election. *See* ECF 258-13 at 4. *See also* Ex. 1, Hadskey Dep. at 78:11-79:04.

210.    Acceptable forms of documentation for reinstatement include a VRC issued by an official within the Louisiana Department of Corrections. *See* ECF 258-13 at 4. Alternatively, parish registrars may accept other documentation "signed by a corrections official, a judge, a court official or other appropriate government official" that establishes that the individual meets the eligibility criteria of La. R.S. 18:102(A) to vote. *See id.*

211.    The VRC may only be obtained from the DPSC or one of its parish offices, either upon final discharge or upon request at a local parole and probation office. ECF 258-13 at 2.

212.    To satisfy the Paperwork Requirement through a VRC, the suspended voter must provide an original version of the VRC form, signed and dated with the official seal of the Department of Public Safety and Corrections. *See* Ex. 1, Hadskey Dep. at 157:08-158:11.

60

213.    In Plaintiff VOTE's experience, individuals must go to the parole and probation office in person in order to receive a VRC. Ex. 4 ¶ 7, Amos Decl.; Ex. 3, Delouche Dep. at 29:04-16 ("Unless they can verify who they are," individuals seeking the VRC have to "go in person to the district office.").

214.    Because parole and probation offices only provide the VRC in person, fulfilling the Paperwork Requirement requires at least one in-person transaction (to the registrar's office), and usually two (to the registrar's office and the DPSC office) or more if either transaction is initially unsuccessful. See Ex. 2 ¶ 23, Henderson Decl.; ECF 121 at 61:19-62:01.

215.    The DPSC does not inform individuals who are under their supervision outside of incarceration when they become eligible to vote (after five years from when incarcerated if not convicted of an election offense), nor automatically issue VRCs to such newly eligible individuals. See Ex. 3, Delouche Dep. at 94:12-95:05 ("Q: [I]s there a trigger at five years which you automatically issue a VRC to them? A: No. The only time that we automatically issue a VRC is upon discharge or closure.").

216.    The DPSC issues a VRC to all individuals released from their physical custody pursuant to full term completion or when discharged from the supervision of the Division of Probation. See Ex. 3, Delouche Dep. Ex. 3 at PL25209.

217.    While all suspended voters must present documentation from a state official to be "reinstated," certain disabled individuals are granted an exemption from appearing in-person at the parish registrar's office. See Ex. 1, Hadskey Dep. Ex. 2 at SOS025075; La. R.S. 18:177(A)(2). Instead, such individuals may submit the paperwork required for reinstatement by "mail, facsimile, commercial carrier, or hand delivery." See La. R.S. 18:177(A)(2).

61

218.    In order to be reinstated, the individual often must submit a new voter registration application. Ex. 1, Hadskey Dep. at 119:17-122:10 (detailing the need to submit a new registration form for a change of address, phone number, party affiliation, etc.); Ex. 1, Hadskey Dep. Ex. 7 at SOS04400. This is not "explicit[ly] required by the election code." Ex. 1, Hadskey Dep. at 118:21-24. The only exception for this are individuals whose information is completely unchanged since their last registration, prior to suspension. *See* Ex. 1, Hadskey Dep. at 119:22-24 ("If they have a change in their registration, then they should submit a registration application.").

iii. *Louisiana's Data Sharing Statutes, Regulations, and Agreements for Maintaining the Ineligible and Suspended Lists*

219.    Defendant has entered a Memorandum of Understanding with the DPSC to enable Defendant to have electronic access, including access to personally identifying information, to the "Ineligible Lists" generated by DPSC. *See* Ex. 31; Ex. 1, Hadskey Dep. at 162:07-163:16.

220.    The most recent draft of the MOU was never finalized. Ex. 1, Hadskey Dep. at 206:13-20.

221.    The clerk of a state court in Louisiana must record each criminal conviction of a felony for which there is an order of imprisonment and for which the person is incarcerated pursuant to that order, along with the convicted individual's "name, aliases, date of birth, sex, and address." *See* La. R.S. 18:171(A).

222.    Sharing of the parish-by-parish "Felon Report" occurs "monthly" as a matter of practice, *see* ECF 258-13 at 6. The statute requires it occur "on no less than a quarterly basis." *See* La. R.S. 18:171(C).

223.    When an individual with a felony conviction becomes eligible to vote again, they are no longer included in the "Ineligible List" provided by DPSC. *See* Ex. 39, Deposition of Melanie Gueho (DPSC) at 84:18-85:07. In other words, the "Ineligible List" is continuously

62

updated each month to reflect all persons under Louisiana DPSC custody or supervision who are ineligible to vote at the time of the list's creation, with a lag of up to 30 days. *See id.*

224. Registrars of voters can seek additional information from the sheriff and district attorney regarding an individual's conviction or eligibility status. *See* La. R.S. 18:171(B)(1), the DPSC Secretary, *see* La. R.S. 18:171(B)(2), or the United States Attorneys, *see* La. R.S. 18:171.1(C).

225. Registrars can ask the sheriff and district attorney regarding a voter's conviction status, *see* La. R.S. 18:171(B)(1) and the DPSC Secretary, *see* La. R.S. 18:171(B)(2), if they need additional information to determine whether an applicant meets the criteria for reinstatement.

226. Parish registrars can also contact clerks of court for assistance in determining an applicant's eligibility to vote after a felony conviction. Ex. 6, Wall Dep. at 55:18-55:24 ("Q: How would you receive that information [about eligibility] from the Clerk of Court? A: A telephone conversation. Q: And you would initiate that conversation if you had a question about eligibility; is that right? A: Correct.").

227. Likewise, Defendant and parish registrars receive information on federal felony convictions for which there is an order of imprisonment and for which the person is incarcerated pursuant to that order. *See* Ex. 6, Wall Dep. at 55:18-55:24; La. R.S. 18:177.1, ECF 258-13 at 6-8. ROVs can also request additional information from the United States Attorney, who "shall" provide information "concerning the identity of the offender and the offense of which the offender was convicted." *See* La. R.S. 18:171.1(C); Ex. 6, Wall Dep. at 55:18-55:24.

228. Registrars of voters receive information beyond the "Felon Report" from Defendants to help them determine whether someone has been disqualified by a felony conviction. *See* Ex. 6, Wall Dep. at 55:18-24 (testifying that there are "other mechanisms" that can be used to

63

determine someone's eligibility after a felony conviction, including "reports sent to the Secretary of State's office," especially for federal felony convictions, which are then forwarded to the registrars).

229.    Louisiana also makes efforts to track felony convictions in other states for current Louisiana residents. Ex. 1, Hadskey Dep. at 52:17-53:09. The state has entered at least six memoranda of understanding with other states to share voter registration data. *See id.*

230.    Parish registrars will initiate the process of suspending voters when they are notified that a registrant in their parish has an out-of-state felony conviction. *See id.* at 175:15-176:4.

231.    The VRCs can only speak to information that DPSC has in its database, and thus voters with out-of-state or federal felony convictions who are not in DPSC custody may not receive a VRC, since DPSC may only provide the VRC to those individuals who have previously been under their supervision. See Ex. 3, Delouche Dep. at 86:09-18 ("A: Yes. So if somebody's – whenever we issue the voter certification letter, the voter's -- the VRC, we're verifying that according to our records that he is eligible, he doesn't have anything with the State of Louisiana. We have no – no control over any other one. So we would issue our letter. And that's on the Secretary of State to determine anything else outside of that."); *id.* at 87:04-15 ("Q: And so DPSC is not responsible for confirming eligibility as to federal -- . . . Q: Okay. And what about out of state convictions. A: That's mentioned in here as well. Q: Yes. A: Yeah. Same. We can only confirm what we have inside the state.").

232.    For individuals who are convicted outside of Louisiana but supervised in Louisiana pursuant to an interstate compact, the DPSC has information on these individuals and can issue VRCs to such persons who meet the state's eligibility criteria. *See* Ex. 3, Delouche Dep. at 93:02-

12. For the individuals living in Louisiana with an out-of-state felony conviction for which DPSC is handling post-release supervision, the State has knowledge of the individual's eligibility to vote and can issue them VRCs. *See* Ex. 3, Delouche Dep. at 92:02-21.

233.    The Secretary of State's office also regularly provides information or guidance regarding whether an individual should be suspended, whether a conviction is disqualifying, reinstatement procedures, and other aspects of the felony disenfranchisement process. *See* ECF 258-13 at 4, 8 (directing ROVs to contact Defendant with questions); *see, e.g.*, Ex. 1, Hadskey Dep. at 36:22-38:17 (describing guidance provided to registrars).

*iv.    Voters Who Were Never Incarcerated Pursuant to the Order of Conviction, Including Probation-Only Voters*

234.    Individuals who are convicted of a felony but are not sentenced to actual confinement, and never serve time in prison, never lose the right to vote in Louisiana. *See* La. R.S. 18:102(A)(1)(b) ("[A] person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote[.]").

235.    If these "probation-only" individuals were registered before their conviction, they do not become ineligible under Louisiana law, as clarified by Act 127. *See* ECF 256-8, § 1 ("'incarcerated pursuant to the order' means actual confinement in a correctional facility pursuant to the order of imprisonment"); Ex. 1, Hadskey Dep. at 156:19-157:17 ("Then if they're under an order of imprisonment, but they were not incarcerated, then they are allowed to present the certificate and be reinstated[.]").

236.    If a new registrant, and as a "probation-only" voter following the enactment of Act 127, Louisiana law does not require them to submit the VRC or any other documentation proving their eligibility. See ECF 256-8.

237.    Prior to Act 127, such individuals did lose the right to vote and if they were registered at the time of their conviction, their registrations were suspended. Ex. 1, Hadskey Dep. at 307:13-25.

238.    After Act 127 went into effect in February 2022, those voters whose sentence did not include a period of incarceration should not be suspended and therefore should not have to provide the paperwork in order to for their registration forms to be accepted. ECF 258-13 at 7 ("If the sentence does not include a period of incarceration, do not challenge. . . . If the offender was ordered to serve probation only (no time in prison or jail), do not challenge.").

239.    Despite Act 127 going into effect in February 2022, many voters who were not sentenced to a period of incarceration, including probation-only voters, continue to be required to provide paperwork showing their eligibility in order for their registration forms to be accepted. ECF 259-8; ECF 259-9; ECF 259-4; ECF 259-4; ECF 259-11; ECF 257-14; ECF 259-21; ECF 259-22; ECF 259-10; ECF 257-14; ECF 259-12; ECF 257-14; ECF 259-14; ECF 260-5; ECF 259-15; ECF 259-16; ECF 259-17; ECF 259-18; ECF 259-19; Ex. 1, Hadskey Dep. at 309:5-311:23.

240.    Those people whose registrations were suspended prior to Act 127 for convictions in which they were never subject to actual incarceration remain on the Suspended List. Hadskey Dep. at 307:17-308:13 ("If [a probation-only voter] were suspended prior to 2021 and Act 127, they still need to go into the Registrar's office and provide information saying that they are eligible" because they are still on the suspended list.). Defendant has not clarified that these individuals should not have to provide additional documentation to register to vote. *See* ECF 258-13 (no mention of people who were not sentenced to actual confinement before Act 127's enactment).

66

241.    As such, "probation-only" voters who received convictions before Act 127 are currently marked as suspended in the databases used by the ROVs to process registrations. *Id.*; *see e.g.*, ECF 259-3; ECF 259-4 (showing voter, Monique Canada, suspended after a probation-only felony in 2018, attempted to register in October 2024, and who became reinstated after providing new voter registration form and VRC in November 2024).

242.    However, even after Act 127, there remains confusion among ROVs about whether "probation-only" voters should be suspended and if they are required to provide the paperwork in order for their registrations to be accepted. *See* Att. L, Henderson Decl. at PL0232 (finding half of parishes did not understand probation-only voters are able to register, and that a majority of parishes thought probation-only voters needed to provide paperwork from the Department of Corrections); Ex. 28, Jones Dep. at 46:04-15 ("Q: Is a person eligible to register to vote if they had just been sentenced to probation and never sentenced to incarceration? . . . A: No. We don't allow that, and if they say, well they said that I could still register to vote, they still have to go to probation and parole to provide us with some type of documentation.").

243.    As part of its white paper, "No Surrender, No Retreat," VOTE surveyed the 64 parish registrars to determine their understanding of the Paperwork Requirement in the wake of Act 127. Att. L, Henderson Decl.; Ex. S-3.

244.    Of the 48 parishes that responded to the survey, only 23 correctly understood that people who were not sentenced to actual confinement could register to vote. Att. L, Henderson Decl.; Ex. S-3.

245.    At least 14 parishes stated that individuals who were never sentenced to actual confinement needed to comply with the Paperwork Requirement. Ex. S-3.

246. The survey also indicated that dozens of parishes require documentation from all people with felony convictions, regardless of their suspension status. Ex. S-3.

247. Example parishes that required documentation of both first-time registrants and "suspended" voters: Caddo, Jefferson, Ouachita, Terrebonne, and St. Charles. ECF 257-14.

248. When ROVs receive notification of a federal felony conviction, they do not necessarily review the accompanying sentencing documents to see whether the individual was actually sentenced to incarceration. *See* Ex. 1, Hadskey Dep. at 311:01-23 ("Q: So that individual will need to demonstrate that they received probation only, even though Act 127 does not disenfranchise them? A: Because the Registrar of Voters received a notification saying that they were convicted of a felony.").

249. As such, "probation-only" voters with federal felony convictions, even after the enactment of Act 127, have been improperly suspended and would have to provide the paperwork in order for their registrations to be accepted. *See* ECF 259-10 (showing voter, Joey Stevenson, suspended in 2023 for a federal felony conviction in which he was sentenced to probation only, and who is still currently suspended); *see* Ex. 1, Hadskey Dep. at 311:10-312:14 (testifying that Stevenson "received probation only" yet would need to provide documentation). *See also* ECF 259-9 (showing voter, Joshua Adams, suspended in January 2023 for a federal conviction in which he received probation only).

250. These "probation-only" voters have missed federal elections because they were improperly suspended and/or improperly required to provide paperwork before their registrations were accepted. *See* ECF 259-10 (showing voter suspended in 2023 for probation-only conviction and has not voted since); *see also* ECF 259-3, ECF 259-4 (showing voter, Monique Canada, who missed November 2024 election because she was suspended for a probation-only conviction,

68

despite trying to register in October 2024); Ex. 2 ¶ 17, Henderson Decl. (describing voter, Sheila Jackson, who missed November 2022 election); Att. B, Henderson Decl.; ECF 258-7 at 6-7.

251.    Registrars do not know who is required to seek reinstatement—and therefore produce VRC or its equivalent—and who is considered a new registrant. ECF 257-14; Ex. S-3; Ex. 13, Green Dep. at 108:09-20 (representing that Lafayette may not distinguish between first time and suspended registrants).

252.    There is no consistent application of the Paperwork Requirement across parishes. Ex. S-3.

253.    That inconsistent application means that new registrants—including individuals whose earlier registrations were actually cancelled—are required to comply with the Paperwork Requirement. *See* Ex. 6, Wall Dep. at 65:20-66:11.

254.    While some parishes understand the distinction between suspended registrants and new registrants, others do not. ECF 257-14. While some understand that no paperwork is required of individuals who were not sentenced to a period of incarceration for their convictions, like probation-only voters, others do not. ECF 257-14.

### Burdens on Individuals

255.    Many voter registration applicants do not know whether they are a suspended voter subject to the Paperwork Requirement. Ex. 2 ¶ 12, Henderson Decl.

256.    Some individuals who have been imprisoned for many years may not remember or realize that they were previously registered. *See* Ex. 2 ¶ 14, Henderson Decl.

257.    Individuals who have moved parishes since their incarceration do not always know that they are new registrants in the place where they have moved. *See* Ex. 2 ¶ 14, Henderson Decl.

69

258. An individual in either case who submits a voter registration application will belatedly discover they must comply with the Paperwork Requirement. *E.g.*, Ex. 16 ¶¶ 8-10, Pittman Decl.

259. Voters continue to have their registrations rejected because they provided documentation other than a VRC. Ex. 16 ¶¶ 12-15, 20-21, Pittman Decl.; Ex. 4 ¶ 20, Amos Decl.

260. Under Louisiana law, a person seeking reinstatement must provide "documentation from the appropriate correction official showing that such person" is no longer disqualified to vote because of their felony conviction. La. R.S. 18:177.

261. Defendant has interpreted this to mean not just a VRC, but also "[o]ther documentation that is signed by a corrections official, a judge, a court official or other appropriate government official." *See* ECF 258-13.

262. This includes "a document from the Clerk of Court . . . something from a Federal Court . . . [something] from the actual facility that they were incarcerated in." Ex. 1, Hadskey Dep. at 158:12-25.

263. Although not a requirement in Louisiana statutes, Defendant requires this document must be an "original" copy or a "certified copy of the original documentation." Ex. 1, Hadskey Dep. at 159:04-160:14; Ex. 32, Deposition of Byron James Stelly (St. Landry Registrar of Voters) at 52:22-53:01 ("[W]e would not have accepted it had it not had the embossed seal. It's just the original goes back to the individual and we keep a copy. So, the embossed seal does not show up on – on the copy.").

264. Some ROVs incorrectly believe that VRCs are the only documentation they can accept for reinstatement. Ex. 32, Stelly Dep. at 52:02-09 ("Q: Do you accept any other documentation [other than a VRC] from people with past convictions? A: The only other document

that we can accept is if they were convicted through federal court . . . that's really the only other thing that we can accept."); Ex. 20, Sibley Dep. at 128:22-129:10 ("No, the only documents we appreciated that allows that person to be reinstated is the VRC" and that any other documentation provided would have to be verified with the court before being accepted.).

265.    Eligible voters seeking reinstatement have had their registrations denied because they provided documentation that was not a VRC, even though it should have been sufficient under Louisiana law. Ex. 16 ¶¶ 20-21, Pittman Decl.; Ex. 4 ¶ 20, Amos Decl.; Ex. 24, Reed and Peek Dep. at 88:18-22 ("Q: Is there any other document that someone can bring in that your office will accept without calling or getting in touch with the Secretary of State's Office? A: No."), at 89:21-25 ("Q: Does the Secretary of State ever respond quickly enough on these documentation questions that you can process it while the voter is still standing there, or do they usually have to leave? A: They usually do have to leave."); Ex. 33 (voter submitted discharge paperwork from out-of-state felony conviction with registration form and was rejected); ECF 21-4 ¶ 10 ("Some registrars only accepted a specific document, a voting rights certification from probation and parole . . .").

266.    Voters have also had their registrations rejected if they provided a VRC, but not an original copy. Ex. 34 (showing voter's registration was rejected for "failure to provide original" and that voter was informed that she "needs to present an original VRC in person).

267.    Voters have also had their registrations rejected if they provided a VRC or other documentation, but not in-person. Ex. 35 (showing voter registration was rejected because "voter mailed original VRC w/ app"); Ex. 36 (email between Jefferson Parish ROV and Defendant showing that the voter application must be "challenged and sent the 21-day notice letter" and must "come in person," even when voter had "mailed the Certificate of Termination along with her voter

71

registration to [ROV] via U.S. Mail" and the ROV had called the relevant probation office to confirm the Certificate's legitimacy).

268. La. R.S. 18:177 does not require "documentation" to be an original copy, to be certified, or to have an embossed seal. La. R.S. 18:177.

269. Some voters who do not have felony convictions are falsely matched and are suspended in error. Ex. 10 ¶¶ 1-2, 5, Smith Decl.; Ex. 17 ¶¶ 3-5, 14, 21-22, Declaration of Stephen Hebert.

270. The paperwork requirement creates burdens on voters such that many voters are dissuaded from voting. *See* Att. A, Burch Decl. at 21; Ex. 4 ¶ 6, Amos Decl.; Ex. 2 ¶¶ 25, 33, Henderson Decl.

271. Plaintiffs' expert, Dr. Traci Burch, used the State of Louisiana's data to estimate the number of people who might be subject to the Paperwork Requirement and the extent to which this additional requirement burdened voter registration. *See* Att. A, Burch Decl. at 13-21. Dr. Burch found that of the 27,956 Louisianans with past convictions who were eligible to register as of January 2026, 16,886 were first-time registrants and 11,070 were previously registered. *See id.* at 16-21. She found that the registration rate of first-time registrants was more than twice as high (15.8%) as that of previously-registered registrants (5.9%), supporting the conclusion that the requirement for previously registered voters with felony convictions to submit additional documentation poses an administrative barrier to registration. *Id.* at 18.

272. Dr. Burch also explained that in most states, people who were registered prior to their conviction register and vote at higher rates post-conviction than people who were not previously registered. *See* Att. A, Burch Decl. at 5-7. In Louisiana, however, the pattern is the

72

opposite: registration rates are *lower* for people who were registered to vote prior to their conviction. *See* Att. A, Burch Decl. at 5-13.

273.    Dr. Burch updated her estimates with data from the State of Louisiana as of March 2026. Ex. 22 ¶¶ 2-9, Burch Decl. Dr. Burch again found that there are at least 8,880 individuals whose registrations are currently suspended who are eligible to vote; and 19,785 individuals who are not registered but should not require additional documentation to register to vote. Ex. 22 ¶¶ 12-13, Burch Decl.

274.    If the Paperwork Requirement were removed as to voters whose information the state already had, it would reduce the workload on the voters, Defendant, parish registrars, and DPSC. *See* Ex. 1, Hadskey Dep. at 250:20-251:07 (removing the Paperwork Requirement would mean that reinstatement would happen "without action from the voter," would remove parish DPSC offices because the DPSC could "send the information to the Registrar directly," and take Defendant "out of the process altogether"); Ex. 20, Sibley Dep. at 34:03-14 (discussing designation of specific staff to work on registrations for people with convictions "because of the size, because of the volume" of those reinstatements and registrations).

275.    Previous legislation contemplated a VRC being sent by "mail, electronic mail, commercial carrier" in addition to hand delivery. *See* Ex. 1, Hadskey Dep. at 250:11-15 (testifying as to H.B. 396).

276.    The VRC contains personally identifying information, that the individual is no longer disqualified by a felony conviction because they have finished their sentence or have been under supervision for at least five years, and the identity of the DPSC staff who certified it. Ex. 24, Reed and Peek Dep. at 103:02-09.

277. There is "no other information that [the ROV] gleans from the VRC that is not otherwise evident from the ineligible list." Ex. 24, Reed and Peek Dep. at 103:02-09.

278. Those without cars or who work during traditional hours face difficulty getting the VRC (or, if accepted, other paperwork) and making it to the registrar's office during business hours to drop it off in person. Ex. 2 ¶ 25, Henderson Decl.; ECF 21-4 ¶ 13 (describing how Nziki Wiltz, as a VOTE organizer, would drive individuals without transportation "to and from these various offices" so that they could obtain and submit the documentation in person).

279. Voters who are not under supervision are confused about the instructions to go to the probation and parole offices, as they do not have a parole officer to report to. Ex. 4 ¶¶ 6, 18, Amos Decl.

280. Some voters are afraid to visit the parole and probation offices, for fear that they will be rearrested. Ex. 4 ¶ 6, Amos Decl.

281. Voters may try multiple times over the course of months or years to get reinstated, but are rejected because of issues caused by the Paperwork Requirement. *See, e.g.*, Ex. 26, DiMarco Dep. Ex. 9 (showing suspended voter attempted to register in 2016, 2018, 2019 before successfully being reinstated in 2020), Ex. 21 (showing currently suspended jailed voter attempted to register in February 2022, November 2022).

282. VOTE members who were required to provide additional documentation to register to vote or seek reinstatement faced burdens in doing so, including: J.M., A.H., O.F., J.B. R.C., M.J., A.D., K.H., Bruce Reilly, M.S., and C.Y. ECF 112-2; Ex. S-2.

283. Suspended voters in jail face a total bar to reinstatement. Ex. 2 ¶ 30, Henderson Decl.

74

284.    There are many individuals who are currently detained in parish jails who have a previous felony conviction, but who are detained pre-trial or misdemeanor on another case. Ex. 37, Deposition of Catherine Fontenot (East Baton Rouge Sheriff) at 51:16-20.

285.    Eligible suspended voters in jail are not able to submit the VRC from jail unless they are disabled. Ex. 1, Hadskey Dep. at 314:19-22.

286.    Parish sheriffs' offices were not aware of any existing process under which someone could be transported out of the jail to present documentation in person. Ex. 37, Fontenot Dep. at 62:21-64:14; Ex. 38, Deposition of Sue Ellen Monfra (Jefferson Sheriff) at 82:09-15 ("Q: [W]hen it says you must appear in person at the office, is—do JPSO policies, procedures, practices, written down or otherwise, would they allow for someone who received this letter at the jail to appear in person at the Office of the Registrar? A: No, ma'am.").

287.    The reinstatement requirement means that eligible, suspended voters in jail who are incarcerated through an election will be prohibited from voting. Ex. 1, Hadskey Dep. at 315:22-316:06 (testifying on behalf of Defendant that a "suspended voter in jail, who is in jail during the time of an election, cannot become an active voter for that election" and that "they will miss that election" and will miss elections "until they are able to go in person to the office of registration").

288.    Because there is no way to submit their paperwork in person, eligible suspended voters in jail miss federal elections if they are incarcerated through the election. Ex. 1, Hadskey Dep. at 322:01-04 (testifying that eligible, suspended voter who attempted to vote ahead of the November 2024 election would "not be able to reinstate his registration until he's released from incarceration"); *see also* Ex. 18 at SOS025972-SOS026033 (voter file of eligible, suspended voter who is currently incarcerated who was unable to vote in the November 2024 because he was suspended).

75

289. Lawerence Pittman, VOTE member, was released from prison in April 2024, and had no community supervision. Ex. 16 ¶¶ 4-5, Pittman Decl.

290. Mr. Pittman submitted a registration form in April 2024 and was a first-time registrant. Ex. 16 ¶ 7, Pittman Decl. About a week or two later, a 21-Day Challenge letter was sent to him. ECF 260-4 at SOS027042; Att. B, Pittman Decl. at PL68476.

291. Mr. Pittman went to the Jefferson Registrar three times to provide documentation proving his eligibility. Ex. 16 ¶¶ 5, 12, 20, Pittman Decl.

292. He was sent another challenge letter in July 2024, ECF 260-4 at SOS027042, and a "Notice of Suspension" in August, 2024. *Id.*; Att. B, Pittman Decl. at PL68476.

293. Despite not being on probation or parole, he was instructed to go to probation and parole office to obtain a VRC. Ex. 16 ¶¶ 14, 28, Pittman Decl. VOTE took him to get his VRC, and then took him to submit the VRC to the registrar. Ex. 16 ¶¶ 27-29, Pittman Decl.

294. He was finally registered in October 2024, six months after he first registered. Ex. 16 ¶¶ 42, Pittman Decl.; ECF 260-4. He was "REINSTATE[D] PER LANI DURIO SOS." ECF 260-4 at SOS027038.

295. Lorena Lachelle Jones was previously registered to vote before she was convicted of a felony in the 1990s. ECF 259-13; Ex. 4 ¶ 11, Amos Decl.

296. Ms. Jones was never sentenced to prison and only served a probation sentence. Ex. 4 ¶ 11, Amos Decl. VOTE helped her register to vote. *Id*.

297. Ms. Jones received a 21-day challenge letter dated July 18, 2025, despite not having lost the right to vote under Act 127. ECF 259-13 at 8, 11.

298. Mr. Amos helped Ms. Jones obtain the VRC and then took her to the registrar's office to register to vote. Ex. 4 ¶ 11, Amos Decl.

76

299. Stephen Hebert and David Smith are Louisiana residents neither of whom have been arrested or convicted of a felony. Ex. 17 ¶¶ 1-2, 5, Hebert Decl.; Ex. 10 ¶¶ 1-2, 5, Smith Decl.

300. Mr. Hebert's voter registration was erroneously suspended. Ex. 17 ¶¶ 4-5, 14-18, 22, Hebert Decl. He received a challenge letter in September 2024, shortly before the November 2024 general election. Ex. 17 ¶ 4, Hebert Decl.; Att. A, Hebert Decl.

301. Mr. Hebert initially thought the letter was spam because he has never been convicted of a felony or arrested. Because the 2024 election was approaching, he nonetheless followed up to avoid being disenfranchised. Ex. 17 ¶ 6, Hebert Decl.

302. Mr. Hebert had to go in person to the Orleans Registrar and was told to go to DPSC, although he never had a corrections official. Ex. 17 ¶¶ 9-12, Hebert Decl.

303. After visiting both locations of the Orleans Parish Registrar of Voters and receiving confusion instructions, Mr. Hebert was told that his name had been mistakenly flagged as part of a "felon check" and that the issue was resolved. Ex. 17 ¶¶ 8-15, Hebert Decl.

304. Mr. Hebert then received a notice of suspension for failure to appear in person. Ex. 17 ¶ 17, Hebert Decl.; Att. B, Hebert Decl. He spoke with both the Louisiana Secretary of State's Office and the Orleans Parish Registrar of Voters until his registration was finally reinstated. Ex. 17 ¶¶ 19-21, Hebert Decl.

305. The employee at the registrar's office informed Mr. Hebert that they just receive the list of felons from the Secretary of State and send out letters to suspended registrants, and claimed they were not responsible for mistaking his identity. Ex. 17 ¶ 22, Hebert Decl.

306. Likewise, Mr. Smith received a challenge letter ahead of the November 2024 election, despite being a regular voter since 2010. Ex. 10 ¶¶ 4, Smith Decl.; ECF 259-6 at 8. He was very confused about how to resolve the problem given he has never been convicted of any

77

crime and therefore does not have a parole officer. Ex. 10 ¶¶ 5-7, Smith Decl. He called the registrar's office, who confirmed that his identity was mistaken. Ex. 10 ¶¶ 8-9, Smith Decl.

307.    Charles Amos, a VOTE member and staff member, was formerly incarcerated and released on April 12, 2022 without community supervision. Ex. 4 ¶¶ 2-3, 12, 14, Amos Decl.

308.    He tried to register to vote for the first time in Orleans Parish immediately upon release, on April 23, 2022, and again a month later. Ex. 4 ¶¶ 15-16, Amos Decl.; ECF 260-2.

309.    Mr. Amos received a 21-day challenge letter, despite being a new registrant. Ex. 4 ¶¶ 13, 17, Amos Decl.; ECF 260-2.

310.    Without VOTE's help, he would not have known how to resolve his issue. Ex. 4 ¶¶ 19, 24, Amos Decl.

311.    Mr. Amos was not able to obtain the VRC until July 11, 2022—nearly three months after he first attempted to register—and on his third attempt to do so. Ex. 4 ¶ 22, Amos Decl.

312.    Gregory Finney, a VOTE member, was an active voter registrant prior to his felony conviction. ECF 21-5 ¶ 6.

313.    He first attempted to reinstate his voter registration in August 2020, after going to his parole and probation office twice to obtain the VRC, and then back to the registrar's office to submit it. ECF 21-5 ¶¶ 9-12.

314.    He was challenged again in fall 2020 and had to seek reinstatement a second time. ECF 21-5 ¶ 15.

315.    Mr. Finney reached out to VOTE for assistance because he was confused by the second challenge despite being eligible to vote. ECF 21-5 ¶ 15.

316.    For Mr. Finney, compliance with the Paperwork Requirement required VOTE assisting him personally, taking off of work, and making multiple visits to the Orleans Registrar and Parole and Probation offices. ECF 21-5 ¶¶ 4-20.

317.    Nathan Steckel was never convicted of a felony but was told he needed to provide "documentation to have [his] voter registration reinstated." Ex. 23 at SOS001824. Defendant's office contacted the county of conviction to confirm his conviction information, which was a misdemeanor. Ex. 23 at SOS001822. He is currently registered in St. Charles Parish. ECF 259-1. He was previously registered in Jefferson Parish. ECF 259-2. When he became registered in St. Charles Parish, his registration in Jefferson Parish was cancelled. ECF 259-2 at SOS025317 (showing "Voter Cancel (Transferred)").

318.    Monique Canada was registered to vote for the first time in Louisiana in Caldwell Parish in 2014. ECF 259-3 at 1.

319.    Monique Canada was referred to VOTE for assistance. *See* Ex. 2 ¶ 17, Henderson Decl.

320.    In 2017, Monique Canada received a felony conviction and was sentenced to one year in prison. ECF 259-3 at 8. In 2023, she received a probation-only felony conviction. ECF 259-3 at 6.

321.    Monique Canada moved to Ouachita Parish and submitted a registration application there in 2024. ECF 259-4 at 7.

322.    A new voter registration file was created for Monique Canada when she re-registered in Ouachita. *Compare* ECF 259-3 (Caldwell file) *with* ECF 259-4 (Ouachita file).

323. Upon becoming registered again in Ouachita, Monique Canada's registration in her previous parish, Caldwell, was cancelled. ECF 259-3 at 3 ("Status" shows as "Cancelled"); SOS025284 ("Voter Cancel (Transferred))."

324. C.J. registered for the first time on March 8, 2022. ECF 258-7. C.J. was sent "Felon Challenge" letter on April 14, 2022, and sent a "Notice of Suspension" letter dated May 5, 2022. ECF 260-3 at SOS025170. C.J. was "Cancelled In Error." ECF 260-3 at SOS025162.

325. D.J. was sentenced on August 12, 2016, and received a sentence of "5 YEARS OF ACTIVE PROBATION." 260-5 at SOS025192. He was not sentenced to actual confinement. 260-5 at SOS025192.

326. Joshua Adams was convicted of a felony in the Eastern District of Louisiana on November 30, 2022, and sentenced "to probation for a term of: 12 months." ECF 259-9 at 12-13. His conviction and sentencing information was received by Defendant on December 6, 2022. ECF 259-9 at 11. His ERIN record indicates a "Felon Challenge" event on December 16, 2022, and a "Felon Cancel" event on January 9, 2023. ECF 259-9 at 4. Mr. Adams's registration record is "suspended." ECF 259-9 at 1.

327. Joey Justin Stevenson first registered to vote in 2004. ECF 259-10 at 8. Mr. Stevenson's registration was cancelled in 2010 for failure to confirm his address and failure to vote in two federal elections. ECF 259-10 at 5. In 2011, he became a first-time registrant using the federal voter registration form. ECF 259-10 at 12; ECF 258-7 at 7; Ex. 1, Hadskey Dep. at 309:18-20 (referencing now ECF 259-10 at 12).

328. Mr. Stevenson was convicted of a felony in the Eastern District of Louisiana on March 23, 2023. ECF 259-10 at 17. He was sentenced to "probation for a term of: 5 YEARS." ECF 259-10 at 19.

329.    The notice including Mr. Stevenson's sentencing information was received by the Jefferson Parish Registrar of Voters on July 13, 2023. ECF 259-10 at 15. His ERIN record reflects a "Felon Challenge" event date of 07/19/2023 and a "Felon Cancel" event date of 08/10/2023. ECF 259-10 at 5. Mr. Stevenson's "record is suspended." ECF 259-10 at 1.

330.    Mr. Stevenson had to provide the VRC because he was "issued the 21-day challenge notice." Ex. 1, Hadksey Dep. at 312:10-14.

331.    Mr. William Barry received a sentence of "3 years of active probation" on April 20, 2022. His registration was suspended on May 31, 2022. ECF 258-7 at 8.

332.    Elijah Powell was "[s]entenced to 6 years Dept. of Corrections, suspended," and "[p]laced on 3 years active probation" on January 14, 2020. ECF 259-14 at 10. Mr. Powell's registration is suspended. ECF 258-7 at 8.

333.    Reshard Robinson was "[s]entenced to 5 years Dept. of Corrections, suspended," and "[p]laced on 3 years active probation" on January 29, 2019. ECF 259-15 at 9. Mr. Robinson's record is suspended. ECF 259-15 at 1.

334.    Rosanne Hayles Robinson appears in the Felon Report on November 1, 2007, in which the entry in the "PRISON" column is "NO." ECF 259-16 at 9. Ms. Robinson's ERIN record has a note of "Suspended – Felon." ECF 259-16 at 1. Ms. Robinson's voter registration record is suspended. ECF 259-16 at 1.

335.    Barbara Ponthieux appears in the Felon Report on October 24, 2019, in which the entry in the "PRISON" column is "NO." ECF 259-17 at 12. Ms. Ponthieux's ERIN record has a note of "Suspended – Felon." ECF 259-17 at 1. Ms. Ponthieux's voter registration record is suspended. ECF 259-17 at 1.

81

336.    Bridget B. Weaver appears in the Felon Report on December 12, 2018, in which the entry in the "PRISON" column is "NO." ECF 259-19 at 13. Ms. Weaver submitted a voter registration application in 2023 but was sent a letter "informing her that the application could not be accepted unless she fulfilled the requirements to reinstate her voter registration (i.e., provide documentation of eligibility)." ECF 258-7 at 10. Ms. Weaver's ERIN record has a note of "Suspended – Felon" and Ms. Weaver's voter registration record is suspended. ECF 259-19 at 1.

337.    George Wetherbee is currently registered in Tangipahoa Parish. ECF 258-7 at 10. Upon becoming registered again in Tangipahoa, his registration in his previous parish, St. Tammany, was cancelled. ECF 259-21 at 1 ("Status" shows as "Cancelled").

338.    K.H. was first registered to vote in 1995. ECF 260-7 at SOS025441, after which he became suspended for a felony conviction, ECF 258-7 at 11. K.H. submitted a voter registration on March 1, 2019 and was reinstated on that day. ECF 258-7. The residential address listed on his 1995 registration application is the same as that on his 2019 registration application. ECF 260-7 at SOS025441-42.

339.    James Washington is currently a registered voter in Orleans Parish. ECF 259-24. He was previously registered in Calcasieu. ECF 259-23. When he became registered in Orleans Parish, following his reinstatement, his registration record in Calcasieu was cancelled. ECF 259-23 at SOS026982 (showing "Voter Cancel (Transferred") on February 25, 2026).

340.    Sheila Jackson was convicted of a felony in March 2021. Att. B, Henderson Decl. She was sent a "Felon Challenge" on October 14, 2021, and her ERIN record was marked "cancelled" on November 10, 2021. ECF 259-8 at 5. Jackson submitted a VRC, dated November 21, 2022, and a registration form dated November 30, 2022. ECF 259-8 at 11-12. Her voter registration was reinstated on December 13, 2022. ECF 259-8 at 5.

82

349.    Lorena Lachelle Jones was convicted of a felony in 1997 and received a sentence of probation only. *See* ECF 259-13 at 6; Ex. 4 ¶ 11, Amos Decl.

350.    Kerry Shelby is a suspended registrant who will have to provide documentation of eligibility in order to be reinstated. Ex. 25.

351.    Kentrell Finister is a suspended registrant who will have to provide documentation of eligibility in order to be reinstated. Ex. 21.

352.    C.C. is a suspended registrant and will have to provide documentation of eligibility in order to be reinstated. *See* Ex. 2 ¶ 21, Henderson Decl.; Ex. S-2.

353.    J.B. is a new registrant and should not have to provide documentation of eligibility in order to become registered. *See* Ex. 2 ¶ 22, Henderson Decl.; Ex. S-2.

353.    M.S. was required to provide documentation of eligibility upon attempting to register for the first time. ECF 70-13. Identity at Ex. S-2. *See* also Ex. S-4.

354.    C.Y. was required to provide documentation of eligibility upon attempting to register for the first time. ECF 70-11. Identity at Ex. S-2. *See* also Ex. S-4.

355.    C.J. was required to provide documentation of eligibility upon attempting to register for the first time. ECF 260-3. Identity at Ex. S-2. *See* also Ex. S-4.


Respectfully submitted this 24th day of July, 2026.

*/s/ Valencia Richardson*
Valencia Richardson (LSBA #39312)
Alice Huling*
Blair Bowie*
Daniel S. Lenz*
Kate Uyeda*
Ellen Boettcher*
Reginald Thedford, Jr.*
Campaign Legal Center
1101 14th St. NW Suite 400

William P. Quigley (LSBA #07769)
Loyola University Law New Orleans
College of Law
7214 St. Charles Ave. Campus Box 902
New Orleans, LA 70118
Quigley77@gmail.com

Washington, DC 20005
(202) 736-2200
vrichardson@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
bbowie@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
kuyeda@campaignlegalcenter.org
eboettcher@campaignlegalcenter.org
rthedford@campaignlegalcenter.org

*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, July 24, 2026, I electronically filed the foregoing Motion with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record who are registered with the Court's CM/ECF system.

/s/ Valencia Richardson
Valencia Richardson
*Counsel for Plaintiffs*

85